# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IMANI CHINDA, | **Case No. 4:24-cv-5106** |
| v. | |
| HSA ST. JOSEPH LLC. | JURY TRIAL DEMANDED |

## CHINDA'S MOTION FOR SUMMARY JUDGMENT

Date: November 6, 2025.

Respectfully submitted,

By: */s/ Carl A. Fitz*
    **Carl A. Fitz**
    Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**ATTORNEY FOR CHINDA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................1

I.  SUMMARY AND INTRODUCTION..............................................................................1

II. LEGAL STANDARD AND STATEMENT OF ISSUES ................................................1

III. NATURE AND STAGE OF PROCEEDINGS.................................................................2

IV. STATEMENT OF UNDISPUTED FACTS .....................................................................3

   1.  Chinda Was an Excellent Nurse for St. Joseph for Nearly Two Years. ..........................3

   2.  St. Joseph Failed to Pay Chinda her Minimum Wage, and Chinda Complained About this Violation of the Fair Labor Standards Act. ..............................................4

   3.  St. Joseph Terminated Chinda Because She Engaged in a Protected Activity Under the FLSA. .....................................................................................................................5

   4.  Chinda Engaged in a Protected Activity, and Did Not Violate St. Joseph Policy, on November 1, 2024 in the Family Birthing Center. ....................................................6

IV. ARGUMENTS AND AUTHORITIES ............................................................................8

   1.  Summary Judgment is Warranted against Defendant on the Issue of Liability on the FLSA Retaliation Claim. ............................................................................................8

   2.  St. Joseph failed to pay Chinda's minimum wage, and St. Joseph was aware of Chinda's complaints about its violation of the Fair Labor Standards Act. .........................9

   3.  St. Joseph's Repudiation of its Employment Contract with Chinda, and Chinda's Subsequent Termination, are Adverse Actions under the FLSA. .......................................9

   4.  St. Joseph Terminated Chinda Because She Complained About the Hospital's Failure to Pay Minimum Wage. ................................................................................10

   5.  St. Joseph's Counterclaim Fails as a Matter of Law. ...............................................11

V.  CONCLUSION ...............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247–48 (1986) ............................................................................................... 1
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................ 1, 2
*Gee v. Principi*,
  289 F.3d 342, 346 n.3 (5th Cir. 2002) ............................................................................... 10
*Hagan v. Echostar Satellite, L.L.C.*,
  529 F.3d 617, 624 (5th Cir. 2008) ....................................................................................... 8
*Kasten v. Saint-Gobain Performance Plastics Corp.*,
  563 U.S. 1, 11-12 (2011) ..................................................................................................... 8
*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) (en banc) (per curiam) ......................................................... 2
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................................ 2
*McCoy v. City of Shreveport*,
  492 F.3d 551, 560 (5th Cir. 2007) ....................................................................................... 9
*Pegram v. Honeywell, Inc.*,
  361 F.3d 272, 281–82 (5th Cir. 2004) ............................................................................... 10
*Ragas v. Tennessee Gas Pipeline Co.*,
  136 F.3d 455, 458 (5th Cir. 1998) ....................................................................................... 2
*Raggs v. Miss. Power & Light Co.*,
  278 F.3d 463, 471–72 (5th Cir. 2002) ............................................................................... 10
*Starnes v. Wallace*,
  849 F.3d 627, 632-33 (5th Cir. 2017) ................................................................................. 8
*Turner v. Baylor Richardson Med. Ctr.*,
  476 F.3d 337 (5th Cir. 2007) .............................................................................................. 2

## I.     Summary and Introduction

HSA St. Joseph LLC (St. Joseph) admits Imani Chinda (Chinda) complained about the hospital's failure to pay her minimum wage. And there is no dispute that St. Joseph terminated Chinda less than three weeks after her complaint.

Although St. Joseph claims it terminated Chinda because of "disruptive conduct" in the Family Birthing Center, the record confirms that this purported "disruptive conduct" was simply Chinda complaining about St. Joseph's violation of the Fair Labor Standards Act. Given this admission, there is no dispute of material fact that St. Joseph retaliated against Chinda in violation of the Fair Labor Standards Act. Summary judgment should be granted.

## II.     Legal Standard and Statement of Issues

The first issue before this Court is whether summary judgment should be granted in favor of Chinda on her FLSA retaliation claim. The second issue before this Court is whether summary judgment should be granted in favor of Chinda on St. Joseph's counterclaim.

Summary judgment should be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.[1] A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is "material" if it might affect the outcome of the case.[2] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[3] Where, as here, the defendant does not bear the burden of proof at trial, it may

---

[1] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).
[2] *Anderson*, 477 U.S. at 248.
[3] *Celotex*, 477 U.S. at 323.

1

meet its summary judgment obligation by showing that the record lacks evidence to support an essential element of the plaintiff's claim.[4] Once the moving party meets that burden, the nonmovant must go beyond the pleadings and identify specific facts showing a genuine issue for trial.[5] The Court must view the evidence in the light most favorable to the nonmoving party but may not rely on conclusory allegations, unsubstantiated assertions, or a scintilla of evidence.[6] If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmovant, summary judgment must be granted.[7]

### III.  NATURE AND STAGE OF PROCEEDINGS

Chinda alleges St. Joseph retaliated against her in violation of the Fair Labor Standards Act. 29 U.S.C. § 215; Doc. 1. The discovery deadline has expired in this case. Doc 22. Chinda has taken three depositions in this case: The deposition of St. Joseph's corporate representative (Malveaux), St. Joseph's former Chief Nursing Officer (Ziakas), and the former Nursing Director of Women's Services (Tolopka). St. Joseph did not serve written discovery or depose Chinda in this matter.

---

[4] *Id.* at 325; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[5] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).
[6] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).
[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  STATEMENT OF UNDISPUTED FACTS

1. **Chinda Was an Excellent Nurse for St. Joseph for Nearly Two Years.**

Chinda began working as a Registered Nurse (RN) at St. Joseph Medical Center on February 21, 2023.[8] Her contract guaranteed $60 per hour as her hourly base pay for every hour worked.[9] The contract also guaranteed Chinda 72 hours of work biweekly:[10]

> 1. **Scheduling Hours.** Employee Traveler agrees to be scheduled to work at least seventy-two (72) hours per pay period, including two weekend shifts per pay period for **13** weeks (length of employment period). Employee Traveler's hours will be scheduled/ approved by the Nursing Director, to meet the Hospitals' units' needs. Employee Traveler shall be scheduled for shifts starting on **3/6/23** and ending on **6/3/23**.
>
> Employee Traveler understands that if Employee Traveler is requested not to report for Employee Traveler's scheduled shift at the Hospitals as a result of low census, Employee Traveler may be required to report to work at an affiliate hospital.
>
> 2. **Guarantee of Scheduled Hours.** Employee Traveler is guaranteed to be scheduled for Seventy-two (72) hours bi-weekly. Employee Traveler may be cancelled hours equal to one (1) shift per pay period based on staffing needs. Employee Traveler's position is dependent upon staffing needs and patient census/ acuity, and periodic adjustments shall occur based upon Hospitals' business and patient care needs. Employee Traveler may be required to float to similar departments of competency within affiliated hospitals.

Chinda primarily worked in the family birthing unit, or women's services. [11]

HSA purchased the St. Joseph hospital from Steward and assumed all terms of Chinda's contract.[12] St. Joseph officially adopted the contract on October 13, 2024, when all employees transitioned from Steward to HSA St. Joseph.[13]

---

[8] Ex. 1, Dep. of J. Malveaux, 51:22-52:5.
[9] Ex. 1, Dep. of J. Malveaux, 53:25-54:5.
[10] Ex. 5; Ex. 1 Dep. of J. Malveaux, 53:16 – 54:7 ("…Q. And that agreement was adopted by HSA; right? A. Correct.").
[11] Ex. 2, Dep. of M. Ziakas, 25:25-26:2.
[12] Ex. 1, Dep. of J. Malveaux, 52:4-7; Ex. 2 Dep. of M. Ziakas, 15:24-25.
[13] Ex. 1, Dep. of J. Malveaux, 16:13-15.

St. Joseph's practice is to offer travel nurses the opportunity to transition to full-time positions, rather than automatically terminating travel nurse contracts.[14] St. Joseph retained some travel nursing contracts in labor and delivery through the following year (2025), with some nurses declining full-time positions to continue traveling while others transitioned to permanent staff.[15]

### 2. St. Joseph Failed to Pay Chinda her Minimum Wage, and Chinda Complained About this Violation of the Fair Labor Standards Act.

During the transition of St. Joseph's ownership from Steward to HSA St. Joseph, the hospital lost access to its Kronos timekeeping system and instituted a new policy of using paper timesheets.[16] On October 31, 2024, St. Joseph failed to pay its hourly workers, including Chinda, the entirety of their paychecks.[17] The payroll crisis was so severe that it affected over 500 St. Joseph employees who did not receive proper payment, requiring St. Joseph's entire executive team to work around the clock to resolve the issues.[18]

There is no dispute that St. Joseph failed to pay Chinda entirely for her work performed during at least one workweek, in violation of the Fair Labor Standards Act's minimum wage provisions.[19] On November 2, 2024, Chinda complained to St. Joseph about not being paid minimum wage, specifically regarding missing shifts and not being paid for at least one

---

[14] Ex. 2, Dep. of M. Ziakas, 26:21-27:19.
[15] Ex. 2, Dep. of M. Ziakas, 28:2-10.
[16] Ex. 1, Dep. Of J. Malveaux, 65:7 – 67:23.
[17] *Id.*
[18] Ex. 1, Dep. of J. Malveaux, 64:10-12; Ex. 2, Dep. of M. Ziakas, 20:10-12, 22:15-23.
[19] Ex. 2, Dep. Of M. Ziakas, 46:20 – 46:23 ("Q. So for that one workweek **Ms. Chinda was not paid minimum wage** for a period of time **and HSA was aware of it, right? A. Correct.**") (emphasis added).

4

complete workweek.[20] Her wage complaint was communicated to St. Joseph's leadership, and St. Joseph admits that Chinda complained about not being paid minimum wage.[21] St. Joseph was fully aware that Chinda was not paid minimum wage for at least one workweek.[22]

St. Joseph's Chief Nursing Officer ("CNO"), Michelle Ziakas, was copied on emails regarding Chinda's request for time cards and confirmed that St. Joseph was aware that there were multiple workweeks when Chinda was not paid at all.[23] Ziakas testified that for at least one workweek Chinda was not paid minimum wage for a period of time and St. Joseph was aware of it, confirming St. Joseph's knowledge of missing time issues affecting Chinda according to the emails she reviewed.[24] These wage complaints occurred during the same time period as St. Joseph's major payroll crisis affecting hundreds of workers due to the transition from the Kronos to the I-solved payroll system.[25]

### 3. St. Joseph Terminated Chinda Because She Engaged in a Protected Activity Under the FLSA.

Chinda complained about St. Joseph's failure to pay her minimum wage numerous times:

- On November 1, 2024, Chinda complained to her supervisor, Lori Tolopka
- On November 2, 2024, Chinda complained via e-mail to Human Resources, including to Jamie Malveaux
- On November 2, 2024, Chinda complained verbally to Emily Manning, and

---

[20] Ex. 1, Dep. of J. Malveaux, 90:4-9, 46:17-19.
[21] Ex. 1, Dep. of J. Malveaux, 46:20-23, 90:22-25, 90:7-9.
[22] Ex. 1, Dep. of J. Malveaux, 46:20-23.
[23] Ex. 2, Dep. of M. Ziakas, 10:14-20, 46:10-16.
[24] Ex. 2, Dep. of M. Ziakas, 46:20-23, 46:13-19.
[25] Ex. 2, Dep. of M. Ziakas, 18:12-19:25.

- On November 1, 2024, Chinda complained to the night shift Charge Nurse in-person at the Family Birthing Center.[26]

St. Joseph admits that this final complaint is why it placed Chinda on unpaid administrative leave.[27] Specifically, St. Joseph claims that Chinda was placed administrative leave, and not terminated, due to concerns over disruptive conduct in the Family Birthing Center.[28] St. Joseph's Corporate Representative testified that St. Joseph cancelled Chinda's assignment due to "the disruption" in the work area and confirmed that administrative leave was imposed "because of the disruption."[29] Then-Chief Nursing Officer Ziakas also testified that the incident was first brought to her attention by director Lori Tolopka, who reported that there was an employee with "very disruptive behavior in the nurse's station, making comments about St. Joseph's ability to pay their employees."[30]

### 4. Chinda Engaged in a Protected Activity, and Did Not Violate St. Joseph Policy, on November 1, 2024 in the Family Birthing Center.

St. Joseph conducted no formal investigation into the alleged Family Birthing Center incident, with Malveaux testifying that "an in-depth investigation was not done."[31] There are no documents in Chinda's personnel file indicating any investigation was conducted regarding the purported "disruption" in the Family Birthing Center, and Malveaux has never seen any documents suggesting an investigation was done by anybody into the allegedly disruptive conduct.[32] The only documentation of the alleged incident is an email exchange between Emily

---

[26] Ex. 4, Declaration of Imani Chinda, at ¶¶ 3-10.
[27] Ex. 1, Dep. of J. Malveaux, 34:18-22, 35:16-17.
[28] Ex. 1, Dep. of J. Malveaux, 34:18-22.
[29] Ex. 1, Dep. of J. Malveaux, 75:1-2, 105:1-3.
[30] Ex. 2, Dep. of M. Ziakas, 37:14-18
[31] Ex. 1, Dep. of J. Malveaux, 101:4-8.
[32] Ex. 1, Dep. of J. Malveaux, 101:15-23.

6

Manning and Lori Tolopka, neither of whom personally witnessed the purported incident.[33] CNO Ziakas confirmed the lack of proper investigation, testifying that she had not seen any other documentation beyond the email thread regarding the basis for placing Chinda on administrative leave.[34] Tolopka, who was responsible for conducting this investigation, confirmed that she "did not submit a written statement" herself regarding the alleged incident.[35] Former CNO Ziakas admits this handling of Chinda's discipline was contrary to St. Joseph policy, which requires a thorough, written investigation.[36]

St. Joseph did not provide Chinda with a verbal warning before placing her on administrative leave, did not provide her with a written warning before terminating her assignment, and did not follow its disciplinary policy hierarchy of verbal warning, written warning, final written warning before termination.[37] Notably, Malveaux testified that St. Joseph decided not to follow normal disciplinary procedures because "her contract was gonna be ended anyway."[38] This procedural failure directly contradicts the testimony of CNO Ziakas, who established the proper standards that St. Joseph should have followed.[39]

St. Joseph's HR Director Malveaux did not interview anybody about the alleged Family Birthing Center incident and never spoke to Emily Manning directly about the incident at the time it occurred.[40] In her capacity as Corporate Representative, Malveaux admits that she has

---

[33] Ex. 3, Dep. of L. Tolopka, 29:1-25.
[34] Ex. 2, Dep. of M. Ziakas, 41:3-4
[35] Ex. 3, Dep. of L. Tolopka, 29:24-25.
[36] Ex. 2, Dep. of M. Ziakas, 38:3 – 41:11; *see also id.* at 34:17-21 ("[…]administrative leave allows for an investigation to take place" and employees should be "paid for their time off" if allegations are unfounded).
[37] Ex. 1, Dep. of J. Malveaux, 64:4-18, 71:11-15, 14:15-15:16.
[38] Ex. 1, Dep. of J. Malveaux, 71:13-15.
[39] Ex. 2, Dep. of M. Ziakas, 34:2-16.
[40] Ex. 1, Dep. of J. Malveaux, 41:2-6.

no idea about what actually occurred at the Family Birthing Center on November 1, 2024, despite this incident forming the purported basis for St. Joseph's discipline and subsequent discharge of Chinda.[41]

Director Tolopka, who was the source of the complaint to CNO Ziakas, admits she "was not there" when the alleged incident occurred and "didn't hear anything that Ms. Chinda said" during the incident.[42] Despite being the person who reported the incident, Tolopka "cannot fully remember exactly what took place."[43] Given this complete failure to conduct basic witness interviews, there is no dispute of material fact that Chinda was discharged because of her complaints about St. Joseph's failure to pay minimum wage.

### IV. ARGUMENTS AND AUTHORITIES

#### 1. Summary Judgment is Warranted against Defendant on the Issue of Liability on the FLSA Retaliation Claim.

The Fair Labor Standards Act prohibits an employer from retaliating against an employee for complaining about violations of the FLSA.[44] To establish retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.[45]

---

[41] Ex. 1, Dep. of J. Malveaux, 102:25-103:1, 103:11-13, 103:2-5.
[42] Ex. 3, Dep. of L. Tolopka, 26:24 – 27:2.
[43] Ex. 3, Dep. of L. Tolopka, 27:12-13
[44] 29 U.S.C. § 215(a)(3); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11-12 (2011); *Starnes v. Wallace*, 849 F.3d 627, 632-33 (5th Cir. 2017).
[45] *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008).

    **2.**     **St. Joseph failed to pay Chinda's minimum wage, and St. Joseph was aware of Chinda's complaints about its violation of the Fair Labor Standards Act.**

To engage in protected activity, the plaintiff must make a "complaint." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008). This requirement is satisfied when the employer has fair notice of the complaint, and the complaint is sufficiently clear and detailed. *Id.*

St. Joseph's former Chief Nursing Officer admits St. Joseph failed to pay Chinda minimum wage for at least one workweek.[46] Prior to rectifying this FLSA violation, Chinda complained about St. Joseph's failure to pay minimum wage at least thrice.[47] St. Joseph admits it knew about these complaints.[48] Because St. Joseph admits it knew Chinda complained about the hospital's failure to pay minimum wage, there is no dispute that Chinda engaged in a protected action under the FLSA.[49]

    **3.**     **St. Joseph's Repudiation of its Employment Contract with Chinda, and Chinda's Subsequent Termination, are Adverse Actions under the FLSA.**

Adverse employment actions consist of "ultimate employment decisions" including hiring, firing, demoting, promoting, granting leave, or compensating.[50] "Employment

---

[46] Ex. 2 Dep. Of M. Ziakas, 46:20 – 46:23 ("Q. So for that one workweek **Ms. Chinda was not paid minimum wage** for a period of time **and HSA was aware of it, right? A. Correct.**") (emphasis added).
[47] Ex. 4, Declaration of Imani Chinda, at ¶¶ 3-10.
[48] Ex. 1 Dep. of J. Malveaux, 90:4-25; Ex. 2 Dep. of M. Ziakas, 46:10-23; Ex. 3 Dep. of L. Tolopka, 9:23-24.
[49] *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008) ("We adopt the majority rule, which allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better captures the anti-retaliation goals of that section.").
[50] *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007).

9

action[s]" that affect job duties, compensation, or benefits can constitute "adverse" employment actions.[51]

St. Joseph guaranteed Chinda 72 hours of work every two-week pay period at $60 per hour.[52] After Chinda complained about St. Joseph's failure to pay minimum wage, St. Joseph placed Chinda on unpaid administrative leave.[53] St. Joseph then terminated Chinda.[54] This constitutes an adverse action in violation of the FLSA's anti-retaliation provision.[55]

### 4. St. Joseph Terminated Chinda Because She Complained About the Hospital's Failure to Pay Minimum Wage.

St. Joseph placed Chinda on unpaid administrative leave the same weekend Chinda complained about St. Joseph's failure to pay minimum wage.[56] St. Joseph terminated Chinda the same month of her complaint.[57] This temporal proximity supports a finding of causation.[58]

---

[51] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004).
[52] Ex. 1 Dep. of J. Malveaux, 54:1; Ex. 5.
[53] Ex. 1 Dep. of J. Malveaux, 34:18-21 ("Ms. Chinda was placed on administrative leave, not terminated, due to concerns over disrupted conduct in the Family Birthing Center.").
[54] Ex. 1 Dep. of J. Malveaux, 72:14-15 ("We let her know that we were going to end her contract and that her employment was at will.")
[55] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004).
[56] Ex. 1 Dep. of J. Malveaux, 37:4-6, 90:22-25.
[57] Ex. 4, Declaration of Imani Chinda, at ¶¶ 3-10.
[58] *Cf. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding that temporal proximity alone furnished insufficient evidence of causation to withstand motion for judgment as a matter of law when five months had elapsed).

Even if this tight temporal proximity is not alone conclusive at the summary judgment stage, St. Joseph's admissions warrant summary judgment.[59] One of Chinda's complaints about St. Joseph's failure to pay minimum wage occurred in the Family Birthing Center on November 1, 2024.[60] St. Joseph admits that this incident in the Family Birthing Center is why it placed Chinda on unpaid administrative leave and/or terminated her.[61] There is no credible evidence in the record evidencing that Chinda violated St. Joseph's policies on November 1, 2024 in the Family Birthing Center. In fact, the record confirms the opposite. Summary judgment should be granted.

### 5. St. Joseph's Counterclaim Fails as a Matter of Law.

St. Joseph's Counterclaim states that it is entitled to attorney's fees to the extent Tex. Civ. Prac. Rem. Code 38.001(b)(2) applies. *See* Doc. 20 at p. 9. As a matter of law, the procedure of § 18.001(b) is inapplicable in federal court. *See Jones v. QuikTrip Corporation*, No. 3:19-CV-2671-D, 2020 WL 6149967, at *2 (N.D. Tex. Oct. 20, 2020) (Fitzwater, J.) ("[T]he procedure of § 18.001(b) is inapplicable in federal court, even in a case in which subject matter jurisdiction is based on diversity of citizenship."). St. Joseph's counterclaim should be dismissed.

---

[59] *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002) (explaining that temporal proximity is "part of [the] analysis, but not in itself conclusive" in establishing the causal link for retaliation (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir.1992)).
[60] Ex. 4, Declaration of Imani Chinda, at ¶¶ 3-10.
[61] Ex. 1 Dep. of J. Malveaux, 34:18-22.

## V. CONCLUSION

St. Joseph violated federal law when it retaliated against Chinda for complaining about its failure to pay minimum wage in violation of the FLSA. The undisputed evidence establishes that St. Joseph placed Chinda on unpaid administrative leave, and terminated her, immediately after she complained about FLSA violations. St. Joseph's Corporate Representative admitted that these decisions were made because of Chinda's protected activities in the Family Birthing Center on November 1, 2024. Summary judgment should be granted as to St. Joseph's liability for violating the FLSA's anti-retaliation provisions. Summary judgment should also be granted as to St. Joseph's counterclaim, which fails as a matter of law.

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025 the foregoing was served via CM/ECF filing on St. Joseph's Counsel.

*/s/ Carl A. Fitz*
**Carl A. Fitz**