# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

IMANI CHINDA,

v.

HSA ST. JOSEPH LLC.

**Case No. 4:24-cv-5106**

JURY TRIAL DEMANDED

---

## DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Date: November 26, 2025.

**Respectfully submitted**,

 /s/ *Asim Ghafoor*
Asim Ghafoor (SDTX Bar #1384109)
HSA Regional Counsel
1401 St. Joseph Parkway
Houston, TX 77002
(202) 330 1469
aghafoor@hsahospitals.com

1

**LEAD COUNSEL FOR
DEFENDANT
HSA ST. JOSEPH LLC**


By: */s/ Ali Zakaria*_____
**Mohammed Ali Zakaria**
 TBN: 22243410
 M. Ali Zakaria & Associates, PC
 6161 Savoy Drive, Suite 1000
 Houston, Texas 77036
 Tel: (713) 789-7500
 Email: Ali@Zakarialaw.com
**CO-COUNSEL FOR
DEFENDANT HSA ST. JOSEPH,
LLC**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................3

TABLE OF AUTHORITIES............................................................................................4

I.    SUMMARY AND INTRODUCTION .................................................................... 6

II.   LEGAL STANDARDS AND STATEMENT OF ISSUES..................................... 6

III.  NATURE AND STAGE OF PROCEEDINGS ...................................................... 8

IV.   STATEMENT OF DISPUTED FACTS AND LEGAL ARGUMENTS .......................... 8

    1.    Plaintiff's Unsigned "Declaration" Is Not Competent Summary-Judgment Evidence. . 8

    2.    Plaintiff Was not an Excellent Nurse for Defendant. ..................................... 9

    3.    Defendant did not fail to pay Plaintiff Minimum Wages. ............................. 10

    4.    Defendant did not terminate Plaintiff's employment because of Plaintiff's alleged protected activities......................................................................... 12

    5.    Documented Disruptive Conduct and Policy Violations Provide a Legitimate, Non-Retaliatory Reason for Ending Plaintiff's Assignment. ............................... 14

  V. CONCLUSION .........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*

477 U.S.242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)………………...……-……7

*Fairchild v. All American Check Cashing, Inc.*

815 F.3d 959, 964–66 (5th Cir. 2016)……………………………………………11, 12

*Gee v. Principi,*

289 F.3d 342, 346 n.3 (5th Cir. 2002)…………………………………………….……16

*Hager v. Brinker Tex., Inc.,*

102 F.4th 692 (5th Cir. 2024)……………………………………………………..……..7

*Lasater v. Tex. A&M Univ.-Commerce,*

495 F. App'x 458, 461 (5th Cir. 2012) (*quoting Kasten v. Saint—Gobain Performance Plastics Corp.*, 563 U.S. 1, 13-14, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011))…………...……..18

*McCoy v. City of Shreveport,*

492 F.3d 551, 557–58 (5th Cir. 2007)……………..………………………………15

*Newton v. City of Henderson,*

47 F.3d 746, 748–50 (5th Cir. 1995)……………………………………….……11, 12, 13

*Nissho-Iwai Am. Corp. v. Kline,*

845 F.2d 1300, 1306 (5th Cir. 1988);………………………………………….…….……8

*Pioneer Expl., L.L.C. v. Steadfast Ins. Co.,*

767 F.3d 503 (5th Cir. 2014)……………………………………………….……..7

*Potter v. Cardinal Health 200, LLC,*

381 F. Supp. 3d 729, 738-739, 2019 U.S. Dist. LEXIS 81765, *17-19, 2019 WL 2119998

quoting *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008)……..'……..17

*Ragas v. Tennessee Gas Pipeline Co.,*

136 F.3d 455, 458 (5th Cir. 1998)……………………………….……………….……8

*Von Friewalde v. Boeing Aerospace Operations, Inc.,*

339 F. App'x 448, 455–56 (5th Cir. 2009) ………………………..………….……..11, 12

**Rules**

Fed. R. Civ. P. 56(a)……………………………………………………………….6, 7

Fed. R. Civ. P. 56(e)...........................................................................................7

Fed. R. Civ. P. 56(c)(4)……………………………………………………………8, 9

28 U.S.C. § 1746……………………………………………………………………8, 9

29 U.S.C. §§ 259………………………………………………………………...……12

29 U.S.C. §§ 260………………………………………………………………...…12

Texas Civil Practice &amp; Remedies Code § 38.001(b)…………………………17

## I.    SUMMARY AND INTRODUCTION

Defendant HSA St. Joseph, LLC respectfully submits this Reply in Opposition to Plaintiff's Motion for Summary Judgement. **Doc. 24.** Plaintiff is a nurse. Defendant is a hospital in Houston, Texas. Plaintiff worked as a nurse at St. Joseph Medical Center in Houston, Texas, which is operated by Defendant since September 11, 2024. Plaintiff filed her Complaint in this Court claiming that Plaintiff was terminated by Defendant for complaining of Defendant's alleged FLSA violations. Defendant not only disagrees with Plaintiff's version of the facts and hereby refers to attached evidence to establish that (i) Defendant did not violate FLSA, (ii) Plaintiff was not "terminated" for complaining about Defendant's alleged FLSA violation, and (iii) Plaintiff was suspended and then her employment agreement -that was expiring- was not renewed due to her disruptive behavior at the hospital.

Accordingly, the Parties differ on several crucial and material facts regarding the reason Plaintiff's contract was not renewed.  In her Motion for Summary Judgement, Plaintiff refuses to acknowledge that Defendant identified and rectified the payroll mistake shortly after its occurrence. In fact, Plaintiff was paid by Defendant more than she was owed as payroll.  Furthermore, Plaintiff's Motion also neglects to mention her documented disruptive conduct independent of any alleged FLSA or delayed paycheck claims.

## II.    LEGAL STANDARDS AND STATEMENT OF ISSUES

**Legal Standard for Summary Judgement Under Rule 56**: Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A Court must view the evidence in the light most favorable to nonmoving party. *Hager v. Brinker Tex., Inc.*, 102 F.4th 692 (5th Cir. 2024).  A Court may not rely on Plaintiff's conclusory allegations or unsubstantiated assertions.  The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S.242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Furthermore, a genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. The movant bears the initial burden and must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. A summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).  Rule 56(c) requires that "[a] party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the records; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  "If a party fails to…properly address another party's assertion of fact as required by Rule 56(c), the court may: (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

## III.    NATURE AND STAGE OF PROCEEDINGS

As stated above, Plaintiff alleges that Defendant violated FLSA by suspending and then not renewing her employment agreement that was about to expire. Discovery is substantially complete in this case.

## IV.    STATEMENT OF DISPUTED FACTS AND LEGAL ARGUMENTS

### 1.    Plaintiff's Unsigned "Declaration" Is Not Competent Summary-Judgment Evidence.

Plaintiff's motion relies heavily on her own "Declaration of Imani Chinda" to establish key disputed facts regarding both the payroll timing and what allegedly occurred in the Family Birthing Center on November 1, 2024. Yet Plaintiff has not submitted a declaration or affidavit that complies with Federal Rule of Civil Procedure 56(c)(4) and 28 U.S.C. § 1746.

Rule 56 requires that a declaration "be made on personal knowledge," "set out facts that would be admissible in evidence," and "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Section 1746 further requires that an unsworn declaration have a signature and a date. 28 U.S.C. § 1746.

An unsigned, unsworn statement even with the § 1746 language is not competent summary-judgment evidence. The Fifth Circuit has squarely held that "an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988); see also *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (non-movant must "identify specific evidence in the record" that would be admissible at trial).

Here, Plaintiff's "Declaration" is not signed and dated under penalty of perjury and is not notarized and therefore fails to satisfy either Rule 56(c)(4) or § 1746. Defendant respectfully objects to the Court's consideration of that document for any purpose. Once Plaintiff's defective declaration is disregarded, her characterization of the November 1, 2024, incident, and many of her asserted "undisputed facts," rest on nothing more than counsel's argument and inadmissible, self-serving statements. For this additional reason, Plaintiff's unsigned Declaration shall be struck from the record. Accordingly, Plaintiff fails to carry her burden as the summary-judgment movant, and her motion must be denied.

### 2. Plaintiff Was not an Excellent Nurse for Defendant.

It is undisputed that Plaintiff was a travel nurse. It is also undisputed that (i) Defendant took over the management and operations of the hospital on or about October 13, 2024, (ii) Plaintiff and all other employees at the hospital transitioned to Defendant on or about the same date, and (iii) Defendant's practice is to offer travel nurses opportunity to transition to full-time positions.

It is also undisputed that Defendant's payroll system failed to function properly in the early days of Defendant's takeover of the hospital. As explained below, this failure affected over 500 employees or workers of Defendant.

It is disputed by Plaintiff that she engaged in disruptive behavior when she did not receive her payroll in a timely fashion. While Plaintiff does not explain to the Court, the fact remains that Defendant corrected the failure to pay payroll shortly after its occurrence and in fact overpaid Plaintiff. **Please see Exhibit 1 (Response to Production,**

**RFP2-077).**

### 3. Defendant did not fail to pay Plaintiff Minimum Wages.

Defendant's Timekeeping Policies and Good-Faith Efforts Create a Safe Harbor From FLSA Liability and Liquidated Damages. Even accepting Plaintiff's characterization of an initial payroll disruption surrounding the November 1, 2024, pay date, her motion ignores undisputed evidence that Defendant maintained reasonable timekeeping and payroll-correction procedures, and immediately implemented remedial measures once the Kronos transition issue surfaced. **Please see Exhibit 1 (Response to Production, RFP2-067).**

The record shows that, during the transition from Steward to Defendant, Defendant implemented a paper timesheet and iSolved timekeeping process to replace Kronos. Defendant produced its written Timekeeping Policy (HR 26), RFP2-105, et seq., in response to Plaintiff's discovery requests, which instructs employees on how to record their hours and identifies the mechanisms for correcting time-entry errors. Defendant also sent timecard alerts and reminders to employees through the iSolved system, including "Time Card Alerts" and "Upcoming Absence" notifications on November 1 and November 8, 2024. **Please see Exhibit 2 (Response to Interrogatories, RFP2-030-036).** In addition, before the November 1, 2024, payroll run, Defendant convened an "Expectations Meeting – Payroll Processing 11/1/24 Pay Date," which specifically addressed the process for timely uploading timecards, correcting errors, and ensuring that employees were properly paid. **Please see Exhibit 2 (Response to Production, RFP2-**

014).

After the payroll disruption, Defendant conducted further meetings and training sessions with staff regarding the new iSolved system, including the November 8, 2024 "iSolved Time Training" Microsoft Teams session, where employees were invited to "bring [their] questions for the iSolved Team."  The hospital's corporate representative and nursing leadership testified that management and the executive team worked long hours—including overnight—to correct the pay issues and ensure employees were made whole. **Please see Exhibit 2 (Response to Interrogatories, RFP2-045-047)**

The Fifth Circuit has repeatedly held that an employer who establishes a reasonable timekeeping/reporting system and pays employees for all reported time is not liable for alleged unpaid wages where the employee fails to follow those procedures or where the employer neither knew nor had reason to know of additional uncompensated work. In any case, such matters create fact issue that cannot be adjudged at this stage of the litigation. See, e.g., *Newton v. City of Henderson*, 47 F.3d 746, 748–50 (5th Cir. 1995) (no FLSA liability where employer established procedures for preapproval/reporting of overtime and paid for all overtime it knew of); *Fairchild v. All American Check Cashing, Inc*., 815 F.3d 959, 964–66 (5th Cir. 2016) (affirming summary judgment where employer maintained a policy prohibiting off-the-clock work and required employees to accurately record time, and there was no evidence employer knew of unreported overtime); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455–56 (5th Cir. 2009) (employer not liable where it had a timekeeping system and "no evidence" showed it knew employees underreported time).

11

These decisions function as a "safe harbor" for employers that adopt and enforce reasonable timekeeping procedures and act promptly to correct errors. Here, St. Joseph not only had written timekeeping and payroll-correction policies, but also:

- trained employees on the new system,

- provided automated alerts to correct timecard issues,

- convened meetings both before and after the November 1 payroll run, and

- devoted substantial management resources to reconstituting time records and issuing corrective payments.

**Please see Exhibit 1 (Response to Production, RFP2-074 to RFP2-076).**

Under *Newton, Fairchild,* and *Von Friewalde*, these facts at minimum create a fact issue as to whether Defendant acted in good faith and maintained a reasonable timekeeping system, precluding summary judgment on Plaintiff's FLSA claim and, at a minimum, barring liquidated damages. See also 29 U.S.C. §§ 259, 260 (permitting a good-faith defense to liquidated damages).

**4. Defendant did not terminate Plaintiff's employment because of Plaintiff's alleged protected activities.**

The November 1, 2024, Payroll Disruption Does Not Establish a Minimum-Wage Violation as a Matter of Law and therefore, Plaintiff could not have engaged in a Protected Activity. Plaintiff characterizes the November 1, 2024, pay date as proof that she "was not paid minimum wage for at least one workweek" and that Defendant "admits" this is so. That misstates both the testimony and the underlying payroll records. Defendant has produced Plaintiff's pay stubs and pay history for the relevant periods. Those records

show: A direct deposit to Plaintiff on November 1, 2024, in the net amount of $1,371.40 labeled "Regular Hrs – 80.00" with a corresponding pay period ending October 26, 2024. An additional payment issued on or about November 4, 2024, in the gross amount of $2,687.38 to reconcile missing hours. A further payment on November 7, 2024, to adjust remaining discrepancies from the Kronos conversion.  **Please see Exhibit 1 (Response to Production, RFP2-015 to RFP2-017).**

These exhibits confirm that any shortfall in the initial November 1, 2024, paycheck was promptly corrected within days, after Defendant re-created time records and verified hours worked. Tolopka testified that, following the Kronos outage, she and others re-entered time manually, working from "5:00 a.m. to midnight" and prioritizing employees who initially received no pay, while simultaneously issuing partial payments and "true-up" checks to employees like Plaintiff who had already received some pay on November 1, 2024. **Please see Exhibit 3 (Lori Tolopka's Deposition, pg. 22).**

Fifth Circuit precedent makes clear that a temporary delay in payment that is promptly corrected does not automatically constitute a continuing minimum-wage violation as a matter of law, particularly where the employer is acting in good faith to reconcile time records. See *Newton*, 47 F.3d at 748–50 (focusing on employer knowledge and good-faith reliance on its timekeeping system). Plaintiff's own authorities do not hold that a short-term payroll disruption that is promptly remedied, in the context of a system-wide transition, gives rise to strict liability or FLSA retaliation per se. At minimum, the evidence creates genuine disputes regarding: 1) the amount and timing of Plaintiff's actual wages received in the relevant workweeks and 2) whether any remaining underpayment

13

existed after Defendant's corrective payments in early November 2024. These factual disputes alone defeat Plaintiff's request for summary judgment on the merits of her FLSA claim.

As explained above, the pay records and Tolopka's testimony show multiple corrective payments on November 1, 4, and 7, 2024, issued in the context of a system-wide Kronos outage. At a minimum, this creates a fact issue as to whether Plaintiff was ultimately paid at least the minimum wage for each workweek and whether any underpayment was willful or in bad faith.

### 5. Documented Disruptive Conduct and Policy Violations Provide a Legitimate, Non-Retaliatory Reason for Ending Plaintiff's Assignment.

Plaintiff's Motion itself asserts and accepts that the reason for Plaintiff's administrative leave and non-renewal of contract is disputed. Specifically, Plaintiff's Motion acknowledges that Defendant "claims that Chinda was placed administrative leave, and not terminated, due to concerns over disruptive conduct in the Family Birthing Center." **Page 9 of Doc 24, citing Plaintiff Exhibit 1, 34:18-22.** Plaintiff's motion further asserts that the alleged "disruption" in the Family Birthing Center was nothing more than her protected wage complaint, and that there is "no credible evidence" she violated any policy. The record she cites shows the opposite: multiple employees reported disruptive conduct that violated HSA's policies, and those reports—not the mere fact of a complaint—led to her administrative leave. **<u>Please see Exhibit 2 (Response to Production, RFP2-002 to RFP2-003).</u>** Defendant produced its "Disruptive and Inappropriate Behavior" policy (RI 20), which defines disruptive conduct to include

14

behavior that undermines teamwork, respect, or the orderly operation of patient-care areas and provides a structured process for addressing such behavior. The policy expressly prohibits retaliation for good-faith reporting and emphasizes that discipline for disruptive conduct must be based on the manner and impact of the behavior, not the underlying concern. **Please see Exhibit 1 (Response to Production, RFP2-102).**

The policy defines Disruptive Behavior as follows:

"For purposes of this policy, **Disruptive Behavior** is defined as behavior or behaviors that undermine a culture of safety. Disruptive behavior may include, but is not limited to:

1. Attacks—verbal or physical—leveled at other medical staff, hospital personnel, patients or patients' families that are personal, irrelevant, or outside the bounds of appropriate, professional conduct.

2. Inappropriate comments or illustrations made in patient medical records or other official documents that impugn the quality of care in the hospital or attack particular practitioners, nurses, or hospital policies.

3. Criticism leveled at the recipient in such a way that it intimidates, undermines confidence, or belittles.

4. Behavior in committee, department, other medical staff or hospital affairs which are rude, disrespectful, threatening, or otherwise unprofessional or inappropriate.

5. Intimidation through direct or veiled threats.

6. Unwillingness to work with, or inability to relate to, other staff in ways that affect patient care.

15

7. Repeated disregard of hospital approved policies/approved processes.

8. Challenges that limit the hospital's ability to meet regulatory requirements to ensure a safe working environment and/or appropriate delivery of care to their patients.

9. Ignorance or incompetency or a lack of honesty and integrity, e.g. falsifying medical record documentation, application to medical staff, etc.

Plaintiff's conduct falls squarely within the definition of "Disruptive Behavior."

**Please see Exhibit 1 (Response to Production, RFP2-102).**

Plaintiff's own summary of Chief Nursing Officer Ziakas's testimony confirms that the incident was framed in terms of "very disruptive behavior in the nurse's station, making comments about St. Joseph's ability to pay their employees." **Please see Plaintiff's Ex. 1, Dep. of J. Malveaux, 101:4-8.**

The focus of the complaint relayed to leadership, therefore, was not that Plaintiff raised a pay issue at all, but that she did so in a loud, disruptive manner in a sensitive clinical area, in front of staff and patients. Malveaux, as corporate representative, testified that Plaintiff's assignment was ended "because of the disruption" in the work area. **Please see Plaintiff's Ex. 1, Dep. of J. Malveaux, 75:1-2, 105:1-3.**

Plaintiff tries to confuse the amount of effort Defendant put into investigating Plaintiff's disruptive behavior with Defendant's motive without any facts or evidence. The fact that Defendant's leadership, after learning of Plaintiff's disruptive behavior at the hospital, did not conduct a written, formal investigation to Plaintiff's satisfaction does not convert a legitimate behavioral concern into unlawful retaliation. Courts in the Fifth

Circuit repeatedly caution that they "do not sit as a super-personnel department," and an employer may terminate or decline to continue a contract for any non-retaliatory reason, even if its investigation could have been more thorough. See, e.g., *McCoy v. City of Shreveport*, 492 F.3d 551, 557–58 (5th Cir. 2007).

At the very least, the evidence Plaintiff cites are emails that document disruptive behavior, policy language addressing such conduct, and testimony about disruptive behavior at the nurses' station; these create a classic factual dispute over the true reason for Defendant's actions. A jury could reasonably credit Defendant's explanation that it acted because of how Plaintiff conducted herself in the Family Birthing Center, not because she raised concerns about pay. That is more than enough to defeat Plaintiff's request for summary judgment on "liability" for retaliation. Plaintiff herself recites testimony that Defendant's leadership viewed the incident as "very disruptive behavior in the nurse's station," in violation of the hospital's Disruptive and Inappropriate Behavior policy. **Please see Plaintiff's Ex. 1, Dep. of J. Malveaux, 75:1-2, 105:1-3.** A reasonable jury could find that Defendant ended Plaintiff's assignment for that reason, not for the fact that she raised wage issues. While temporal proximity may be a factor, it is not dispositive, especially where the employer articulates a legitimate, non-retaliatory reason supported by contemporaneous documents and policies. See *Gee v. Principi*, 289 F.3d 342, 346 n.3 (5th Cir. 2002) (temporal proximity is "part of" the analysis, but "not in itself conclusive"). Here, Defendant has articulated a legitimate, non-retaliatory reason that is in fact supported by contemporaneous documents.

The existence of the RI-20 policy, witnesses' reports of disruptive behavior, and

Defendant's management's contemporaneous response under that policy all create a genuine dispute as to causation. Plaintiff's disagreement with the thoroughness of Defendant's investigation does not transform a policy-based discipline decision into unlawful retaliation. The question under the FLSA is not whether Defendant followed its policies perfectly, but whether its stated reason is a pretext for retaliation. On this record of contemporaneous emails, a written disruptive behavior policy, and testimony about staff complaints, reasonable jurors could reach different conclusions.

**6. Defendant's Counterclaim For Attorney's Fees Does Not Fail as a Matter of Law.**

Plaintiff seeks summary judgment on Defendant's counterclaim for attorney's fees under Texas Civil Practice & Remedies Code § 38.001(b). Defendant maintains that the counterclaim is asserted in the alternative and to the extent Texas law is applicable to Plaintiff's contract theories. In any event, whether fees are ultimately recoverable is a remedial question that should not be resolved on a one-sided record at this stage, particularly where Plaintiff's own contract allegations remain contested. Accordingly, Plaintiff's Motion for Summary Judgement should be denied.

**7. FLSA Violation Not Proven As a Matter of Law.**

To prove that a defendant's conduct constitutes retaliation, a plaintiff must prove: "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *See Potter v. Cardinal Health* 200, LLC, 381 F. Supp. 3d 729, 738-739, 2019 U.S. Dist. LEXIS 81765, *17-19, 2019 WL 2119998 *quoting Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir.

2008). In the Fifth Circuit, courts have held "an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better captures the anti-retaliation goals of that section." *Id.* at 626. "In order for an employee's communication to constitute a 'complaint,' the 'employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" *Lasater v. Tex. A&M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012) (*quoting Kasten v. Saint—Gobain Performance Plastics Corp.*, 563 U.S. 1, 13-14, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011)). "[T]he essence of the [complaint] inquiry . . . is whether [the employee] stepped out of his [employed] [**19] role . . . either to complain to his employer on behalf of [others], or in his own behalf, about a supposed violation or irregularity under or related to the FLSA." *See Hagan*, 529 F.3d at 629.

What the Fifth Circuit has not yet decided is whether a good faith belief is required for an FLSA complaint. *Id.* at 630 (declining to address whether an employee's good faith belief may give rise to protected activity, even when there is no actual FLSA violation). In this case, while the Plaintiff was not required to do her "homework" to ensure Defendant violated the FLSA, Plaintiff knew firsthand that her paycheck shortfall was a result of a computer error which was immediately corrected and thus not subject to any state or federal violation. **Please see Exhibit 2 (Response to Production, RFP2-001).**

In sum, Plaintiff cannot prove a good faith claim that Defendant feared that it had violated FLSA and had any incentive to retaliate against her for that reason or to create a

pretext otherwise.  As a matter of fact, the testimony cited by Plaintiff in her Motion clearly establishes that about 500 employees or workers of Defendant did not timely receive payroll due to a malfunction. It is unfathomable that Plaintiff would be the only employee to bring this issue up with Defendant. And if Defendant's motive was to fire each employee that brought up this issue, then surely Defendant would have non-renewed contract of not just Plaintiff but all these other employees. Plaintiff has produced no evidence of such mass action. The fact is that Defendant placed Plaintiff on administrative leave and did not renew her contract is independent of any fear of FLSA violations because no FLSA violation by Defendant occurred.

## V. CONCLUSION

Plaintiff's Motion for Summary Judgement fails to establish that there is no genuine issue of material fact on each element of each cause of action of Plaintiff.  Plaintiff cannot demonstrate that there is not genuine issue of material fact that (i) Defendant violated FLSA, (ii) Plaintiff  participated in protected activity under the FLSA; (iii) Defendant placed Plaintiff on administrative leave and did not renew Plaintiff's contract as an adverse employment action; and (iv) a causal link exists between the Plaintiff's activity and alleged Defendant's adverse action. Furthermore, Plaintiff's Motion also fails to establish that there is no genuine issue of material fact that Defendant did not place Plaintiff on administrative leave or not renew her contract because of her disruptive behavior. Therefore, Plaintiff's Motion should be denied in its entirety.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on November 26, 2025, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States District Court for the Southern District of Texas to all attorneys of record.

                                                   /s/ Ali Zakaria

                                                   Ali Zakaria