# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IMANI CHINDA,

v.

HSA ST. JOSEPH LLC.

Case No. 4:24-cv-5106

## DEFENDANT HSA ST. JOSEPH LLC'S AMENDED RESPONSE TO PLAINTIFF'S REQUESTS FOR PRODUCTION FIRST SET OF DISCOVERY

Pursuant to Federal Rule of Civil Procedure 33, Defendant **HSA St. Joseph LLC** provides the following Bates-numbered document to its amended response to Plaintiff's Requests for Production originally served on April 4, 2025, as amended on August 19, 2025:

**RFP 1-23.**

Contained in the attached Bates-numbered RFP file.

WHEREFORE, HSA submits this amended list of documents as part of its Amended Response to Plaintiff's Requests for Production in the First Set of Discovery.

DATED: AUGUST 22, 2025

Houston, Texas

*/s/ Asim Ghafoor*

Asim Ghafoor (SDTX Bar #1384109)
HSA Regional Counsel
1401 St. Joseph Parkway
Houston, TX 77002
(202) 330 1469
aghafoor@hsahospitals.com
Attorney for HSA

## CERTIFICATION OF ASIM GHAFOOR

I certify under penalty of perjury that the foregoing supplemental responsive documents to Plaintiff's Requests for Production is true and correct to the best of my knowledge, information, belief, understanding, or recollection, with the understanding that the HSA St. Joseph, LLC is continuing to research its responses to Plaintiff's interrogatories, requests for production and requests for admissions, and reserves the right to further supplement its responses.

Asim Ghafoor

Dated: August 22, 2025                                        */s/ Asim Ghafoor*

## Application for Employment



Applicant Name: **Imani Chinda**
Application Date: **February 21, 2023 10:38 PM UTC**

Requisition #: **123223**
Job Title: **Steward Traveler Network RN III**
Schedule: **Full Time**
Shift: **Night Shift**
Organization: **Steward West Shared Services - West - Steward Health Care**

### Introduction

**Application for Employment**
It is the policy of Steward Health Care System to provide equal employment opportunity to all regardless of race, color, religious creed, sex, age, national origin, ancestry, military status, sexual orientation, genetic information or disability. Please answer every question accurately and completely, even if you are attaching a resume. If you need assistance completing this application, it will be provided.

### Resume

**Cover Letter & Resume**
Please upload and attach the indicated documents.

Cover Letter:
Resume: **Imani Chinda Nursing Resume .docx**

### Contact Info

**Contact Information**
First Name: **\*Imani**
MI:
Last Name: **\*Chinda**
Preferred Name:
Email Address: **\*imanichinda21@gmail.com**

**Mailing Address**
Present Address: **\*4001 Corder St. Apt 221**
City/Town: **\*Houston**
State: **\*TX**
Zip: **\*77021**

**Permanent Address (if different):**
Permanent Address:
City:
State:
Zip:

**Phone Information**
Primary Phone Number: **\*(832)875-0251**
Phone Type: **\*Cell**
Alternate Phone Number:
Phone Type:
Preferred Contact Method? **\*Cell Phone**

**Salary & Availability**
Salary Expected:
Are you willing to rotate shifts? **\*No**

### Licensure

**Professional Licensure/Registry/Certifications**
Do you have any professional licensures? **\*Yes**

**Professional Licensure/Registry/Certifications 1**

**Credential Information**
License/Certification/Registration: *RN
State: *TX
License Number: *962416
License Issued: *02/12/2019
License Expired: *01/31/2024

If you have a professional license, has the issuing agency ever disciplined you or restricted the scope of your practice in this state or any other state in which you have been licensed? *No
Have you surrendered your license for any reason? *No
Are you currently excluded, suspended, debarred or otherwise ineligible to participate in any Federal health care programs? *No

**Education**

**Education History**
What is your highest level of education? *Bachelor's Degree

**Education History Review**
Please review your education history. Use the Add More Education button to add additional education.

**Education History Review 1**

**School Information**
Name of School: *Prairie View A&M
University:College of Nursing
City: *Houston
State: *TX
Province:
Country: *USA

**Degree Information**
Degree Type: *Bachelors
Major: *Nursing
Did you graduate? Yes
Start Date:
End Date:

**Work Experience**

**Work History**
List most recent positions first. Please provide history for the previous 10 years (if applicable). You may include military service and any verifiable work performed on a volunteer basis.

How many years of relevant experience to this position do you have? *2-3 years
Are you currently employed? *No

**Work Experience**
Please review your employment history. Use the Add Work Experience button to enter additional employment information.

**Work Experience 1**

**Company Information**
Employer Name: *Lyndon B Johnson Hospital
Street Address: 5656 Kelley St, Houston, TX

**Position Information**
Position Held: *Registered Nurse
Employed From: *02/18/2019

RFP2-002

77026
City: *Houston
State: *TX
Zip:
Tel No.: *(713) 566-5100

Are you currently employed here? *No
Employed To: *12/20/2019
Starting Salary:
Ending Salary:

**Supervisor Information**
Supervisor Name: *Angelica Aja
Title of Supervisor: *Nurse Manager
Email Address:

**Additional Details**
Job Duties and Responsibilities: *Antepartum, LDRP
Reason for Leaving *Quit/Resigned
May we contact for references?

## Work Experience 2

**Company Information**
Employer Name: *Angels of Care Pediatric Home Health
Street Address:
City: *Houston
State: *TX
Zip:
Tel No.: *(713) 799-2200

**Position Information**
Position Held: *Registered Nurse
Employed From: *01/20/2020
Are you currently employed here? *No
Employed To: *01/13/2021
Starting Salary:
Ending Salary:

**Supervisor Information**
Supervisor Name: *Kellie Moore
Title of Supervisor: *Manager
Email Address:

**Additional Details**
Job Duties and Responsibilities: *Pediatric home health nurse
Reason for Leaving *Quit/Resigned
May we contact for references? Yes

## Work Experience 3

**Company Information**
Employer Name: *St.Joseph Medical Center
Street Address:
City: *Houston
State: *TX
Zip:
Tel No.: *(713) 715-6075

**Position Information**
Position Held: *Registered Nurse
Employed From: *01/25/2021
Are you currently employed here? *No
Employed To: *03/04/2022
Starting Salary:
Ending Salary:

**Supervisor Information**
Supervisor Name: *Cassie De La Cruz
Title of Supervisor: *Nurse Manager
Email Address:

**Additional Details**
Job Duties and Responsibilities: *Mother/Baby couplet care Level 1 Nursery Nurse
Reason for Leaving *Quit/Resigned
May we contact for references? Yes

## Work Experience 4

**Company Information**
Employer Name: *Swedish Hospital- First Hill Campus
Street Address:
City: *Seattle
State: *WA
Zip:
Tel No.: *(888) 456-2817

**Position Information**
Position Held: *Travel Nurse
Employed From: *03/14/2022
Are you currently employed here? *No
Employed To: *06/11/2022
Starting Salary:
Ending Salary:



**Steward National Traveler Network
Assignment Agreement**

This Traveler Employee Assignment Agreement (the "Agreement") is made and entered into as of this _3_ day of _August_, 2024 by and between Imani Chinda ("Employee/Traveler") and Steward Health Care System LLC ("Steward") for services to be performed at St. Joseph Medical Center (Primary Hospital) and other Steward Hospital locations as may be assigned.

**WHEREAS** Employee Traveler desires to be employed by Steward Healthcare System LLC ("Steward") and its campuses to provide patient care services at the Hospitals on a temporary basis.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **SCHEDULING HOURS.** Employee Traveler agrees to be scheduled to work at least Seventy -Two (72) hours per pay period, including two weekend shifts per pay period for_4_ weeks (length of employment period). Employee Traveler's hours will be scheduled/ approved by the Department Director, to meet the Hospitals' units' needs. This is including On Call as applicable to department needs. Employee Traveler shall be scheduled for shifts starting on 8/3/2024 and ending on 8/31/2024.

   Employee Traveler understands that if Employee Traveler is requested not to report for Employee Traveler's scheduled shift at the Hospitals as a result of low census, Employee Traveler may be required to report to work at an affiliate hospital.

2. **HOLIDAYS.** Employee Traveler agrees to work at least one (1) of the three (3) major holidays and two (2) of the three (3) minor holidays during the dates of the Agreement, as needed by the unit. Employee Traveler agrees that self-canceling for a holiday will result in termination of this Agreement. Timeframes for these holidays are from 7:00PM of the holiday eve through 7:00PM of the holiday night.
   a. The three (3) major holidays are defined as Thanksgiving, Christmas Day, and New Year's Day.
   b. The three (3) minor holidays are defined as Memorial Day, Fourth of July, and Labor Day.

3. **ABSENCES.** Employee Traveler understands that an absence on a scheduled holiday or absence/sick occurrences in excess of three (3) within a contract period may result in immediate termination of the Agreement. In the event extensions are offered, Steward Policy of 4 absences in a rolling 12 months period is followed.

4. **COMPENSATION TO EMPLOYEE TRAVELER.** Employee Traveler's rate of compensation ("Compensation") and all applicable terms regarding Compensation are

set forth below.   All Compensation shall be subject to deductions for applicable payroll taxes, social security, or any other deduction required by law or any governmental body.

**a.  Base Rate of Pay:**

|      |           |      |
|------|-----------|------|
| i.   | Hourly    | $60  |
| ii.  | On- Call  | $4   |
| iii. | Evenings  | $4   |
| iv.  | Nights    | $4   |
| v.   | Weekend   | $0   |

1. Employee Traveler's shift differentials will be approved based on the majority of hours worked each shift if applicable.
   a. Evenings 2pm-1030pm/3pm-1130pm
   b. Nights 6pm-630am/7pm-730am
2. Employee Traveler is not eligible for merit increases.
3. Employee Traveler is eligible for call back pay at 1.5x base rate. Callback is defined as being On-Call and being called in while off campus.
4. Holiday Pay will be paid at 1.5x base rate.
5. Overtime will be paid for regular hours worked in excess of 40 hours/week at 1.5x base rate.
6. In the event that overtime hours are being offered for extra shifts, the Employee Traveler must first meet the required contracted hours prior to being eligible for any bonus/incentive offered.

5. **PRE-EMPLOYMENT REQUIREMENTS.** Employee Traveler understands that a pre-employment history, physical exam, background check and urine drug screen are requirements for assignment at Steward.

6. **BENEFITS.** Pursuant to the company's benefit plan, Employee Traveler understands and agrees that Employee Traveler will not be eligible for employee benefits. Employee Traveler also understands that Employee Traveler is not eligible for Paid Time Off and none shall be accrued.

7. **NOTICES.** Any demand, request, notice or other communication which either party to the agreement desires or may be required to make or deliver to the other shall be in writing and shall be deemed delivered when personally delivered or three days (3) after being deposited in the United States mail, postage prepaid, in registered or certified form, return receipt requested, addressed to the Employee at the set forth in his/ her personnel file maintained by Steward.

8. **AMENDMENTS.** This Agreement may be amended or modified, or compliance with any provision hereof waived, only by a written instrument signed by both Steward and the Employee Traveler.

9. **GOVERNING LAW.** The Agreement shall be governed by, and constructed and enforced in accordance with, the laws of the state in which the Hospitals are located.

10. **NO IMPLIED WAIVER.** Any waiver of enforcement of any provision of waiver of any breach of this Agreement, whether or not recurring, shall not be constructed as a waiver of a subsequent enforcement of breach of the same or any other provision of the Agreement.

11. **EMPLOYEE TRAVELER'S ACKNOWLEDGMENT.** The Employee Traveler has read this agreement in its entirety, understands its contents, and freely enters into and executes this agreement, intending to be bound by the provisions hereof. The Employee Traveler understands and acknowledges that the Employee Traveler's assignment at Hospitals is at all times subject to the terms and conditions of the Steward Employee Policies and Procedures as well as the policies and procedures of Hospitals apply to travel regardless of Traveler Employee's non-Employee status. Furthermore, the Employee Traveler understands, acknowledges, and agrees that this Agreement is being entered into at the mutual consent of Employee Traveler and Steward and, further the Employee Traveler's employment is "at will" and either Steward or the Employee Traveler can terminate this Agreement at any time, with or without cause or notice.

IN WITNESS THEREOF, Steward and the Employee Traveler have executed this Agreement as of the dates set forth above, intending to be bound hereby.

_____
(Steward Designee Printed Name)

_____
(Traveler Employee Printed Name)

_____
(Steward Designee Signature)

_____
(Traveler Employee Signature)

_____
(Date)

_____
(Date)



**Steward National Traveler Network
Assignment Agreement**

This Traveler Employee Assignment Agreement (the "Agreement") is made and entered into as of this _3_ day of _August_, 2024 by and between Imani Chinda ("Employee/Traveler") and Steward Health Care System LLC ("Steward") for services to be performed at St. Joseph Medical Center (Primary Hospital) and other Steward Hospital locations as may be assigned.

**WHEREAS** Employee Traveler desires to be employed by Steward Healthcare System LLC ("Steward") and its campuses to provide patient care services at the Hospitals on a temporary basis.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **SCHEDULING HOURS.** Employee Traveler agrees to be scheduled to work at least Seventy -Two (72) hours per pay period, including two weekend shifts per pay period for_4_ weeks (length of employment period). Employee Traveler's hours will be scheduled/ approved by the Department Director, to meet the Hospitals' units' needs. This is including On Call as applicable to department needs. Employee Traveler shall be scheduled for shifts starting on 8/3/2024 and ending on 8/31/2024.

   Employee Traveler understands that if Employee Traveler is requested not to report for Employee Traveler's scheduled shift at the Hospitals as a result of low census, Employee Traveler may be required to report to work at an affiliate hospital.

2. **HOLIDAYS.** Employee Traveler agrees to work at least one (1) of the three (3) major holidays and two (2) of the three (3) minor holidays during the dates of the Agreement, as needed by the unit. Employee Traveler agrees that self-canceling for a holiday will result in termination of this Agreement. Timeframes for these holidays are from 7:00PM of the holiday eve through 7:00PM of the holiday night.
   a. The three (3) major holidays are defined as Thanksgiving, Christmas Day, and New Year's Day.
   b. The three (3) minor holidays are defined as Memorial Day, Fourth of July, and Labor Day.

3. **ABSENCES.** Employee Traveler understands that an absence on a scheduled holiday or absence/sick occurrences in excess of three (3) within a contract period may result in immediate termination of the Agreement. In the event extensions are offered, Steward Policy of 4 absences in a rolling 12 months period is followed.

4. **COMPENSATION TO EMPLOYEE TRAVELER.** Employee Traveler's rate of compensation ("Compensation") and all applicable terms regarding Compensation are

set forth below.  All Compensation shall be subject to deductions for applicable payroll taxes, social security, or any other deduction required by law or any governmental body.

**a.  Base Rate of Pay:**

|      |          |      |
|------|----------|------|
| i.   | Hourly   | $60  |
| ii.  | On- Call | $4   |
| iii. | Evenings | $4   |
| iv.  | Nights   | $4   |
| v.   | Weekend  | $0   |

1. Employee Traveler's shift differentials will be approved based on the majority of hours worked each shift if applicable.
    a. Evenings 2pm-1030pm/3pm-1130pm
    b. Nights 6pm-630am/7pm-730am
2. Employee Traveler is not eligible for merit increases.
3. Employee Traveler is eligible for call back pay at 1.5x base rate. Callback is defined as being On-Call and being called in while off campus.
4. Holiday Pay will be paid at 1.5x base rate.
5. Overtime will be paid for regular hours worked in excess of 40 hours/week at 1.5x base rate.
6. In the event that overtime hours are being offered for extra shifts, the Employee Traveler must first meet the required contracted hours prior to being eligible for any bonus/incentive offered.

5. **PRE-EMPLOYMENT REQUIREMENTS.** Employee Traveler understands that a pre-employment history, physical exam, background check and urine drug screen are requirements for assignment at Steward.

6. **BENEFITS.** Pursuant to the company's benefit plan, Employee Traveler understands and agrees that Employee Traveler will not be eligible for employee benefits. Employee Traveler also understands that Employee Traveler is not eligible for Paid Time Off and none shall be accrued.

7. **NOTICES.** Any demand, request, notice or other communication which either party to the agreement desires or may be required to make or deliver to the other shall be in writing and shall be deemed delivered when personally delivered or three days (3) after being deposited in the United States mail, postage prepaid, in registered or certified form, return receipt requested, addressed to the Employee at the set forth in his/ her personnel file maintained by Steward.

8. **AMENDMENTS.** This Agreement may be amended or modified, or compliance with any provision hereof waived, only by a written instrument signed by both Steward and the Employee Traveler.

RFP2-008

9. **GOVERNING LAW.** The Agreement shall be governed by, and constructed and enforced in accordance with, the laws of the state in which the Hospitals are located.

10. **NO IMPLIED WAIVER.** Any waiver of enforcement of any provision of waiver of any breach of this Agreement, whether or not recurring, shall not be constructed as a waiver of a subsequent enforcement of breach of the same or any other provision of the Agreement.

11. **EMPLOYEE TRAVELER'S ACKNOWLEDGMENT.** The Employee Traveler has read this agreement in its entirety, understands its contents, and freely enters into and executes this agreement, intending to be bound by the provisions hereof. The Employee Traveler understands and acknowledges that the Employee Traveler's assignment at Hospitals is at all times subject to the terms and conditions of the Steward Employee Policies and Procedures as well as the policies and procedures of Hospitals apply to travel regardless of Traveler Employee's non-Employee status. Furthermore, the Employee Traveler understands, acknowledges, and agrees that this Agreement is being entered into at the mutual consent of Employee Traveler and Steward and, further the Employee Traveler's employment is "at will" and either Steward or the Employee Traveler can terminate this Agreement at any time, with or without cause or notice.

IN WITNESS THEREOF, Steward and the Employee Traveler have executed this Agreement as of the dates set forth above, intending to be bound hereby.

_____
(Steward Designee Printed Name)

_____
(Traveler Employee Printed Name)

_____
(Steward Designee Signature)

_____
(Traveler Employee Signature)

_____
(Date)

_____
(Date)

DocuSign Envelope ID: C5D6AF80-AA0F-4EC8-9E34-75D559A3EA6E



**Steward National Traveler Network**
**Assignment Agreement**

This Traveler Employee Assignment Agreement (the "Agreement") is made and entered into as of this **21st**____ day of **February**__, **2023**____ by and between **Imani Chinda**_____ ("Employee/Traveler") and Steward Health Care System LLC ("Steward") for services to be performed at **St Joseph Medical Center**_____ (Primary Hospital) and other Steward Hospital locations as may be assigned

**WHEREAS** Employee Traveler desires to be employed by Steward Healthcare System LLC ("Steward") and its campuses to provide patient care services at the Hospitals on a temporary basis.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Scheduling Hours.** Employee Traveler agrees to be scheduled to work at least seventy-two (72) hours per pay period, including two weekend shifts per pay period for **13**___ weeks (length of employment period). Employee Traveler's hours will be scheduled/ approved by the Nursing Director, to meet the Hospitals' units' needs. Employee Traveler shall be scheduled for shifts starting on **3/6/23**____ and ending on **6/3/23**____.

   Employee Traveler understands that if Employee Traveler is requested not to report for Employee Traveler's scheduled shift at the Hospitals as a result of low census, Employee Traveler may be required to report to work at an affiliate hospital.

2. **Guarantee of Scheduled Hours.** Employee Traveler is guaranteed to be scheduled for Seventy-two (72) hours bi-weekly. Employee Traveler may be cancelled hours equal to one (1) shift per pay period based on staffing needs. Employee Traveler's position is dependent upon staffing needs and patient census/ acuity, and periodic adjustments shall occur based upon Hospitals' business and patient care needs. Employee Traveler may be required to float to similar departments of competency within affiliated hospitals.

3. **HOLIDAYS.** Employee Traveler agrees to work at least one (1) of the three (3) major holidays and two (2) of the three (3) minor holidays during the dates of the Agreement, as needed by the unit. Employee Traveler agrees that self-canceling for a holiday will result in termination of this Agreement.
   a. The three (3) major holidays are defined as Thanksgiving, Christmas Day, and New Year's Day. Timeframes for these holidays are from 7:00PM of the holiday eve through 7:00PM of the holiday night.

DocuSign Envelope ID: C5D6AF80-AA0F-4EC8-9E34-75D559A3EA6E

  b. The minor holidays are defined as Memorial Day, Fourth of July, and Labor Day.

4. **ABSENCES.** Employee Traveler understands that an absence on a scheduled holiday or absence/ sick occurrences in excess of three (3) per contract may result in immediate termination of the Agreement.

5. **COMPENSATION TO EMPLOYEE TRAVELER.** Employee Traveler's rate of compensation ("Compensation") and all applicable terms regarding Compensation are set forth below. All Compensation shall be subject to deductions for applicable payroll taxes, social security, or any other deduction required by law or any governmental body.

   a. **Base Rate of Pay:**      **60.00**
      i. Hourly          $_____
      ii. On- Call          $4.00
      iii. Shift Differential     $4.00
         1. Employee Traveler is not eligible for merit increases.
         2. Employee Traveler is eligible for call back pay at 1.5x base rate.
         3. Overtime will be paid for all hours worked in excess of 40 hours/week.
         4. In the event that overtime hours are being offered for extra shifts, the Employee Traveler must first meet the required minimum hours prior to the bonus being in effect.

   b. **Incentive Pay:**         **5.00**
      i. Hourly         $_____
         1. Employee Traveler's incentive pay will be approved based on the evaluation of market conditions for each Steward Hospital. Eligible Employee Traveler must work all scheduled shifts in the pay period to be eligible. Incentive pay will be forfeited if there are any unscheduled absences during the pay period. Hours more than 40 per work week will be paid at the applicable overtime rate.

   c. **Completion Bonus**       **N/A**
      i. Bonus Amount:       $_____
         1. Employee Traveler's completion bonus will be approved based on the evaluation of market conditions for each Steward Hospital. Eligible Employee Traveler must work all scheduled shifts in the contract period to be eligible. Completion bonus is not prorated. Employee Traveler must complete the terms of this agreement to be eligible for payment. This Bonus is subject to all applicable taxes required by law.

6. **TRAVEL/HOUSING**       **N/A**
   a. Travel/Housing Benefits of $_____/mo are available to Employee Traveler if Employee Traveler is temporarily relocating to the assigned Hospital from a

DocuSign Envelope ID: C5D6AF80-AA0F-4EC8-9E34-75D559A3EA6E

distance greater than 100 miles from the Employee Traveler's residence. Proof of permanent (prior) residence and temporary (existing) residence must be provided to receive a monthly stipend. Employee Traveler may be eligible for a total of three (3) monthly payments during thirteen (13) week contract. Employee Traveler will be responsible for submitting required documentation for the stipend via Concur or any other method identified by Steward. Employee Traveler will be solely responsible for all federal, state and local taxes associated with such stipend, and shall indemnify and hold the Company harmless against all such taxes or contributions, including penalties and interest, with regard to payments made pursuant to this Paragraph 6(a)

b.  Employee Traveler agrees that in the event that Employee Traveler receives housing benefits from Steward under any provision and voluntarily does not complete Traveler's contracted Employee assignment under the terms of this Agreement, Employee Traveler will have an amount equal to the amount of the housing allowance paid to Employee Traveler  prorated and deducted from Traveler's final paycheck.

7.  **INITIAL TRIP COMPENSATION.** If Employee Traveler is traveling from 100+ miles to begin Traveler's assignment under this Agreement, Employee Traveler shall be reimbursed one time, one way mileage allowance of IRS allowable per mile reimbursement. This mileage reimbursement is subject to all applicable taxes required by law.

8.  **PRE-EMPLOYMENT REQUIREMENTS.** Employee Traveler understands that a pre-employment history, physical exam, background check and urine drug screen are requirements for assignment at Steward.

9.  **BENEFITS.** Pursuant to the company's benefit plan, Employee Traveler understands and agrees that Employee Traveler will be eligible for employee benefits to begin on the first business day of the following month of hire. Employee Traveler also understands that Employee Traveler is not eligible for Paid Time Off and none shall be accrued.

10. **NOTICES.** Any demand, request, notice or other communication which either party to the agreement desires or may be required to make or deliver to the other shall be in writing and shall be deemed delivered when personally delivered or three days (3) after being deposited in the United States mail, postage prepaid, in registered or certified form, return receipt requested, addressed to the Employee  at the set forth in his/ her personnel file maintained by Steward.

11. **AMENDMENTS.** This Agreement may be amended or modified, or compliance with any provision hereof waived, only by a written instrument signed by both Steward and the Employee Traveler.

12. **GOVERNING LAW.** The Agreement shall be governed by, and constructed and enforced in accordance with, the laws of the state in which the Hospitals are located

DocuSign Envelope ID: C5D6AF80-AA0F-4EC8-9E34-75D559A3EA6E

13. **NO IMPLIED WAIVER.** Any waiver of enforcement of any provision of waiver of any breach of this Agreement, whether or not recurring, shall not be constructed as a waiver of a subsequent enforcement of breach of the same or any other provision of the Agreement.

14. **EMPLOYEE TRAVELER'S ACKNOWLEDGMENT.** The Employee Traveler has read this agreement in its entirety, understands its contents, and freely enters into and executes this agreement, intending to be bound by the provisions hereof. The Employee Traveler understands and acknowledges that the Employee Traveler's assignment at Hospitals is at all times subject to the terms and conditions of the Steward Employee Policies and Procedures as well as the policies and procedures of Hospitals apply to travel regardless of Traveler Employee's non-Employee status. Furthermore, the Employee Traveler understands, acknowledges and agrees that this Agreement is being entered into at the mutual consent of Employee Traveler and Steward and, further the Employee Traveler's employment is "at will" and either Steward or the Employee Traveler can terminate this Agreement at any time, with or without cause or notice.

IN WITNESS THEREOF, Steward and the Employee Traveler have executed this Agreement as of the dates set forth above, intending to be bound hereby.

**Crystal Justice**
_____
(Steward Designee Printed Name)

_Crystal Justice_
_____
(Steward Designee Signature)

2/21/2023
_____
(Date)

**Imani Chinda**
_____
(Traveler Employee Printed Name)

_Imani Chinda_
_____
(Traveler Employee Signature)

2/21/2023
_____
(Date)

RFP2-013

| Statement of Earnings for   Imani A Chinda | | | | | | St Joseph Medical Center 1401 ST Joseph Pkwy Houston, TX 77002 | | |
|---|---|---|---|---|---|---|---|---|

| Employee #: | 177635 | Company | 4119 | Period Begin: | 10/27/2024 | Check Date: | 11/15/2024 |
|---|---|---|---|---|---|---|---|
| Clock Number: | | Job | SWNUR110 | Period End: | 11/9/2024 | Pay Type: | Hourly |
| Company Id: | CN449924 | Federal Filing: | Single or | Exemptions: | Block | Additional Tax: | |
| | | State Filing: | | Exemptions: | | Additional Tax: | |

| Voucher Id | Check Amount | Gross Pay | Net Pay | Check Message |
|---|---|---|---|---|
| V53818968 | $0.00 | $1,739.00 | $1,605.98 | |

| EARNINGS | *Not included in Totals | | ^Hrs/Units = Units (Units not included in Totals) | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hrs/Units | Dollars | YTD Hrs/Unit | YTD Dollars | Description | Current | YTD | Description | Current | YTD |
| Regular | 60.0000 | 0.25 | 15.00 | 61.50 | 3,690.00 | SOC SEC EE | 107.81 | 385.42 | | | |
| Wknd Shift | 60.0000 | 1.00 | 60.00 | 1.00 | 60.00 | MED EE | 25.21 | 90.14 | | | |
| Wknd Night | 60.0000 | 12.50 | 864.00 | 12.50 | 864.00 | | | | | | |
| Night Shift | 60.0000 | 12.50 | 800.00 | 12.50 | 800.00 | | | | | | |
| PTO | | | 0.00 | 12.00 | 720.00 | | | | | | |
| Diff Even Adj | | | 0.00 | 36.50 | 0.00 | | | | | | |
| Diff Night Adj | | | 0.00 | 40.00 | 82.50 | | | | | | |
| Total: | | 26.25 | 1,739.00 | 176.00 | 6,216.50 | Total: | 133.02 | 475.56 | Total: | 0.00 | 0.00 |

| LEAVE ACCRUAL | | DISTRIBUTION OF NET PAY | | |
|---|---|---|---|---|
| Accrual Type | | Checking | Account: ####8053 | Deposit Amount: 1,605.98 |

St Joseph Medical Center
1401 ST Joseph Pkwy
Houston, TX 77002

| CHECK DATE | VOUCHER ID |
|---|---|
| 11/15/2024 | V53818968 |

| TOTAL NET PAY |
|---|
| ******$1,605.98 |

Imani A Chinda
1755 Crescent Plaza Dr #3038
Houston, TX 77077

**NOT NEGOTIABLE**

RFP2-014

Statement of Earnings for Imani A Chinda

St Joseph Medical Center
1401 ST Joseph Pkwy
Houston, TX 77002

| | | |
|---|---|---|
| Employee #: 177635 | Company 4119 | Period Begin: 10/13/2024 | Check Date: 11/1/2024 |
| Clock Number: CN449924 | Job SWNUR110 | Period End: 10/26/2024 | Pay Type: Hourly |
| Company Id: CN449924 | Federal Filing: Single or | Exemptions: Block | Additional Tax: |
| | State Filing: | Exemptions: | Additional Tax: |

| Voucher Id | Check Amount | Gross Pay | Net Pay | Check Message |
|---|---|---|---|---|
| V53583158 | $0.00 | $1,485.00 | $1,371.40 | |

| EARNINGS | *Not included in Totals | ^Hrs/Units = Units (Units not included in Totals) | | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Rate Hrs/Units | Dollars YTD Hrs/Unit | | YTD Dollars | Description | Current | YTD | Description | Current | YTD |
| Regular | 60.0000  24.75 | 1,485.00  24.75 | | 1,485.00 | SOC SEC EE | 92.07 | 92.07 | | | |
| Diff Night Adj | 12.50 | 0.00  12.50 | | 0.00 | MED EE | 21.53 | 21.53 | | | |
| **Total:** | 37.25  1,485.00 | 37.25 | | 1,485.00 | **Total:** | 113.60 | 113.60 | **Total:** | 0.00 | 0.00 |

| LEAVE ACCRUAL | DISTRIBUTION OF NET PAY |
|---|---|
| Accrual Type | Checking   Account: ####8053   Deposit Amount: 1,371.40 |

St Joseph Medical Center
1401 ST Joseph Pkwy
Houston, TX 77002

| CHECK DATE | VOUCHER ID |
|---|---|
| 11/1/2024 | V53583158 |

| TOTAL NET PAY |
|---|
| ******$1,371.40 |

Imani A Chinda
1755 Crescent Plaza Dr #3038
Houston, TX 77077

**NOT NEGOTIABLE**

RFP2-015

| Statement of Earnings for | Imani A Chinda | | | | | St Joseph Medical Center |
|---|---|---|---|---|---|---|
| Employee #: | 177635 | Company | 4119 | Period Begin: | 10/27/2024 | Check Date: | 11/4/2024 | 1401 ST Joseph Pkwy |
| Clock Number: | | Job | SWNUR110 | Period End: | 11/9/2024 | Pay Type: | Hourly | Houston, TX 77002 |
| Company Id: | CN449924 | Federal Filing: | Single or | Exemptions: | Block | Additional Tax: | | |
| | | State Filing: | | Exemptions: | | Additional Tax: | | |

| Check Number | Check Amount | Gross Pay | Net Pay | Check Message |
|---|---|---|---|---|
| 20233 | $2,687.38 | $2,910.00 | $2,687.38 | |

| EARNINGS | *Not included in Totals | | ^Hrs/Units = Units (Units not included in Totals) | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hrs/Units | Dollars | YTD Hrs/Unit | YTD Dollars | Description | Current | YTD | Description | Current | YTD |
| Regular | 60.0000 | 36.50 | 2,190.00 | 61.25 | 3,675.00 | SOC SEC EE | 180.42 | 277.61 | | | |
| PTO | 60.0000 | 12.00 | 720.00 | 12.00 | 720.00 | MED EE | 42.20 | 64.93 | | | |
| Diff Even Adj | | 36.50 | 0.00 | 36.50 | 0.00 | | | | | | |
| Diff Night Adj | | | 0.00 | 40.00 | 82.50 | | | | | | |
| **Total:** | | 85.00 | 2,910.00 | 149.75 | 4,477.50 | **Total:** | 222.62 | 342.54 | **Total:** | 0.00 | 0.00 |

| LEAVE ACCRUAL | DISTRIBUTION OF NET PAY |
|---|---|
| Accrual Type | |

St Joseph Medical Center
1401 ST Joseph Pkwy
Houston, TX 77002

| CHECK DATE | CHECK NUMBER |
|---|---|
| 11/4/2024 | 20233 |

| CHECK AMOUNT |
|---|
| ******$2,687.38 |

Imani A Chinda
1755 Crescent Plaza Dr #3038
Houston, TX 77077

**NOT NEGOTIABLE**

RFP2-016

| Statement of Earnings for | Imani A Chinda | | St Joseph Medical Center |
|---|---|---|---|

| Employee #: | 177635 | Company | 4119 | Period Begin: | 10/13/2024 | Check Date: | 11/7/2024 | 1401 ST Joseph Pkwy |
|---|---|---|---|---|---|---|---|---|
| Clock Number: | | Job | SWNUR110 | Period End: | 10/26/2024 | Pay Type: | Hourly | Houston, TX 77002 |
| Company Id: | CN449924 | Federal Filing: | Single or | Exemptions: | Block | Additional Tax: | | |
| | | State Filing: | | Exemptions: | | Additional Tax: | | |

| Voucher Id | Check Amount | Gross Pay | Net Pay | Check Message |
|---|---|---|---|---|
| V53712804 | $0.00 | $82.50 | $76.18 | |

| EARNINGS | *Not included in Totals | | ^Hrs/Units = Units (Units not included in Totals) | | TAXES | | | DEDUCTIONS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Description | Rate | Hrs/Units | Dollars YTD Hrs/Unit | YTD Dollars | Description | Current | YTD | Description | Current | YTD |
| Diff Night Adj | 3.0000 | 27.50 | 82.50  40.00 | 82.50 | SOC SEC EE | 5.12 | 97.19 | | | |
| Regular | | | 0.00  24.75 | 1,485.00 | MED EE | 1.20 | 22.73 | | | |

| Total: | | 27.50 | 82.50  64.75 | 1,567.50 | Total: | 6.32 | 119.92 | Total: | 0.00 | 0.00 |

| LEAVE ACCRUAL | | DISTRIBUTION OF NET PAY | | |
|---|---|---|---|---|
| Accrual Type | | Checking | Account: ####8053 | Deposit Amount: 76.18 |

St Joseph Medical Center
1401 ST Joseph Pkwy
Houston, TX 77002

| CHECK DATE | VOUCHER ID |
|---|---|
| 11/7/2024 | V53712804 |

| TOTAL NET PAY |
|---|
| *********$76.18 |

Imani A Chinda
1755 Crescent Plaza Dr #3038
Houston, TX 77077

**NOT NEGOTIABLE**

RFP2-017

# Time Detail

| | | | |
|---|---|---|---|
| Time Period: | Current Pay Period | Data Up To Date: | 10/18/2024 8:21:32 AM |
| Query: | All Home and Transferred-in* | Executed on: | 10/18/2024 9:17AM GMT-04:00 |
| Actual/Adjusted: | Show hours worked in this period only. | Printed for: | dfl03 |
| | | Insert Page Break After Each Employee: | No |

| Employee: | Chinda, Imani A | ID: | 177635 | Time Zone: | Central |
|---|---|---|---|---|---|
| Status: | Active | Status Date: | 2/9/2024 | Pay Rule: | SW TRAVELER 1 |
| Primary Account | | Start | End | | |
| SJ/4119/-/40000/521430/SWNUR110/- | | 8/4/2024 | Forever | | |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Xfr/Move:* Account | | *Comment* | | | *Xfr: Work Rule* | | | | | | |
| 10/16/2024 | | 6:30:00 PM | | 7:26:00 AM | | | | | | 12.50 | 12.50 |
| 10/17/2024 | | 6:24:00 PM | | 6:53:00 AM | | | | | | 12.00 | 24.50 |

| Labor Account Summary | Pay Code | Hours | Money | Days |
|---|---|---|---|---|
| SJ/4119/-/40000/521430/SWNUR110/- | | | | |
| | ALL PRODUCTIVE | 24.50 | | |
| | DIFF NIGHT ADJ | 24.50 | | |
| | REGULAR | 24.50 | | |
| Combined Pay Code Summary | Pay Code | Hours | Money | Days |
| | ALL PRODUCTIVE | 24.50 | | |
| Totals: | | 24.50 | $0.00 | 0.00 |
| Pay Code Summary | Pay Code | Hours | Money | Days |
| | DIFF NIGHT ADJ | 24.50 | | |
| | REGULAR | 24.50 | | |
| Totals: | | 49.00 | $0.00 | 0.00 |

| Employee: | Chirinos, Nimia | ID: | 110119 | Time Zone: | Central |
|---|---|---|---|---|---|
| Status: | Active | Status Date: | 3/28/2003 | Pay Rule: | SJ SftB Hol |
| Primary Account | | Start | End | | |
| SJ/40510/155404/ADS143/- | | 5/12/2024 | Forever | | |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Xfr/Move:* Account | | *Comment* | | | *Xfr: Work Rule* | | | | | | |
| 10/13/2024 | | 6:17:00 PM | | 6:54:00 AM | | | | | | 12.25 | 12.25 |
| 10/14/2024 | | 6:18:00 PM | | 6:53:00 AM | | | | | | 12.25 | 24.50 |

RFP2-018



# Missed Punch Correction Form

Name: __Chinda, Imani__     Unit Worked : __FBC__

| Week 2 | Date | Time-In | Time-Out | Lunch | Total Hours |
|---|---|---|---|---|---|
| Sun | | | | | |
| Mon | | | | | |
| Tue | | | | | |
| Wed | 10/23 | 1825 | 0710 | 30min | |
| Thu | | | | | |
| Fri | | | | | |
| Sat | | | | | |

| Week 1 | Date | Time-In | Time-Out | No Lunch | Total Hours |
|---|---|---|---|---|---|
| Sun | | | | | |
| Mon | | | | | |
| Tue | | | | | |
| Wed | | | | | |
| Thu | | | | | |
| Fri | | | | | |
| Sat | 10/19 | called in | Ø PTO | | |

Reason: _____

_____

_alueri Cumda_     _____

Employee Signature                 Date

_Kri Jdapka_     __10/25/25__

Approved By                Date

RFP2-019

# TURN IN TO DEPARTMENT TIMEKEEPER

**ST JOSEPH**

## MANUAL EMPLOYEE TIME SHEET

Dept. Number **42505**    Dept. Name **FBC**    Pay Period_____

Employee Name    **Imani Chinda**    Exempt / Non-Exempt_____

Social Security #_____

| WEEK 1 | DATE | TIME IN | TIME OUT | TIME IN | TIME OUT | HOURS WORKED | | EVE DIFF | NIGHT DIFF | OTHER HOURS* CODE | HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SUN | | | | | | | | | | | |
| MON | | | | | | | | | | | |
| TUE | | | | | | | | | | | |
| WED | | | | | | | | | | | |
| THUR | | | | | | | | | | | |
| FRI | | | | | | | | | | | |
| SAT | | | | | | | | | | | |

| | REGULAR | CALLBACK | BIDSHIFT | OVERTIME | | EVE DIFF | NIGHT DIFF | OTHER HOURS* CODE | HOURS |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS WK 1 | | | | | | | | | |

| WEEK 2 | DATE | TIME IN | TIME OUT | TIME IN | TIME OUT | HOURS WORKED | | EVE DIFF | NIGHT DIFF | OTHER HOURS* CODE | HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SUN | | | | | | | | | | | |
| MON | | | | | | | | | | | |
| TUE | | | | | | | | | | | |
| WED | | | | | | | | | | | |
| THUR | 10/24 | 1930 | 0700 | | | | | | | | |
| FRI | | | | | | | | | | | |
| SAT | 10/26 | 1830 | 0700 | | | | | | | | |

| | REGULAR | CALLBACK | BIDSHIFT | OVERTIME | | EVE DIFF | NIGHT DIFF | OTHER HOURS* CODE | HOURS |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS WK 2 | | | | | | | | | |

| | REGULAR | CALLBACK | BIDSHIFT | OVERTIME | | EVE DIFF | NIGHT DIFF | OTHER HOURS* CODE | HOURS |
|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS PP | | | | | | | | | |

The above hours have been reviewed, verified and are approved for payment by:

**Signature of Supervisor**    _Angela Hernezzen_    Date **10/28/24**

| *Other Codes are: | PTOS | PTO Sick | PTOL | PTO Low Census | O | Oncall | EXC | Excluded Class |
|---|---|---|---|---|---|---|---|---|
| | PTOV | PTO Vacation | FTS | Frozen Sick Bank | C | Callback | ED | Education |
| | PTOU | PTO Unsch | CH | Charge | WK | WKEND Diff | OTHER | Write in Description |

Exempt Employees should have appropriate number of hours entered under Hours Worked for each day unless using PTO, etc.

RFP2-020


**ST JOSEPH**

Badge Number **3250434733**
Issued by _____ Date _2·19·24_

## NEW HIRE CLEARANCE FORM
Post-Offer Employment Physical, Background & Badge

Date: _2.19.24_

Full Name: _Imani Chinda_   Date of Birth: _01 15 1996_

Address: _1755 Crescent Plaza Dr. #3058_   Zipcode: _77077_

**Name as it will appear on badge**: _Imani Chinda_

Have you ever been employed for St. Joseph Medical Center? ☑ Yes ☐ No

Signature: _Almerii Chileeela_   Date _2 19 24_

| **HUMAN RESOURCES** |
| --- |

Pre Check Criminal Cleared: ☑ Yes ☐ No    Status: ☑ FT  ☐ PT1  ☐ PT2  ☐ PRN

**Job title on Badge:** _RN_    Effective Hire Date: _2·19·24_

Department: _FBC_    Department #: _____

HR Signature: _Raquel Wilm_    Date _2.19.24_

| **OCCUPATIONAL HEALTH SERVICES** |
| --- |

OHS Clearance: _Himong LUN_    Date _2-19-24_

Remarks: _TB= ✓   UDS= ✓_    _Covid = ✓_

| **Security** |
| --- |

Badge Printed: _____    Garage/Parking Lot: _____

## Please return to Human Resources to complete your New Hire Processing and receive your badge and parking assignment.

Revised 7/7/2016



# Information Systems Use and Confidentiality Agreement October 2019

Steward Health Care System

This agreement ("Agreement") for use by both Steward Health Care System LLC ("Steward") workforce members, which includes employees, volunteers, trainees, and other persons whose conduct, in the performance of work is under the direct control of Steward, whether or not they are paid by Steward ("**Workforce**"), and by vendors and other individuals needing access to Steward's information network who are not Workforce ("**Vendors**"). In the event a Vendor agreement or its corresponding Business Associate Agreement is in conflict with this Agreement, the applicable Vendor agreement or its corresponding Business Associate Agreement shall control.

Steward assures the confidentiality and security of its computing systems and information stored electronically, including but not limited to, medical records, human resource, payroll, fiscal, management, and any other non-public information that could subject the organization, the data owner, or the data subjects, to harm (including but not limited to financial damages, embarrassment, or damage to reputation) if the data were lost, stolen, accessed, or acquired by unauthorized individuals, (collectively, "**Confidential Information**").

In the course of my employment/assignment/affiliation/contractual relationship with Steward, and as a user of Steward computers, networks, devices and other systems used for Steward business, (collectively, **"Steward Information Resources"**), **I understand that I may come into contact with Steward's Confidential Information as a condition of my employment/assignment/ affiliation/contractual relationship, and as a condition of my obtaining and maintaining electronic access to any of Steward's Confidential Information, I agree to sign and comply with the terms of this Agreement.**

1. I will comply with all Steward policies and codes of conduct related to the security and privacy of Confidential Information with respect to Workforce, and with the terms of my Vendor agreement and its corresponding Business Associate Agreement with respect to Vendors, as applicable.

2. I will comply with all applicable federal and state laws as well as regulations related to protecting the privacy and/or security of an individual's protected health information, including but not limited to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended, and all applicable state laws and regulations relating to the privacy and/or security of an individual's personal information.

3. I will not access or view any of Steward's Confidential Information, other than what I have been authorized by Steward to view and is required to do my job. I will not make inquiries about Steward's Confidential Information for other personnel who do not have proper authorization to access such Confidential Information.

4. I will only disclose Steward's Confidential Information with proper authorization, when required by law or when otherwise authorized by Steward to do so. I will not disclose Steward's Confidential Information to those who do not have a need to know the information.This includes but is in no way limited to, unauthorized disclosure via social media (Twitter, Facebook, Instagram, personal email etc.).

5. I understand that my Steward user access ID(s), access code(s), pin(s), password(s) and authenticating information ("Login Credentials") used to access Steward Information Resources are an important aspect of Steward's Confidential Information. I understand that my Login Credentials are my own individual and personal code for gaining access to Steward Information Resources. I will protect my password and not disclose or share my password with any other person.

6. I will not download, store, print, delete, transmit, modify, view, use, disclose, or access Steward's Confidential Information via Steward Information Resources without appropriate authorization from Steward to do so.

RFP2-022

7. I will not remove copies, including, without limitation, printed copies, paper copies, or electronic copies, of Confidential Information from Steward premises without both receiving appropriate authorization from Steward to do so and applying appropriate safeguards.

8. If I am a Steward patient, I understand that I have a right to be provided access to my own patient account/medical record, but will not access such information except as authorized via Steward's Patient Portal or by contacting the medical records department or my physician for my medical record, the patient accounting department for my billing information, or, if applicable, the human resources department for my HR/payroll information.

9. I understand that I do not have the right to access the patient/medical information of my friends or family unless authorized by Steward to view and is required to do my job.

10. I will not access, use, store, transmit, or disclose Steward's Confidential Information from, or to, any remote information resource without the express authorization of Steward and, without applying appropriate security controls including encryption and anti-malware protection.

11. I will not leave a Steward Information Resource with access to Steward's Confidential Information unattended unless I log out or otherwise electronically lock the device to safeguard against unauthorized access.

12. I will not use Steward's Confidential Information in any manner that brings disrepute, damage, or ill will against Steward, its parent(s), affiliates, trustees, workforce and assigns

13. I will not make changes to any Steward Information Resource that has the effect of lessening the security of any Steward Information Resource or integrity of any of Steward's Confidential Information.

14. I will not use any Steward Information Resource to access or download material from the Internet or via social media which is inappropriate, offensive, illegal, or which could jeopardize the security of Steward Information Resource security.

15. I will only access or use Steward Information Resources I am officially authorized to access. I will only do so for the purpose of my employment function or the delivery of contractual obligations, and I will not demonstrate the operation or function of Steward Information Resources to unauthorized individuals.

16. I will not store Confidential Information on non-Steward Information Resources (e.g., PDAs, laptops) or transmit Confidential Information outside of Steward's network without the express authorization of Steward. If I do so, I agree that the data then becomes my sole responsibility to protect according to federal regulations, and I will take full accountability for any data loss or breach subject to paragraph 21 below.

17. I understand that Steward Information Resources are subject to monitoring. I agree to this monitoring and understand that computer access activity is subject to audit and I have no expectation of privacy while using Steward Information Resources.

18. Subject to applicable law, I understand that Steward may decide at any time without notice to no longer provide access to any Steward Informaton Resources. I understand that when my employment or contract ends, I may no longer use Steward Information Resources.

19. I will immediately report any inappropriate use or disclosure of Steward's Confidential Information, violation of policy related to the security and privacy of Confidential Information, or violation of this Agreement in accordance with my Steward entity's Incident Reporting protocol with respect to Workforce or the relevant agreement and/or its corresponding Business Associate Agreement with respect to Vendors. If I have questions about the appropriate reporting process I will immediately contact Steward's Office of Corporate Compliance at (877) 302-4378.

20. I understand that the violation of this Agreement may result in disciplinary action, up to and including termination of employment/assignment/affiliation or contract, and/or suspension of access to Steward Information Resources.

21. I understand that the violation of this Agreement may also result in legal liability for me as well as Steward. Consequently, I agree to indemnify Steward and its parent(s), affiliates, directors, trustees, medical staff, officers,

employees or agents and assigns from any loss, damage, claim or liability including reasonable attorneys' fees (collectively, "**Liabilities**") arising out of access, use, or disclosure of Steward's Confidential Information other than as authorized in this Agreement. In the event this provision is in conflict with my employment agreement, Vendor agreement, or Business Associate Agreement, the applicable employment agreement, Vendor agreement, or Business Associate Agreement shall control.

22. Upon termination of my employment/assignment/affiliation or contract, I will immediately return any electronic documents and other media containing Steward's Confidential Information to Steward, remove Steward Confidential Information from non-Steward devices, and refrain from further use of my Steward Login Credentials.

23. I agree to notify Human Resources and Information Services immediately when members of my staff are terminated, so that user accounts to Steward Information Resources are appropriately disabled in accordance with Steward's standards. If I am a Vendor, I agree that, upon termination or expiration of the relevant Vendor agreement and/or its corresponding Business Associate Agreement, it is my responsibility to notify Steward of such termination or expiration so that access to any Steward Information Resources can be appropriately disabled in accordance with Steward's standards.

24. Subject to applicable law and the limitations set forth herein, I understand that I have no right to any ownership interest in any Confidential Information accessed or created by me during and in the scope of my relationship with Steward.

25. Subject to applicable law and the limitations set forth herein, I agree that my obligations under this Agreement will continue after the termination of my employment/assignment/affiliation from Steward and/or after termination of any applicable contracts and/or Business Associate Agreements with Steward.

**By signing this document, I understand and agree to the following: I have read the above Agreement and agree to comply with all its terms.**

| Name (please print) | Signature |
| --- | --- |
| Imani  Chinda | Imani Chinda |
| **Affiliation** | **Department** |
| Steward West Shared Services | 4915.46016 Shared Services |
| **Date** | **User mnemonic (for example, ccrabc01)** |
| 02/08/2024 | |

RFP2-024



### Post-Offer Invitation to Self-Identify

Steward Health Care is an Equal Opportunity Employer. Steward is subject to Executive Order 11246, which requires government contractors to take affirmative action to ensure that equal opportunity is provided in all aspects of their employment. In addition, we are subject to Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended by the Jobs for Veterans Act of 2002, 38 U.S.C. 4212 (VEVRAA), which requires Government contractors to take affirmative action to employ and advance in employment protected veterans. In order to comply with these laws, Steward Health Care invites applicants and employees to voluntarily self-identify their gender, disability, race/ethnicity and protected veteran status. ISteward Health Care does not discriminate on the basis of race, religion, color, sex, age, sexual orientation, gender identity, protected veteran status, non-disqualifying physical or mental disability, national origin, genetic information, or any other basis covered by appropriate law. All employment is decided on the basis of qualifications, merit and business need.

Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. The information obtained will be kept confidential and may only be used in accordance with the provisions of applicable laws, executive orders, and regulations, including those that require the information to be summarized and reported to the federal government for civil rights enforcement. When reported, data will not identify any specific individual.

**Name:** Imani Chinda                                                **Date:** 02/08/2024

**Gender:** Please place a check next to the appropriate category:

☐ Male                ☒ Female                        ☐ I choose not to self-identify

**Marital Status:**        ☒ Single        ☐ Married        ☐ Divorced        ☐ Widow

**Disability:** Please place a check next to the appropriate category:

☐ Yes, I have a disability                        ☐ I choose not to self-identify
☒ No, I don't have a disability

**Race/Ethnicity:** Check one of the following race/ethnic groups defined on the following page.

☐ Hispanic                                        ☐ Asian
☐ White (Not Hispanic)                            ☐ American Indian or Alaska Native
☒ Black (Not Hispanic)                            ☐ Two or more races
☐ Native Hawaiian or Pacific Islander             ☐ I choose not to self-identify

**Veteran:** I belong to the following classifications of Protected Veterans (choose all that apply)

⊓ Disabled Veteran                                       ⊓ Recently Separated Veteran
⊓ Active Duty Wartime or Campaign Badge Veteran          ⊓ Armed Forces Service Medal Veteran
⊏ I am not a protected Veteran                           ⊏ I choose not to self-identify

### Ethnicity and Race Definitions

**Hispanic** - A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture  or origin regardless of race.

**White (Not Hispanic)** - A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

**Black (Not Hispanic)** - A person having origins in any of the black racial groups of Africa.

**Native Hawaiian or Other Pacific Islander** - A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

**Asian** - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

**American Indian or Alaska Native** - A person having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment.

**Two or More Races** – A person who identifies with more than one of the above five races.

### Protected Veteran Definitions

**Disabled Veteran** – One of the following:
- A veteran of the U.S. military, ground, naval or air service who is entitled to compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Secretary of Veterans Affairs; or
- A person who was discharged or released from active duty because of a service-connected disability.

**Recently Separated Veteran** – any veteran during the three-year period beginning on the date of such veteran's discharge or release from active duty in the U.S. military, ground, naval, or air service.

**Active Duty Wartime or Campaign Badge Veteran** – A veteran who served on active duty in the U.S. military, ground, naval or air service during a war, or in a campaign or expedition for which a campaign badge has been authorized under the laws administered by the Department of Defense.

**Armed forces service medal veteran** – a veteran who, while serving on active duty in the U.S. military, ground, naval or air service, participated in a United States military operation for which an Armed Forces service medal was awarded pursuant to Executive Order 12985.

RFP2-026

# PERSONAL DISCLOSURE

**Name:** Imani Chinda

**Department:** 4915.46016 Shared Services

*Provide accurate and truthful responses.. A "YES" answer is not an automatic bar to employment or continued employment. These questions should not be construed to require employees to provide any information that Steward Health Care System is not permitted to seek under federal, state, or local law. Please contact Human Resources if you have any questions.*

**If you have a professional license, registration, or certification related to work at Steward Health Care System, has it been terminated, suspended, restricted, limited or placed under investigation during your employment? YES ☐ NO ☒**

If **YES**, list the affected credentials and explain below when and how they are or may be affected:

| Credential Type(s) | Issuing Entity | Credential Number(s) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**Have you been convicted of a misdemeanor or felony?** YES ☐ or NO ☒   If **YES**, describe the incident, when it occurred and list the court of government entity it involves.

**Are you under any governmental oversight or reporting obligations?** YES ☐ or NO ☒   If **YES**, describe the type of oversight and/or reporting required of you, the incident upon which it is based and list the court(s) or other governmental entity involved.

**I certify that the above information is true, correct and complete.**
My typed name below shall have the same force and effect as my written signature.

Employee Signature     Date:

Imani Chinda     02/08/2024

39996901v.1

RFP2-027

# IMMEDIATE ASSIGNMENT
**[Permits individuals to begin work prior to background checks being completed.]**

Employee Name  Imani  Chinda

Position  SNTN RN III

Department  4915.46016 Shared Services

Start Date  2/19/2024

I acknowledge that I am beginning my  assignment on the date indicated above prior to the receipt of results of required screenings and background checks which may include, but are not limited to, a substance screen, health screenings and criminal/credit/driving background checks. In the event that a screen or background check required as a condition of employment indicates that I am ineligible for employment, I understand that I will be terminated immediately and paid for all hours worked at the rate of pay indicated for my position.

My typed name below shall have the same force and effect as my written signature.

Imani Chinda

Employee Name

02/08/2024

Date Signed

\forms\Form 75 – Immediate Assignment.doc                    HR FORM 75

RFP2-028

# Substance Policy

It is our objective to provide a safe environment for all employees and a safe treatment environment for patients. Accordingly, the improper and/or illegal use of Substances (defined below) is prohibited. Compliance with this policy is a condition of employment.

A "Substance" is defined as any alcohol or illegal drug. An illegal drug is any drug (a) which is not legally obtainable or (b) which is legally obtainable but has not been legally obtained or has not used for prescribed purposes.

Steward expects employees to remain free of the influence of Substances while they are on the job and to refrain from their use, possession, or sale while on Steward property. It is the policy of Steward to remove from the work site any employee who is unfit for duty due to being under the influence of Substances. In addition, Steward will remove from the work site any employee possessing, selling, buying, or consuming Substances.

### Testing

All employees are subject to testing for the use of Substances in the following circumstances:

- Within 90 days of close of acquisition.
- Post-offer, pre-employment.
- When an employee sustains on-the-job injury that may result in lost time.
- When a medication administration or handling discrepancy has occurred or when medication may have been stolen or improperly used.
- When an employee is suspected of being unfit for duty due to the use of Substances.
- When an employee's supervisor or another individual in a management position believes an employee has violated our Substance policy.
- When an employee returns from a leave of absence of 90 days or more or is rehired after 90 days.
- If an employee has illegally or improperly used Substances and has successfully completed a rehabilitation program.

Employees will also be randomly selected, at random intervals using objective random selection criteria, for Substances testing. Random testing will take place without advanced notice. When an employee who has been randomly selected for testing is notified, the employee must proceed immediately as directed for the Substance test; refusal to submit to a Substance test shall be grounds for immediate termination of employment. Employees randomly selected for testing will not be suspended or removed from duty pending receipt of the test results (unless suspension or removal from duty is otherwise warranted under the policies of the facility).

Once during the entire employment relationship, employees may make a pre-collection disclosure of a Substance that may affect the test results. As a condition of continued employment, such employees must undergo appropriate rehabilitative treatment as determined in the discretion of the facility's Chief Executive Officer and Divisional Human Resources Director regarding such an employee's continued employment and the appropriateness of any rehabilitative treatment plan. Participation in the rehabilitative program will not excuse employees for the consequences of illegal acts or result in exemptions from standard job performance requirements, normal corrective action, or established human resource policies. Employees who are permitted to return to work after rehabilitative treatment will be subject to unannounced, follow-up Substance testing for a minimum 12-month period.

Any employee whose test results are interpreted by a medical review officer as positive (without advanced voluntary disclosure) shall be terminated immediately. Also, specimens reported by the testing laboratory as adulterated or substituted will be considered a refusal to test and therefore grounds for immediate termination of employment.

Employee testing, treatment, counseling, etc. will be handled on a confidential basis.

RFP2-029

Acknowledgement of Receipt of WHD Publication 1420

I acknowledge that upon hire with the facility, I was given a copy of WHD Publication 1420, entitled "Employee Rights under the Family and Medical Leave Act."

I understand that if have questions regarding the Family and Medical Leave Act, I am to contact my immediate Supervisor or the Human Resources Department.

My typed name below shall have the same force and effect as my written signature.

Signature: Imani Chinda _____ Date: 02/08/2024

This form has been electronically completed, and contains a legal electronic signature.

Organization: Steward West Shared Services _____

40225483v.1

| | **ARBITRATION AGREEMENT** |
|---|---|
| | **POLICY OWNER: PATRICK LOMBARDO** |
| | **FINAL APPROVAL DATE: May 20, 2019** |

## SCOPE

Company affiliated facilities, including, but not limited to, hospitals, ambulatory surgery centers, home health agencies, and physician practices, and all Company and Corporate Departments and Divisions and all personnel related thereto.

## PURPOSE

**This Arbitration Agreement is a contract and requires You and the Company to arbitrate covered claims. It is Your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of Your choice outside the Company or to refrain from doing so if that is Your choice.**

**Este Acuerdo de Arbitraje es un contrato y requiere que Tú y la Empresa sometan a arbitraje las reclamaciones cubiertas. Es tu absoluta responsabilidad leerlo y entenderlo. Tienes la libertad de buscar asistencia de asesores independientes de tu elección fuera de la Empresa o de abstenerte de buscar asistencia si esa es tu elección.**

## POLICY

A. This Arbitration Agreement ("Agreement") is between You (referred to in this Agreement as "You," "I,", "Your" or "Employee") and Your employer (hereafter "Company"). For purposes of this Agreement, any reference to "Company" is intended to broadly refer to the entity or entities that actually employs or has employed you, or that you have applied for employment with, including, but not limited to, Steward Health Care Systems LLC and all parent companies, divisions, subsidiaries, and affiliated entities of any entity included in this definition of Company. All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial. The Federal Arbitration Act (9 U.S.C. § 1 et seq.) governs this Agreement, which evidences a transaction involving commerce.

B. This Agreement does not prevent or excuse You or the Company from using informal avenues to raise or resolve concerns, including disputes that are covered under this Agreement. The Company strongly encourages You to attempt to resolve disputes internally. Many times addressing concerns with Your immediate supervisor will lead to a resolution. Therefore, the Company encourages You to raise concerns with Your immediate supervisor so the supervisor can attempt to reach a solution. If You feel uncomfortable raising concerns with Your immediate supervisor, or Your supervisor does not respond to Your concerns, You are encouraged to raise the problem with your department manager or the Company's Human Resources Department. If You still believe the matter has not been resolved satisfactorily, You may raise your concern with Your facility President or the Executive Vice President of Human Resources. The above-listed steps are not mandatory and they are not a condition precedent to arbitration, but we strongly encourage You to use these steps so the Company and You can identify a win-win solution. If, however, the above-listed steps are unsuccessful or are not otherwise utilized, any disputes covered under this Agreement are subject to final and binding arbitration.

## COVERAGE

A. COVERED CLAIMS

1. This Agreement is intended to be as broad as legally permissible, and, except as it otherwise provides, applies to all claims or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, claims or disputes arising out of or related to Your application and selection for employment, employment, and/or termination of employment. Except as it otherwise provides, this Agreement applies to claims and disputes that the Company may have against You or that You may have against the Company, and/or its/their officers, directors, partners, members, owners, shareholders, employees, benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates or agents, predecessors, successors or assigns (each and of all of whom/which may enforce this Agreement).

RFP2-031

2. Except as it otherwise provides, this Agreement applies, without limitation, to claims arising under federal, state, or local law based upon or related to discrimination, harassment, and retaliation (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability), defamation (including post-employment defamation or retaliation), breach of a contract or covenant, fraud, negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or any monies claimed to be owed, meal breaks and rest periods, termination, tort claims, common law claims, and equitable claims, and claims arising under the Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, False Claims Act, Consolidated Omnibus Budget Reconciliation Act of 1985, state statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local legal claims. This Agreement also applies to claims arising under the Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance; however, this Agreement does apply to any claims for breach of fiduciary duty, for penalties, alleging that any of the Company's benefit plans violates the requirements of ERISA, claims arising under sections 601-607 of ERISA, or alleging any other violation of ERISA (including but not limited to claims under section 510 of ERISA, even if such claim is combined with a claim for benefits)).

3. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, as stated in the "Class Action Waiver" below, the preceding sentence does not apply to the Class Action Waiver.

B. CLAIMS NOT COVERED

1. These claims are not covered under the Agreement: (i) Workers' Compensation benefits, state disability insurance benefits or unemployment insurance benefits; however, it applies to discrimination or retaliation claims based upon seeking such benefits; (ii) disputes that an applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement; and (iii) claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

2. <u>Temporary and Preliminary Injunction Exception</u>. Both the Company and You may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, including without limitation any controversy under any *Employee Covenants Agreement* or applicable restrictive covenant(s) or confidentiality obligations between You and the Company. The court to which the application is made is authorized to grant temporary or preliminary injunctive relief and may do so with or without addressing the merits of the underlying arbitrable dispute, as provided by applicable law of the jurisdiction. All determinations of final relief will be decided in arbitration, and the pursuit of temporary or preliminary injunctive relief shall not be deemed incompatible with or constitute a waiver of rights under this Agreement.

C. OTHER LIMITATIONS TO HOW THIS AGREEMENT APPLIES

1. Nothing in this Agreement prevents You from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, National Labor Relations Board, Occupational Safety and Health Administration, State Survey Agencies, state departments of health services, state medical board, state nursing boards, or law enforcement agencies, and nothing in this Agreement prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Agreement. This Agreement also does not prevent federal administrative agencies from adjudicating claims and awarding remedies, even if the claims would otherwise be covered by this Agreement. Nothing in this Agreement prevents or excuses a party from satisfying any conditions precedent and/or exhausting administrative remedies under applicable law before bringing a claim in Arbitration. The Company will not retaliate against You for filing a claim with an administrative agency or for

RFP2-032

exercising rights (individually or in concert with others) under Section 7 of the National Labor Relations Act. This Agreement also does not prevent or prohibit You in any way from reporting, communicating about, or disclosing claims for discrimination, harassment, retaliation, or sexual abuse.

2. This Agreement does not apply to any employee represented by a labor organization, or to the Company regarding any such employee, except to the extent permitted in any applicable collective bargaining agreement.

## PROCEDURES

A. STARTING ARBITRATION: The Company and You agree that the party initiating the claim must make a written request for arbitration of the claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Written request for arbitration to the Company should be sent to: Arbitration Intake, 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201 by U.S. Mail or hand delivery. You will be given notice of any claim by the Company at the last home address You provided to the Company. The demand for arbitration shall identify the claim(s) asserted, factual basis for the claim(s), and relief and/or remedy sought. The Arbitrator will resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

B. ADMINISTRATION AND ARBITRATOR

1. The arbitration will be administered by JAMS, and except as provided in this Agreement, will be under the then current JAMS Employment Arbitration Rules & Procedures ("JAMS Rules") (the JAMS Rules are available through the Company's Human Resources Department or via the internet at https://www.jamsadr.com/rules-employment or by using a service such as Google to search for "JAMS Employment Arbitration Rules".); provided however, that if there is a conflict between the JAMS Rules and this Agreement, this Agreement shall govern. Unless the parties jointly agree otherwise, the Arbitrator must be an attorney experienced in employment law and licensed to practice law in the state in which the arbitration is convened, or a retired judge from any jurisdiction. Unless the parties jointly agree otherwise, the arbitration will take place in or near the city and in the state in which You are or were  last employed by the Company.

2. The Arbitrator will be selected as follows: JAMS will give each party a list of nine (9) arbitrators (subject to the qualifications listed above) drawn from its panel of arbitrators. Each party will have ten (10) calendar days to strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual will be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties will strike names alternately from the list of common names, with the party initiating the claim to strike first, until only one remains. If no common name remains on the lists of all parties, JAMS will furnish an additional list of nine (9) arbitrators from which the parties will strike alternately, with the party initiating the claim to strike first, until only one name remains. That person will be designated as the Arbitrator. If for any reason, the individual selected cannot serve, JAMS will issue another list of nine (9) arbitrators and repeat the alternate striking selection process. JAMS is without authority to unilaterally appoint an arbitrator.

3. The Arbitrator may award any remedy to which a party is entitled under applicable law, but remedies will be limited to those that would be available to a party in their individual capacity for the claims presented to the Arbitrator. The Arbitrator shall apply the substantive federal, state, or local law applicable to the claims asserted. Either party may file dispositive motions, including without limitation a motion to dismiss and/or a motion for summary judgment and the Arbitrator will apply the standards governing such motions under the Federal Rules of Civil Procedure.

4. The Arbitrator will issue an award by written opinion within thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later. The opinion will be in writing and include the factual and legal basis for the award. The award issued by the Arbitrator may be entered in any court of competent jurisdiction.

C. DISCOVERY AND SUBPOENAS: Each party may take the deposition of one individual fact witness and any expert witness designated by another party. Each party may also propound twenty-five (25) requests production of documents and five (5) interrogatories, and each party may subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties. Additional discovery may be conducted by mutual stipulation, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such

**Arbitration Agreement**
v.3.19

Page 3 of 5

RFP2-033

requests, based on the arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case.

D.   OFFER OF JUDGMENT:  Unless required otherwise by law (including the common law), a party may make an offer of judgment in a manner consistent with, and within the time limitations, consequences, and effects provided in Rule 68 of the Federal Rules of Civil Procedure. The offer shall be served on the offeree in the same manner in which other papers are served in the arbitral proceeding. The offer shall not be served on the Arbitrator, except that if the offer is accepted, either party may then file with the Arbitrator the offer and notice of acceptance together with proof of service thereof. The Arbitrator shall then immediately render an award as provided by the offer, and the arbitration proceedings shall then be terminated.  If the offer is not accepted, the offer shall not be used as evidence in the arbitration proceedings and, following the issuance of the Arbitrator's award, the offeror may file a motion for costs with the Arbitrator, who shall retain jurisdiction to decide the motion and award costs to the offeror as warranted.

E.   FEES AND COSTS: The Company will pay the Arbitrator's and arbitration fees and costs, except for Employee's filing fee, in accordance with the JAMS Rules and applicable law. Each party will pay for its own costs and attorneys' fees, if any, but if any party prevails on a claim which affords the prevailing party attorneys' fees, the Arbitrator may award reasonable fees to the prevailing party as provided by law. The Arbitrator will resolve any disputes regarding costs/fees associated with arbitration.

## CLASS ACTION WAIVER

A.   The Company and I agree to bring any claim on an individual basis. Accordingly, THE COMPANY AND I WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED, OR ARBITRATED AS A CLASS ACTION AND/OR COLLECTIVE ACTION AND THE ARBITRATOR WILL HAVE NO AUTHORITY TO HEAR OR PRESIDE OVER ANY SUCH CLAIM ("Class Action Waiver"). The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable.  In such case, the class action and/or collection action, as applicable, must be litigated in a civil court of competent jurisdiction—not in arbitration.

B.   Regardless of anything else in this Agreement and/or the JAMS Rules, or any amendments and/or modifications to those rules, any claim that all or part of the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

## OTHER

A.   CONSIDERATION: The mutual obligations by the Company and You to arbitrate provide consideration for this Agreement.

B.   ENTIRE AGREEMENT:  This is the complete agreement of the parties about arbitration of disputes. This Agreement modifies and takes priority over any contrary language, if any, in any Employee Covenants Agreement (or similar agreement) between You and the Company, that requires a venue and governing law contrary to this Agreement for any dispute covered by this Agreement.  The parties expressly agree that any disputes arising out of or related to any Employee Covenants Agreement (or similar agreement (unless such agreement has an arbitration agreement) between You and the Company will be resolved in accordance with this Arbitration Agreement, including without limitation the Temporary and Preliminary Injunction Exception above. Any contractual disclaimers the Company has in any handbooks, other agreements, or policies do not apply to this Agreement. This Agreement will survive the termination of Employee's employment and the expiration of any benefit, and it will continue to apply upon Employee's transfer to any parent, subsidiary or affiliate of the Company or re-employment by the Company or any parent, subsidiary or affiliate if Employee's employment is ended but later renewed.

C.   CONSTRUCTION:  Subject to the clause entitled "Class Action Waiver," above, if any provision of this Agreement is adjudged to be invalid, unenforceable, unconscionable, void or voidable, in whole or in part, such adjudication will not affect the validity of the remainder of the Agreement.  All remaining provisions will remain in full force and effect. Unless You are party to a term employment agreement that is signed by an authorized representative of the Company and You, this Agreement does not alter the "at-will" status of Your employment.

**[SIGNATURE PAGE BELOW]**

**Arbitration Agreement**
v.3.19

Page 4 of 5

RFP2-034

**AGREED: EMPLOYEE**

**I HAVE READ, UNDERSTAND, AND AGREE TO THIS ARBITRATION AGREEMENT. BY SIGNING MY NAME BELOW AND/OR BY USING AN ELECTRONIC MEANS OF ACCEPTANCE, I AGREE THAT THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JUDGE OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. I ALSO AGREE THAT TO THE EXTENT I USE AN ELECTRONIC MEANS OF ACCEPTANCE ("ELECTRONIC SIGNATURE") AS MY ACCEPTANCE TO THIS AGREEMENT, I UNDERSTAND AND ACKNOWLEDGE THAT MY ELECTRONIC SIGNATURE IS INTENDED TO SHOW MY ACCEPTANCE AND IS AS VALID AND HAS THE SAME LEGAL EFFECT AS AN INK SIGNATURE.**

My typed name below shall have the same force and effect as my written signature.

| | |
|---|---|
| Imani Chinda | 02/08/2024 |
| EMPLOYEE SIGNATURE | DATE |

Imani  Chinda

EMPLOYEE NAME PRINTED

**AGREED:** *STEWARD HEALTH CARE SYSTEMS LLC*

RFP2-035



**Steward Health Care System**

Imani

Your new employer participates in a federal work initiative called the Work Opportunity Tax Credit (WOTC). WOTC enables companies to claim tax credits based on information provided by job applicants and new employees. The information provided will only be used for WOTC purposes and will NOT affect your taxes on your new job.

We request that you complete the following brief survey to determine if your employment would qualify our Company to receive certain corporate tax credits or incentives.

**Simply, select the link below to enter the survey. At the completion of the survey you will receive a confirmation number and be asked to return to this page to add the confirmation number. After entering the confirmation number on this page, Select "Review", Select "Sign and Preview", Select "Send to HR".**

https://survey.tnt-ntci.com/survey-request/stewardhealthcare

**Please enter that confirmation number here:** 833866N

Please note, the information provided on this survey will not affect your employment, your wages or taxes and will only be used to determine and document our Company's eligibility for a tax credit or incentive. This information will NOT be used for any other purposes.

If you have any questions about the WOTC, please contact your local HR representative.

Thank you for your time,
Steward West Shared Services

RFP2-036



# Emergency Contact Form

| | | |
|---|---|---|
| **Employee Name:** | Imani | Chinda |
| **Employee SS#:** | 627521375 | |
| **Emergency Contact Name:** | Daphne | Neal |
| **Relationship:** | Parent | |
| **Telephone Number of Contact:** | Home: | |
| | Cell: 832-322-1643 | |
| | Work | |
| **Address of Contact:** | 8323 Ash Garden Ct. Houston, TX 77083 | |
| **Today's Date:** | 02/08/2024 | |

RFP2-037



World class health care where you live.

| JOB TITLE: Registered Nurse | REPORTS TO: Director/Manager |
|---|---|
| DEPARTMENT: Steward National Traveler Network | DIVISION: Shared Services |
| OSHA CATEGORY: I | DATE REVISED: August 17, 2023 |

## JOB SUMMARY:

The Travel RN will accept assignments in various nursing departments of competency within designated facilities as needed. These departments may include, but are not limited to: Medical, Surgical, Telemetry, Women's Services, Critical Care and the Emergency Department. The RN is responsible and accountable for directing, planning, and organizing the nursing activities on the unit for an assigned shift with focus on patient, physician and staff needs. The RN is responsible for delivering skilled patient care through the nursing process in accordance with established policies and procedures; for coordinating patient care through the nursing process in accordance with established policies and procedures; for coordinating care among patient/family, medicine, nursing, ancillary, and other team personnel; acts as patient advocate; and maintains current knowledge and standards of professional nursing practice.

## AGE OF POPULATION SERVED:

May include Infant, Child, Adolescent, Adult, and Geriatric.

## PRINCIPAL DUTIES AND RESPONSIBILITIES:

RN is responsible for facilitating, coordinating, and supervising patient care appropriate to the condition and age of the patient in the department. Maintains an awareness of the condition and needs of the patients.

• Promotes a culture of safety for patients and employees through proper identification, proper reporting, documentation and prevention of medical errors in a non-punitive environment.

• Able to perform general nursing duties in assigned departments with adequate supervision by using nursing process to provide all levels of patient care:

    a.  Assesses patient's condition based upon observation, examination, and/or interview, physician's diagnosis, laboratory findings, age-related issues and other pertinent information. Completes assessment in specified time frame. Identifies and consistently recognizes changes in normal and abnormal parameters in the patient's physiological, psychological, cultural, developmental and spiritual needs. Communicates with physicians/Nurse Manager/coworkers, as appropriate about changes in patient's condition. Able to respond quickly and accurately to changes in condition or response to treatment.

    b.  Implements nursing interventions to achieve progress toward expected patient outcomes or to stabilize a patient's condition and/or prevent complications.

DocuSign Envelope ID: A68709D3-CB87-4FE8-92E6-EC624D8142D0



World class health care where you live.

    c. Evaluates and documents patients' response to nursing care and modifies or revises treatment plans, and/or contacts physicians as circumstances require. Documentation reflects evaluation of patient response to nursing actions. Participates in interdisciplinary patient care planning in order to plan and evaluate patient care.

    d. Provides and documents patient (family) education based on diagnosis, treatment plan or prescribed medical regimen in accordance with patient (family) readiness and ability to learn.

    e. Uses professional judgment and critical thinking to prepare, prioritize and execute the patient's plan of care consistent with patient assessment data and physician's treatment plans and professional standards of evidence-based practice/care. Incorporates the patient's physiological, psychological, cultural, developmental and spiritual needs into the plan of care. Consistently follows patient care and facility guidelines and procedures in performance of one's duties.

• Directs and delegates support personnel in implementing patient's plan of care, provides supervision and guidance, and demonstrates methods, as necessary, to correct deviation from established standards.

• Renders professional nursing care including administering medications, starting intravenous fluids and blood products. Performs both complex and routine treatments as prescribed by physicians or as warranted by patient's condition. Is able to perform all technical skills required for unit patient population such as, but not limited to IV venipuncture, restraint application, sterile dressings, etc. Is able to assist practitioner with procedures.

• Maintains accountability for all controlled substances. Follows correct procedures with the medication system for removal and waste. Documents completely and accurately on the patient record. Is able to resolve medication discrepancies in a timely manner.

• Communicates appropriately and clearly to director, charge nurse, co-workers and physicians. Consults other departments as appropriate to provide for an interdisciplinary approach to the patient's needs. Maintains a good working relationship both within the department and with other departments. Assist in the resolution of problems or concerns while being a supportive team member. Demonstrates an ability to be flexible, organized and function well under stressful situations.

• Demonstrates support of the mission, values and vision of the hospitals in all actions and interactions with employees, patients, medical staff, guests and visitors through use of STAR key words: Service, Teamwork, Accountability and Respect.

• Demonstrates support of the quality and compliance program set forth by the Organization

• Other duties as assigned within scope

DocuSign Envelope ID: A68709D3-CB87-4FE8-92E6-EC624D8142D0

 World class health care where you live.

**MINIMUM KNOWLEDGE, SKILLS AND ABILITIES REQUIRED:**

**Work Experience:**

• Graduate of an accredited School of Nursing program, a valid license to practice in the State.

• Minimum of one-year relevant RN clinical nursing experience and proven competency within area of hire

**License/Registration/Certification:**

• Current RN permit or licensure issued by the Board of Nurse Examiners of the State to practice professional nursing.

• Current American Heart Association/American Red Cross Basic Life Support Healthcare Provider certification required.

• National Institute of Healthcare Stroke Scale (NIHSS) Certification (due at the end of the following month after start date)

• Care of the Aggressive Patient (COAP) Certification (due at the end of the following month after start date)

• For additional required certifications; See Staff Education Plan and grid policy

**Skills:**

• Technical, clerical, critical thinking and interpersonal skills relevant to total patient care/area in order to safely and efficiently treat patients.

• Good verbal and written communication skills necessary to be clearly and easily understood by patients, families, and members of the Health Care team.

• Writes/prints legibly to document accurately and understandably, and to provide direction to support staff and others.

• Must be able to read and communicate effectively in English; additional languages helpful.

**PROFESSIONAL REQUIREMENTS:**

• Adheres to facility and department dress code; appearance is neat and clean. Is conscientious regarding personal hygiene. Completes annual educational requirements: Skills Day, Annual department specific, age specific skills check lists.

• Keeps certifications updated as needed and completes Steward University Assignments in a timely manner.

• Maintains regulatory requirements.

RFP2-040

DocuSign Envelope ID: A68709D3-CB87-4FE8-92E6-EC624D8142D0



World class health care where you live.

• Reports to work on time and as scheduled, completes work within designated time. Maintains acceptable punctuality and attendance within policy guidelines.

• Participates in required department, facility or job-related education per year.

• Wears identification while on duty.

• Uses time system consistently and correctly. Completes exception sheets appropriately.

• Utilizes down time productively. Completes work within designated time.

• Attends staff in-service meetings per department guidelines; reads and signs minutes of meetings not attended.

**WORK ENVIRONMENT:**

Position is classified as OSHA Category I where regular job duties have continuous potential for exposure to bloodborne pathogens throughout the day. For physical demands of position including vision, hearing, repetitive motion and environment, see following description.

**PHYSICAL DEMANDS:**

Prolonged periods of sitting, standing, walking, bending, and reaching. Lifts up to 50lbs at times with frequent lifting/carrying up to 25lbs.

Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions of the position without compromising patient care.

I have read and understand the position description/performance evaluation above and the attached physical demands.

Signature: _Imani Chinda_
960C9FCB47F54AD

Name (Print): Imani Chinda

Date: 2/7/2024

RFP2-041

*Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la*
*Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer

RFP2-042

reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address form the lists these offers are based on. You may opt out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- The following FCRA right applies with respect to nationwide consumer reporting agencies:

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is

placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates | a. Consumer Financial Protection Bureau<br>1700 G Street, N.W.<br>Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act. | b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration<br>Office of Consumer Financial Protection (OCFP)<br>Division of Consumer Compliance Policy and Outreach<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to the Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors Subject to the Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, S.W., Suite 8200<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street, N.E.<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission<br>Consumer Response Center<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br>(877) 382-4357 |

RFP2-045



# QuickConfirm License Verification Report

Primary Source Boards of Nursing Report Summary for

## IMANI ALEYSSE CHINDA [NCSBN ID: 23678899]

As of Monday February 05 2024 03:29:36 PM US Central Time

### Disclaimer of Representations and Warranties

*Through a written agreement, participating individual state boards of nursing designate Nursys as a primary source equivalent database. NCSBN posts the information in Nursys when, and as, submitted by the individual state boards of nursing. NCSBN may not make any changes to the submitted information and disclaims any responsibility to update or verify such information as it is received from the individual state boards of nursing. Nursys displays the dates on which a board of nursing updated its information in Nursys.*

*This report is not sufficient when applying to another board of nursing for licensure. Use the "Nurse License Verification for Endorsement" service to request the required verification of licensure.*

*Contact the board of nursing for details about the Nurse Practice Act, which includes nurse scope of practice and privileges and information about advanced nursing practice roles (practice privileges, prescription authority, dispensing privileges & independent practice privileges).*

**UNENCUMBERED** *means that the nurse has a full and unrestricted license to practice by the state board of nursing.*

| Name on License | Type | License State | License | Active | License Status | License Original Issue Date | License Expiration Date | Compact Status |
|---|---|---|---|---|---|---|---|---|
| CHINDA, IMANI ALEYSSE | RN | TEXAS | 962416 | YES | UNENCUMBERED | 02/12/2019 | 01/31/2026 | MULTISTATE |

| Name on License | Type | License State | License | Active | License Status | License Original Issue Date | License Expiration Date | Compact Status |
|---|---|---|---|---|---|---|---|---|
| CHINDA, IMANI ALEYSSE | RN | MINNESOTA | 2506325 | NO | EXPIRED | 09/28/2022 | 01/31/2024 | N/A |

| Name on License | Type | License State | License | Active | License Status | License Original Issue Date | License Expiration Date | Compact Status |
|---|---|---|---|---|---|---|---|---|
| CHINDA, IMANI ALEYSSE | RN | WASHINGTON | RN61279260 | NO | EXPIRED | 04/02/2022 | 01/15/2023 | NONE |

Neonatal Resuscitation Program™ (NRP™)

## Advanced Provider

The individual named below has successfully completed the national cognitive and skills evaluations in accordance with the NRP curriculum of the American Academy of Pediatrics and American Heart Association.

**Provider Name:**
Imani Chinda

**Credentials:**

Course Completion Date: 03/27/2023     Recommended Renewal Date: 03/31/2025

eCard Code: vbsh1ogwe5h4gpftbnqvyleo          NRP Global ID: 8IC-0194

Verify authenticity at this URL (or scan QR code on back of card with your cell phone):
https://nrplearningplatform.com/certificateAdmin/0.1/verify_certificate

---

Neonatal Resuscitation Program™ (NRP™)

If you have any questions regarding the NRP, please contact the American Academy of Pediatrics at 800/433-9016, by e-mail at nrp@aap.org or online at www.aap.org/nrp.

**This card signifies the completion of the following lessons:**

Lesson 1: Foundations of Neonatal Resuscitation

Lesson 2: Anticipating and Preparing for Resuscitation

Lesson 3: Initial Steps of Newborn Care

Lesson 4: Positive Pressure Ventilation (Includes Laryngeal Mask)

Lesson 5: Endotracheal Intubation

Lesson 6: Chest Compressions

Lesson 7: Medications

Lesson 8: Resuscitation and Stabilization of Babies Born Preterm

Lesson 9: Post-resuscitation Care

Lesson 10: Special Considerations

Lesson 11: Ethics and Care at End of Life

© 2021 American Academy of Pediatrics

RFP2-048

# BASIC LIFE SUPPORT

## BLS
## Provider



American
Heart
Association.

### Imani Chinda

**has successfully completed the cognitive and skills evaluations
in accordance with the curriculum of the American Heart Association
Basic Life Support (CPR and AED) Program.**

### Issue Date
1/17/2024

### Training Center Name
Emergency Management Resources

### Training Center ID
TX05079

### Training Center City, State
Dallas, TX

### Training Center Phone Number
(972) 235-8330

### Training Site Name

### Renew By
01/2026

### Instructor Name
Crystal Fuller

### Instructor ID
04190775281

### eCard Code
245414896057

### QR Code



To view or verify authenticity, students and employers should scan this QR code with their mobile device or go to www.heart.org/cpr/mycards.
© 2023 American Heart Association. All rights reserved. 20-3001 R3/23

RFP2-049

# ADVANCED CARDIOVASCULAR LIFE SUPPORT



## ACLS
## Provider



**American Heart Association.**

### Imani Chinda

**has successfully completed the cognitive and skills evaluations
in accordance with the curriculum of the American Heart Association
Advanced Cardiovascular Life Support (ACLS) Program.**

**Issue Date**

6/15/2023

**Training Center Name**

Emergency Management Resources

**Training Center ID**

TX05079

**Training Center City, State**

Dallas, TX

**Training Center Phone
Number**

(972) 235-8330

**Training Site Name**

**Renew By**

06/2025

**Instructor Name**

Crystal Fuller

**Instructor ID**

04190775281

**eCard Code**

235407619296

**QR Code**



To view or verify authenticity, students and employers should scan this QR code with their mobile device or go to www.heart.org/cpr/mycards.
© 2023 American Heart Association. All rights reserved.    20-3000  R3/23

RFP2-050



Dear Imani Chinda,

On behalf of myself and The S.T.A.B.L.E. Program staff, I am pleased to send you your new S.T.A.B.L.E. Learner Card, indicating successful completion of The S.T.A.B.L.E. Program Learner Course.

Your completion card is valid for 2 years, at which time it is recommended that you renew your Learner status by attending another S.T.A.B.L.E. Learner course. Please, carefully review your completion card.

If there are any errors on your card, or to receive a replacement card, please contact the submitting Lead Instructor: Gail R. Werkman, St. Joseph Medical Center

This card is not a CEU certificate. Please contact the Lead Instructor above for information pertaining to educational credits.

If you would like to learn more about The S.T.A.B.L.E. Program, please visit our website at www.stableprogram.org.

I appreciate your commitment to improving the care of our smallest patients at this most critical time in their lives. Through your education and effort we can help improve outcomes for babies and their families.

Sincerely,

Kris A Karlsen

Kris A. Karlsen, PhD, NNP-BC
Founder/Author
The S.T.A.B.L.E. Program

---

Receipt of this card signifies completion and passing of the post-test and the S.T.A.B.L.E. Learner Course Modules:

**S**ugar & Safe care

**T**emperature

**A**irway

**B**lood pressure

**L**ab work

**E**motional support

For questions regarding the S.T.A.B.L.E. Program contact the National office at 888-655-8171 or 1-435-655-8171.   www.stableprogram.org

THE S.T.A.B.L.E. Program

## Imani Chinda

has attended a Learner course and successfully completed the national cognitive evaluation for

**LEARNER / PROVIDER**

In accordance with the curriculum of the S.T.A.B.L.E. Program.
Lead Instructor: Gail R. Werkman

| | |
|---|---|
| Course Completion Date | March 09, 2023 |
| Recommended Renewal Date | March 31, 2025 |

*To create card cut along dotted line, then fold in half*

RFP2-051



**PreCheck**
Investigate further.

**Background Profile**

| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

| | | | |
|---|---|---|---|
| Client Account Manager: | HC3 | | |
| Prepared For: | **Steward Shared Services** | Client ID: | **8987** |
| | **117 Seaboard Lane, Building E** | Attention: | **Justice, Crystal Lynn** |
| | **Franklin, TN 37067** | | |
| Department Code: | | | |

| Comments: | Ordering Instructions: |
|---|---|
| | Your prospective employer requires verification of all present employment.; |
| | A SSN Death Index search was performed against the SSA Death Master File with the provided SSN, and |
| | NO date of death information was located. |

### VITAL INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Applicant: | **Chinda , Imani** | Address: | **1755 Crescent Plaza Dr. Apt 3038** | | |
| Alias Name(s): | **Chinda, Imani Aleysse** | | **Houston** | **TX** | **77077** |
| | | Social Security No: | xxx-xx-1375 | | |
| | | Date of Birth: | 1/15/xxxx | | |
| | | Sex: | | | |
| | | Driver's License State: | **TX** | | |
| | | Driver's License No: | **34999291** | | |
| | | Applied For: | | | |

### SUMMARY

| | |
|---|---|
| Public Records | CLEAR |
| SanctionCheck | COMPLETE/SEE ATTACHED |
| Education | ALERT: Date Discrepancy |
| Professional License | VERIFIED |
| Employment History | ALERT: Records Found - Date Discrepancy |
| Personal References | UNVERIFIED: No Response from Reference |
| Positive Identification | VERIFIED |

This page is a summary of the consumer report to which it relates. Please review the entire report before making any employment decision pertaining to this individual.

PreCheck, Inc Phone: 800-999-9861 Fax: 800-207-2778;   NV PI License # 1618

Page 1 of 16

RFP2-052



**Background Profile**

| Report Date: | 02/16/2024 |
|---|---|
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## PUBLIC RECORDS

| Jurisdictions/Registries Searched | Results | Degree |
|---|---|---|
| RIVERSIDE, CA | CLEAR | |
| FORT BEND, TX | CLEAR | |
| **STATEWIDE**, NC | CLEAR | |
| SEX OFFENDER, US | CLEAR | |
| KING, WA | CLEAR | |
| HARRIS, TX | CLEAR | |

## SANCTIONCHECK

Status:     COMPLETE/SEE ATTACHED

NO SANCTIONS OR MATCHES FOUND

The applicant's name(s) was screened against the lists of federal and state agencies with sanction authority and did not produce a match with a sanctioned/excluded individual. The name and any potential matches are all carefully reviewed, and best efforts are made to confirm matches using all available personal identifiers.

Please note that a lack of identifiers on either the sanction record or provided by your applicant may result in PreCheck reporting "No Sanctions or Matches Found."

For details of the sanction lists searched, go to our website at: www.PreCheck.com/SanctionCheck

## EDUCATION

RFP2-053



**Background Profile**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## EDUCATION, CONT'D.

**Status:**     ALERT: Date Discrepancy

**Per Applicant**

| | |
|---|---|
| School: | Prairie View A&M University |
| Campus: | College Of Nursing |
| Location: | Houston TX |
| Name on Record: | |
| Level Studied: | Bachelors |
| Years Attended: | |
| Studies: | Nursing |
| Verified Via: | |
| Contact Name: | |

**Per School**

| | |
|---|---|
| School: | Prairie View A&M University |
| Campus: | |
| Location: | Houston TX |
| Name on Record: | Imani Chinda |
| Level Studied: | BS IN NURSING |
| Years Attended: | 08/24/2015    To:    12/16/2018 |
| Studies: | NURSING |
| Verified Via: | |
| Contact Name: | |
| Contact Title: | |
| Investigator: | NCH |
| Investigator Date: | |

**Comments:**     [2/9/2024 4:56:18 AM] ***ALERT*** Graduation date verified is significantly different than the date provided by the Applicant.

Call date:2024-02-09 06:52:18 AM, Call outcome: Pending
, Agent name: DISP ATCHER
Comment: Sent to Talx Edu Verification Service

## PROFESSIONAL LICENSE

**Status:**     VERIFIED

**Per Applicant**

| | |
|---|---|
| Type of License: | RN |
| Issuing State: | TX |
| Issue Date: | 02/12/2019 |
| License No: | 962416 |
| Expiration: | 01/31/2026 |

**Per Organization**

| | |
|---|---|
| Name on License: | CHINDA, IMANI ALEYSSE |
| Type of License: | REGISTERED NURSE |
| Specialty: | |
| Issuing State: | TX |
| Multi-State: | Multistate |
| Issue Date: | 02/12/2019 |
| License No: | 962416 |
| Expiration: | 01/31/2026 |
| License Status: | Current |
| Board Actions: | No |
| Verifying Organization: | TX Board of Nursing |
| Contact Method: | Online |
| Contact Name: | |
| Contact Date: | 02/12/2024 |
| Investigator: | Credentialing Specialist |



**Investigate further.**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## PROFESSIONAL LICENSE, CONT'D.

Comments:    License is in good standing.
No current board actions on file.
Compact/Multi-state License: YES

Investigator: Ivan S Hembrom
Date: 2/12/2024

All licenses/certifications are verified through the primary source or the designated agent.

## EMPLOYMENT HISTORY

Status:    VERIFIED: Third Party Verification

**Per Applicant**

| | | | **Per Employer** | | |
|---|---|---|---|---|---|
| Employer's Name: | Lyndon B Johnson Hospital | | Employer's Name: | Lyndon B Johnson Hospital | |
| Location: | 5656 Kelley St, | | Location: | 5656 Kelley St, | |
| Employer's Phone No: | (713) 566-5100 | | Employer's Phone No: | (713) 566-5100 | |
| Dates of Employment: | 02/01/2019  To:  12/01/2019 | | Dates of Employment: | 2/18/2019  To:  12/21/2019 | |
| Position Held: | Registered Nurse | | Position Held: | NURSE CLINICIAN I | |
| Department: | | | Department: | | |
| Type of Employment: | | | Type of Employment: | N/A | |
| Reason for Leaving: | | | Eligible for Rehire: | | |
| Last Wage: | | | Reason for Leaving: | | |
| | | | Last Wage: | 0 | |
| | | | Release Condition: | N/A | |
| | | | Person Contacted: | The WorkNumber WinService | |
| | | | Contact Title: | | |
| | | | Investigator: | TALX | |
| | | | Investigator Date: | | |

Comments:    [2/9/2024 2:17:04 PM] WorkNumber: Employment verification was obtained online via The Work Number at
www.theworknumber.com.

[2/9/2024 2:17:04 PM] Verified by company name: Lyndon B Johnson Hospital
Last updated: 1/10/2020
Employment Status: Inactive
Original Hire Date: 2/18/2019
Most Recent Start Date: 2/18/2019
Date of End Employment: 12/21/2019
Total Time With Employer: 10 months

Call date:2024-02-09 08:39:30 AM, Call outcome: Pending                         , Agent name: Lashana
Jackson.
Comment: Note : Source History has been identified and is being reviewed.  - A phone number, (713) 566-5100, was
located for this verification via Google Maps.  We will attempt to verify with this phone number. Agent: Lashana
Jackson.

Status:    VERIFIED: Records Found

**Per Applicant**    **Per Employer**



**PreCheck**
*Investigate further.*

| | |
|---|---|
| **Background Profile** | |
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

### EMPLOYMENT HISTORY, CONT'D.

| | | | |
|---|---|---|---|
| Employer's Name: | St. Joseph Medical Center | Employer's Name: | St. Joseph Medical Center |
| Location: | 1401 St Joseph Pkwy | Location: | 1401 St Joseph Pkwy |
| Employer's Phone No: | (832) 797-0685 | Employer's Phone No: | (832) 797-0685 |
| Dates of Employment: | 01/2021    To:    06/08/2023 | Dates of Employment: | To:    N/A |
| Position Held: | Registered Nurse | Position Held: | |
| Department: | | Department: | |
| Type of Employment: | | Type of Employment: | N/A |
| Reason for Leaving: | | Eligible for Rehire: | |
| Last Wage: | | Reason for Leaving: | |
| | | Last Wage: | 0 |
| | | Release Condition: | N/A |
| | | Person Contacted: | The WorkNumber WinService |
| | | Contact Title: | |
| | | Investigator: | SJV |
| | | Investigator Date: | |

| | |
|---|---|
| Comments: | Call date:2024-02-15 02:46:17 PM, Call outcome: See Comments , Agent name: ALISHIA MALCOLM |
| | Comment: Employment Information was obtained via online employment verification system: Talx. |
| | |
| | Call date:2024-02-13 04:20:39 PM, Call outcome: Note to File |
| | Comment: This Source will only verify through The Work Number with employer code 157759, |
| | |
| | Call date:2024-02-13 04:20:36 PM, Call outcome: Verified Employment |
| | Comment: This Source will only verify through The Work Number with employer code 157759, |
| | |
| | Call date:2024-02-13 03:07:09 PM, Call outcome: See Comments |
| | Comment: Note : This Source will only verify via TALX. TALX was previously checked and had no record.  - I called the employer directly at 7137571000. They referred us back to the third party verifier . |
| | |
| | [2/9/2024 2:17:05 PM] WorkNumber: Employment information is verified by an online system which uses the applicant's Social Security number to identify records. The system could not locate any record of the applicant by Social Security number. WorkNumber code: 0 |
| | |
| | [2/9/2024 2:17:05 PM] Verified by company name: St. Joseph Medical Center Last updated: None |
| | |
| | |
| | Call date:2024-02-09 10:40:32 AM, Call outcome: Pending , Agent name: Sandra Guerrier. |
| | Comment: Note : Source has provided 7137571000 as a follow-up number.  - St. Joseph Medical Center has confirmed that fax submitted for verification was received. Agent: Sandra Guerrier. |
| | |
| | Call date:2024-02-09 08:47:36 AM, Call outcome: Pending , Agent name: Rebekah Barnett. |
| | Comment: Note : Source History has been Identified and is being reviewed.  - Verification Information has been requested via fax (7136577172). Response will be forwarded upon receipt. Agent: Rebekah Barnett. |

| | | |
|---|---|---|
| Status: | ALERT: Records Found - Date Discrepancy | |
| **Per Applicant** | | **Per Employer** |
| Employer's Name: | Angels Of Care Pediatric Home | Employer's Name: | Angels Of Care Pediatric Home |
| Location: | 900 Threadneedle St #150, | Location: | 900 Threadneedle St #150, |

RFP2-056



**Background Profile**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## EMPLOYMENT HISTORY, CONT'D

| | | | | |
|---|---|---|---|---|
| Employer's Phone No: | (713) 799-2200 | | Employer's Phone No: | (713) 799-2200 |
| Dates of Employment: | 01/01/2020   To:   01/01/2021 | | Dates of Employment: | 01/28/2020   To:   Present |
| Position Held: | Registered Nurse | | Position Held: | Registered Nurse |
| Department: | | | Department: | |
| Type of Employment: | | | Type of Employment: | N/A |
| Reason for Leaving: | | | Eligible for Rehire: | |
| Last Wage: | | | Reason for Leaving: | |
| | | | Last Wage: | 0 |
| | | | Release Condition: | N/A |
| | | | Person Contacted: | Myia Walker |
| | | | Contact Title: | HR Coordinator |
| | | | Investigator: | TALX |
| | | | Investigator Date: | |

Comments:
**ALERT** Verified dates do not match applicant's dates. There are no additional dates or position titles listed in the applicant's employee file.

Call date:2024-02-12 12:29:37 PM, Call outcome: Note to File
Comment: There were multiple dates of employment with this source.  The dates are:  01/28/2020 - 02/02/2021 and 07/19/2022 - Present.   Departure Reason: Not Applicable

Call date:2024-02-12 12:29:24 PM, Call number: (903) 532-1400, Contact title: HR Coordinator, Contact name: Myia Walker

[2/9/2024 2:17:02 PM] WorkNumber: **ALERT** Verified dates do not match applicant's dates and original termination date is not available. The termination dates don't match. This employment was verified by The Work Number (www.theworknumber.com).

[2/9/2024 2:17:02 PM] Verified by company name: Angels Of Care Pediatric Home
Last updated: 12/29/2023
Employment Status: Active
Original Hire Date: 1/28/2020
Most Recent Start Date: 7/19/2022
Total Time With Employer: 1 year 5 months

Call date:2024-02-09 10:42:13 AM, Call outcome: See Comments                    , Agent name: Vorcora Gadson.
Comment: Note : - Verification information has been requested via email (hr@angelsofcare.com).  Response will be forwarded upon receipt. ETA is 02/12/2024. Agent: Vorcora Gadson.

Call date:2024-02-09 08:39:25 AM, Call outcome: Pending                    , Agent name: Rebekah Barnett.
Comment: Note : Source History has been identified and is being reviewed.  - Verification information has been requested via fax (hr@angelsofcare.com).  Response will be forwarded upon receipt. Agent: Rebekah Barnett.

| Status: | ALERT: Records Found - Date Discrepancy | | | |
|---|---|---|---|---|
| **Per Applicant** | | | **Per Employer** | |
| Employer's Name: | Maxim Healthcare Services | | Employer's Name: | Maxim Healthcare Services |
| Location: | 8521 Six Forks Rd. Suite 550 | | Location: | 8521 Six Forks Rd. Suite 550 |
| Employer's Phone No: | (984) 328-7711 | | Employer's Phone No: | (984) 328-7711 |
| Dates of Employment: | 07/08/2023   To:   10/08/2023 | | Dates of Employment: | 07/31/2023   To:   n/a |
| Position Held: | Registered Nurse | | Position Held: | RN Post Partum |



**PreCheck**

Investigate further.

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## EMPLOYMENT HISTORY, CONT'D.

| Department: | | Department: | |
|---|---|---|---|
| Type of Employment: | | Type of Employment: | N/A |
| Reason for Leaving: | | Eligible for Rehire: | |
| Last Wage: | | Reason for Leaving: | |
| | | Last Wage: | 0 |
| | | Release Condition: | N/A |
| | | Person Contacted: | TALX |
| | | Contact Title: | |
| | | Investigator: | TALX |
| | | Investigator Date: | |

Comments:

\*\*ALERT\*\* Verified dates do not match applicant's dates. There are no additional dates or position titles listed in the applicant's employee file.

Employment information was obtained via online employment verification system: TALX

Employer Code: 11858
Employer Name: Maxim Staffing
Position/Title: RN Post Partum
Status: Not Currently on Assignment
Most Recent Hire Date: 07/31/2023
Original Hire Date: 07/31/2023
Termination Date:

Call date:2024-02-15 01:06:46 PM, Call outcome: See Comments , Agent name: STACEY
ADDINGTON, Contact name: TALX
Comment: Employment information was obtained via online employment verification system: TALX,

,
Employer Code: 11858,
Employer Name: Maxim Staffing,
Position/Title: RN Post Partum,
Status: Not Currently on Assignment,
Most Recent Hire Date: 07/31/2023,
Original Hire Date: 07/31/2023,
Termination Date: ,

Call date:2024-02-12 09:36:30 AM, Call outcome: Note to File
Comment: This Source will only verify through The Work Number with employer code 11858,

Call date:2024-02-12 09:36:27 AM, Call outcome: Verified Employment
Comment: This Source will only verify through The Work Number with employer code 11858,

Call date:2024-02-12 09:28:27 AM, Call outcome: See Comments
Comment: Note : This Source will only verify via TALX. TALX was previously checked and had no record.  - I called the employer directly at (919) 676-3118. They referred us back to the third party verifier .

RFP2-058



**Background Profile**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

### EMPLOYMENT HISTORY, CONT'D.

[2/9/2024 2:17:05 PM] WorkNumber: **ALERT** Verified dates do not match applicant's dates and original termination date is not available. The termination dates don't match. This employment was verified by The Work Number (www.theworknumber.com).

[2/9/2024 2:17:05 PM] Verified by company name: Maxim Healthcare Services
Last updated: 12/29/2023
Employment Status: Not Currently on Assignment
Original Hire Date: 7/31/2023
Most Recent Start Date: 7/31/2023

Call date:2024-02-09 09:16:14 AM, Call outcome: Pending                    , Agent name: Lana Bohn.
Comment: Note : Source History has been identified and is being reviewed.   - A phone number, (919) 676-3118, was located for this verification via Google Maps.  We will attempt to verify with this phone number. Agent: Lana Bohn.

Status:                                 UNVERIFIED: No Records

| **Per Applicant** | | **Per Employer** | |
|---|---|---|---|
| Employer's Name: | **Kaiser Permanente Riverside Me** | Employer's Name: | **Kaiser Permanente Riverside Me** |
| Location: | **10800 Magnolia Ave** | Location: | **10800 Magnolia Ave** |
| Employer's Phone No: | **(833) 574-2273** | Employer's Phone No: | **(833) 574-2273** |
| Dates of Employment: | **08/01/2022  To:  10/01/2022** | Dates of Employment: | n/a    To:    n/a |
| Position Held: | **Travel Nurse** | Position Held: | |
| Department: | | Department: | |
| Type of Employment: | | Type of Employment: | **N/A** |
| Reason for Leaving: | | Eligible for Rehire: | |
| Last Wage: | | Reason for Leaving: | |
| | | Last Wage: | **0** |
| | | Release Condition: | N/A |
| | | Person Contacted: | **The WorkNumber WinService** |
| | | Contact Title: | |
| | | Investigator: | **SJV** |
| | | Investigator Date: | |

**PreCheck**
*Investigate further.*

Background Profile

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## EMPLOYMENT HISTORY, CONT'D

Comments:       No records were found in the employer's online system (TALX) which uses the applicant's Social Security Number.  Be advised that if the applicant was employed by an agency, the employer may not have record of their work history.

Call date:2024-02-15 02:49:46 PM, Call outcome: See Comments                              , Agent name: ALISHIA MALCOLM
Comment: No records were found in the employer's online system (TALX) which uses the applicant's Social Security Number.  Be advised that if the applicant was employed by an agency, the employer may not have record of their work history.

[2/9/2024 2:17:03 PM] WorkNumber: Employment information is verified by an online system which uses the applicant's Social Security number to identify records. The system could not locate any record of the applicant by Social Security number. WorkNumber code: 0

[2/9/2024 2:17:03 PM] Verified by company name: Kaiser Permanente Riverside Me
Last updated: None

Call date:2024-02-09 02:20:46 PM, Call outcome: Note to File
Comment: This Source will only verify through The Work Number with employer code Source History,

Call date:2024-02-09 02:20:43 PM, Call outcome: Verified Employment
Comment: This Source will only verify through The Work Number with employer code Source History,

Call date:2024-02-09 01:40:30 PM, Call outcome: See Comments
Comment: Note : This Source will only verify via TALX. TALX was previously checked and had no record.  - I called the employer directly at (951) 353-4061. They referred us back to the third party verifier .

Call date:2024-02-09 08:55:24 AM, Call outcome: Pending                              , Agent name: Rebekah Barnett.
Comment: Note : Source History has been identified and is being reviewed.  - A phone number, (951) 353-4061, was located for this verification via Source History.  We will attempt to verify with this phone number. Agent: Rebekah Barnett.

Status:          UNVERIFIED: No Records

**Per Applicant**

| | |
|---|---|
| Employer's Name: | Swedish Hospital- First Hill C |
| Location: | 747 Broadway |
| Employer's Phone No: | (888) 456-2817 |
| Dates of Employment: | 03/01/2022  To:    06/01/2022 |
| Position Held: | Travel Nurse |
| Department: | |
| Type of Employment: | |
| Reason for Leaving: | |
| Last Wage: | |

**Per Employer**

| | |
|---|---|
| Employer's Name: | Swedish Hospital- First Hill C |
| Location: | 747 Broadway |
| Employer's Phone No: | (888) 456-2817 |
| Dates of Employment: | N/A        To:    N/A |
| Position Held: | N/A |
| Department: | |
| Type of Employment: | N/A |
| Eligible for Rehire: | |
| Reason for Leaving: | |
| Last Wage: | 0 |
| Release Condition: | N/A |
| Person Contacted: | The WorkNumber WinService |
| Contact Title: | |
| Investigator: | SJV |
| Investigator Date: | |

RFP2-060



**Background Profile**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

Investigate further.

## EMPLOYMENT HISTORY, CONT'D

**Comments:**          No record found for the subject

Call date:2024-02-12 01:46:36 PM, Call outcome: Note to File
Comment: No record found for the subject

Call date:2024-02-12 01:46:30 PM, Call outcome: Verified Employment
Comment: No record found for the subject

Call date:2024-02-12 12:47:44 PM, Call outcome: See Comments          , Agent name: Jasmine Mitchell.
Comment: Note : - According to QuickConfirm.com, records could not be located for the individual.  Agent: Jasmine Mitchell.  Final Notes: No record found for the subject

[2/9/2024 2:17:06 PM] WorkNumber: Employment information is verified by an online system which uses the applicant's Social Security number to identify records. The system could not locate any record of the applicant by Social Security number. WorkNumber code: 0

[2/9/2024 2:17:06 PM] Verified by company name: Swedish Hospital- First Hill C
Last updated: None

Call date:2024-02-09 08:39:19 AM, Call outcome: See Comments          , Agent name: Lashana Jackson.
Comment: Note : Source History has been identified and is being reviewed.   - Employment information is being obtained via (QuickConfirm.com) , an online Employment  verification system. Agent: Lashana Jackson.

## PERSONAL REFERENCES

**Status:**          VERIFIED

**Name:**          Catherine Lacross
**Relationship:**
**Years Known:**          0

RFP2-061



**Background Profile**

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

**PERSONAL REFERENCES, CONT'D.**

**Comments:**   How long have you known the applicant? 4-5 years

How did you get to know the applicant? We have been co-workers

What can you tell us about the applicant's Character? Imani's character is great.  She always strives to do the right thing.

What stands out most about their Personality? She's pleasant.

Would they be an asset to the facility? Yes.

2/09/24 7:36 AM MST - Reference request was emailed and the response will be forwarded upon receipt. - CClark

Investigated by: Cindy Clark
02/09/24

**Status:**   UNVERIFIED: No Response from Reference

**Name:**   Shaquita Wiseman

**Relationship:**

**Years Known:**   0

**Comments:**   [02/13/2024 15:23]: We are pending a response from the reference and will update records once a response has been received. -espence

2/13/24 3:23 PM MST - An attempt to acquire reference information has been made via voicemail.  Reference information will be forwarded upon receipt. - ESpence

2/12/24 12:11 PM CST - An attempt to acquire reference information has been made via voicemail.  Reference information will be forwarded upon receipt. - HMartin

2/09/24 7:36 AM MST - Reference request was emailed and the response will be forwarded upon receipt. - CClark

Investigated by: Cindy Clark/Hawah Martin/Erin Spence
02/13/24

RFP2-062

**Background Profile**

# PreCheck
Investigate further.

| | |
|---|---|
| Report Date: | 02/16/2024 |
| Report No.: | 7877916 |
| Applicant: | Chinda , Imani |

## DISCLAIMERS

This report is provided for your exclusive use in strict confidence. Information contained herein should not be the sole determining factor in evaluating the individual. Human error in compiling this information is possible.

If you hire this individual, we recommend as a quality control measure that you positively identify the applicant by comparing the background report with the following identifiers:
· Social Security Number (SSN)
· State Identification or Driver's License
· Date of Birth (DOB)

If a discrepancy exists regarding the First, Middle, or Last Name, SSN, or DOB, please contact your Client Account Manager immediately to initiate further investigation.

### Adverse Action
Adverse action is required under the Fair Credit Reporting Act (FCRA) when a decision, based in whole or in part from information contained in a Consumer Report, is used to deny employment or promotion, terminate, reassign, or make any other employment decision that adversely affects the individual.

Before you take the adverse action, you must give the individual a pre-adverse action disclosure that includes a copy of the individual's consumer report and a copy of "A Summary of Your Rights Under the Fair Credit Reporting Act"--- a document prescribed by the Federal Trade Commission.

When you take the adverse action, you must give the individual notice either orally, in writing, or electronically that the action is being taken. This notice must include:
· the name, address, and phone number of the Consumer Reporting Agency(CRA) that supplied the report;
· a statement that the CRA that supplied the report did not make the decision to take the adverse action and cannot give specific reasons for it; and
· a notice of the individual's right to dispute the accuracy or completeness of any information the agency furnished, and his or her right to an additional free consumer report from the agency upon request within 60 days.

### Public Records
Public records searches consist primarily of criminal history record searches but may also include various misconduct registry searches. Registry searches are labeled accordingly. PreCheck conducts criminal history record searches as far back as county and state level indices allow. The majority of indices provide records from the previous 7 years; a limited number of indices allow searches as far back as 10-20 years.

### Positive Identification
PreCheck conducts a search of consumer databases to substantiate the individual's usage of SSN, addresses, and potential aliases. The Social Security Administration (SSA) restricts SSN verification to employers. To verify, contact the SSA at 1-800-772-1213 and provide your Company's Employer Identification Number, the individual's name, date of birth, and SSN.

**END OF REPORT**

RFP2-063

Steward Health Care System harmless from any and all liability resulting from any investigation of the information provided on this application, my employment history, consumer credit history, criminal convictions, motor vehicle history, and/or Excluded Individuals/Entities checks. I also agree to release all individuals who supply references from any and all liability, which may arise from furnishing that information to Steward Health Care System.

**My typed name below shall have the same force and effect as my written signature.**

Applicant's Signature: *Imani Chinda
Date Signed: 02/21/2023
*It is unlawful to administer a lie detector as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.*

© 2023 symplr. All rights reserved.

# IMANI CHINDA

4001 Corder St., Houston, TX 77021 ♦ 832-875-0251 ♦ imanichinda21@gmail.com

I am a hard worker, team player and energetic leader looking to obtain a position on a Mother/Baby unit where my knowledge and expertise in nursing can be utilized to serve and care for clients, while expanding my knowledge and skills in the position in which I am employed.

## Education

**Prairie View A&M University: College of Nursing**          08/2015-12/2018

*Bachelor of Science in Nursing*          GPA: 3.4/4.0

**Texas State University**          08/2014-05/2015

GPA: 3.8/4.0

## Experience

**Harris Health System-Lyndon B. Johnson Hospital**          **Dates: February 2019-December 2019**
*Registered Nurse- Antepartum/Labor and Delivery/Postpartum*

- Provided competent and quality care to patients through nursing interventions such as assessing, monitoring, and evaluating patient status
- Developed and managed patient care plans with an interdisciplinary team
- Served as the Skin Care Champion for the unit
- Served as the OR circulator and primary nurse during cesarean sections

**Angels of Care Pediatric Home Health**          **Dates: January 2020-January 2021**

*Registered Nurse – Pediatrics*

- Assisted physicians and other members of patient care teams with providing treatment to infants, children, and adolescents according to their active plan of care
- Provided care for patients with seizure, respiratory, and gastrointestinal disorders that required constant supervision and nursing care

**St. Joseph Medical Center**          **Dates: January 2021-March 2022**
*Registered Nurse-Mother/Baby/Newborn Nursery*

- Provided competent and quality care to mothers/babies through nursing interventions such as assessing, monitoring, and evaluating patient status
- Developed and managed patient care plans with an interdisciplinary

RFP2-065

- Served as the Level 1 Newborn Nursery Nurse which included completing the initial nursing assessment, administering the required medications to the neonate, thermoregulation, glucose monitoring and management, respiratory stabilization, & escalation to the NICU team as needed
- Served as a Preceptor for the unit

**Travel Work Experience**

**Position: Mother/Baby Nurse**                                           **Dates: 03/2022-06/2022**
Facility: Swedish Hospital - First Hill Campus
Location: Seattle, Washington
# of Deliveries: 700-1000/month
Bed Size: 57
Teaching: Yes
EMR: Epic
Trauma Level: Level I

**Position: Mother/Baby Nurse**                                           **Dates: 08/2022- 10/2022**
Facility: Kaiser Permanente Riverside Medical Center
Location: Riverside, California
# of Deliveries: 300/month
Bed Size: 20
Teaching: No
EMR: Epic
Trauma Level: Level 1

**Certifications**

Texas Board of Nursing Registered Nurse License Expires: January 2024

Neonatal Resuscitation Program Expires: March 2023

BLS Cardiopulmonary Resuscitation Expires: March 2024

STABLE Certification Expires: March 2023

**Community Service**

Church Without Walls Angel Tree Ministry                    December 2014- Present

Ashford Elementary Etiquette Club                            December 2016- Present

**EMR Charting Systems**

EPIC
MEDITECH



Re: Missing Hours Of PAY!!!

Wright, Candice L. (Human Resources)

To: Chinda, Imani A.; Tolopka, Lori R.; Manning, Emily;
Cc: Zukas, Michelle S.; Makeasia, Jaime E.;

Hi,

Please work directly with your local HR department. They will have the process under your new ownership for pay correction. I should not be included in any future communications since you are no longer a Steward employee.

Kindest Regards,

Candice Wright
VP, Human Resources
Steward Health Care | 1900 N. Pearl Street | Dallas, TX 75201
P: 469-341-6813 F: (469) 341-6998 | Steward.org

From: Chinda, Imani A. <Imani.Chinda@steward.org>
Sent: Saturday, November 2, 2024 12:10:34 AM
To: Tolopka, Lori R. <Lori.Tolopka@steward.org>; Manning, Emily <Emily.Manning@steward.org>
Cc: Wright, Candice L. (Human Resources) <Candice.Wright@steward.org>; Zukas, Michelle S. <Michelle.Zukas@steward.org>; Makeasia, Jaime E. <Jaime.Makeasia@steward.org>
Subject: Missing Hours Of PAY!!!

Good evening Lori,

Per our conversation via telephone on 11/1/2024 at @4:43 pm, I was only paid for 2 shifts instead of being paid for the 5 shifts I worked. I need my funds ASAP! When will my paycheck be ready for pickup? I also need the copies of my timesheets for the past 3 weeks since I was unable to make copies of them for my reference and there are pay discrepancies. I have attached the pay stub to this email for your review.

---

Communication on the Transition to Healthcare Systems of America (HSA).

Gonzales, Tracy

You forwarded this message on 10/31/2024 5:35 PM

Sent on behalf of Tom Dunning, CEO of St. Joseph Medical Center

Good Afternoon,

As of October 30, 2024, we are officially owned by Healthcare Systems of America! As part of this transition, you will notice several process changes not limited to HR, IT, Material Management, Accounting/Payroll and Revenue Cycle.

Tomorrow, we embark on our first payroll under ISOVED- our new HR Platform. I expect there will be some opportunities/discrepancies identified- your leadership team will be working diligently to resolve identified issues.

I appreciate your patience as we work to rectify any issues that arise. If you identify a payroll issue, please direct your concerns to your supervisor so they can be addressed. I appreciate your understanding while we continue to work through this transition and look forward to the future as the new HSA St. Joseph Medical Center!

Tracy Gonzalez
[illegible] Assisted by:
Tom Dunning, Chief Executive Officer
Michelle Zukas, Chief Nursing Officer
Dalton Jones, Chief Financial Officer

St Joseph Medical Center
1401 St Joseph Parkway | Houston, TX 77401
O: 713-396-5600 | F: 713-[illegible]-[illegible]
E: Tracy.Gonzalez@steward.org | sjmctx.org

**Saturday, April 5, 2025 at 00:09:21 Eastern Daylight Time**

**Subject:** Fw: Mindee Rogers Paycheck
**Date:** Tuesday, November 5, 2024 at 2:30:40 PM Eastern Standard Time
**From:** Malveaux, Jaime E.
**To:** Asim Ghafoor

**From:** Mindee Rogers <mindee.rogers@icloud.com>
**Sent:** Tuesday, November 5, 2024 9:40 AM
**To:** Ziakas, Michelle S. <Michelle.Ziakas@steward.org>
**Subject:** Re: [EXTERNAL] Paycheck

**WARNING:** This e-mail came from outside Steward Health Care. Exercise extra **CAUTION** when clicking links and opening attachments from any and all senders. **REPORT** any suspicious emails by clicking the **"PHISH ALERT REPORT"** button in Outlook.

Michelle,

I would prefer to communicate via email not over the phone so I have a written paper trail.
What is my update for the morning?
Do you have my check?

Mindee Rogers RN


> On Nov 4, 2024, at 8:25 PM, Ziakas, Michelle S. <Michelle.Ziakas@steward.org> wrote:
>
> Good Evening,
>
> We have gone through your timecard with your notes and have requested your check. We will circle back first thing in the morning and I will provide an update.
>
> I know that this has been frustrating and will ensure that you will receive your check. Below is my phone number to reach out to me.
>
> Thank you,
>
> Michelle
> 281-468-3502
>
> Get Outlook for iOS
>
> **From:** Mindee Rogers <mindee.rogers@icloud.com>
> **Sent:** Monday, November 4, 2024 7:38:54 PM

**To:** Malveaux, Jaime E. <Jaime.Malveaux@steward.org>; Ziakas, Michelle S. <Michelle.Ziakas@steward.org>
**Subject:** [EXTERNAL] Paycheck

WARNING: This e-mail came from outside Steward Health Care. Exercise extra CAUTION when clicking links and opening attachments from any and all senders. REPORT any suspicious emails by clicking the "PHISH ALERT REPORT" button in Outlook.


Upper Management and Human Resources,

As of 7pm on 11/4/24 I still have not received the remainder of my paycheck owed to me from Friday, 11/1/2024.
I have been told daily since Friday that I would be receiving my check each day.  I was also told yesterday evening that my check "was pushed to the beginning of the line" to be prioritized and I would have it this morning.  Which was yet another false statement.  This morning I was told that the check was issued and was incorrect again and needed to be redone again.
I provided a very detailed breakdown of what I was owed, calculated to the penny, on Friday 11/1/24.
Now that I have not received my complete pay for 4 days, 96 hours, St. Joseph Medical Center is in violation of the Texas Payday Law-Wage Claim.
I have stayed in contact with my unit Manager and Director as I was told to do with no success.
I do not wish to go through the process of filing a wage claim with the Texas Workforce Commission but, will do so if my correct wages are not paid to me immediately.

Sincerely,
Mindee Rogers RN
Labor & Delivery

NOTICE: This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information or Personally Identifiable Information that is privileged and confidential. Protected Health Information and Personally Identifiable Information may only be used or disclosed in accordance with law and you may be subject to penalties under law for improper use or further disclosure of the Protected Health Information or Personally Identifiable Information in this email. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.


NOTICE: This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individual(s) to which it is addressed. It may contain Protected Health Information or Personally Identifiable Information that is privileged and confidential. Protected Health Information and Personally Identifiable Information may only be used or disclosed in accordance with law and you may be subject to penalties under law for improper use or further disclosure of the Protected Health Information or Personally Identifiable Information in this email. If you are not an intended recipient of this email, you are hereby

notified that any unauthorized use, dissemination or copying of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.



RFP2-071

!*#%&'()*+*%.)-.()/0/1)&.)-I3I11.I45)6#7,I&I):&'I;+<.)!;=#

> *?I#A,I          B#?I6<;7%&
:&,#I              C%%&'()*+*%.)-1()/0/1)&.)-I0DI10I45)6#7,I&I):&'I;+<.)!;=#
CI#E=I             F&;=#)5&I6#&*H
!EI               *%;=)I<&IEEI
*,,&A<=#7,II;=&+#IL7+

## STAT Meeting  Re:  Payroll

**Gonzales, Tracy**

Required  ⊞ SJMC Directors;  ⊞ SJMC Managers

| No Response Required | | ... |

Thu 10/31/2024 3:56 PM

ⓘ The meeting request has been sent to your delegate(s).
We couldn't find this meeting in the calendar. It may have been moved or deleted.

🕐 Thursday, October 31, 2024 4:30 PM-5:00 PM   📍 The Methodist Conference Room /; Microsoft Teams Meeting

| 4 PM | |
| 5 PM | |
| 6 PM | |

**Thursday, October 31, 2024 @ 4:30 p.m.**

## Microsoft Teams  Need help?

### Join the meeting now

Meeting ID: 238 397 868 866

Passcode: kbSMYp

[EXTERNAL] Re: HSA Payroll Reports - St. Joseph's



Gabriela Pavel <Gabriela.Pavel@amhealthsystems.com>
To  ○ Robert Boyd; ○ Carlos Alcazar; ○ Faisal Gill; ⊙ Malveaux, Jaime E; ○ Jones, Deborah
Cc  ○ Reva Weems; ○ Dunning, Thomas E.; ○ Carol Chainey

ⓘ This sender Gabriela.Pavel@amhealthsystems.com is from outside your organization.
ⓘ You replied to this message on 10/30/2024 9:50 PM.
If there are problems with how this message is displayed, click here to view it in a web browser.

PDF  Employee_Zero_St Joseph.pdf
     138 KB                         PDF  Payroll_Summary_St Joseph 11.1.2024.pdf
                                         299 KB                                  PDF  Payroll_Register_St Joseph 11.1.2024.pdf
                                                                                     2 MB

**WARNING:** This e-mail came from outside Steward Health Care. Exercise extreme **CAUTION** when clicking links and opening attachments from any and all senders. **REPORT** any suspicious emails by clicking the "PHISH A...

I made some changes to St Joseph and I attached the latest reports. I still have to make a few more changes, but I forgot my sticky notes at work. I will do them first thing in the morning.

@Jaime.Malveaux@steward.org please look over the zero earning report and see if you find any salaried employee that might be on the list. I noticed Wendy Valdes is there, and I think she is salaried but in ISolved she is hourly if there any others like them.

Thanks,
Gabby

**From:** Robert Boyd <Robert.Boyd@amhealthsystems.com>
**Sent:** Wednesday, October 30, 2024 5:53 PM
**To:** Carlos Alcazar <Carlos.Alcazar@amhealthsystems.com>; Faisal Gill <fgill@amhealthsystems.com>; Malveaux, Jaime E. <Jaime.Malveaux@steward.org>; Jones, Deborah <deborah.jones@steward.org>
**Cc:** Reva Weems <Reva.Weems@amhealthsystems.com>; thomas.dunning@steward.org <thomas.dunning@steward.org>; Carol Chainey <Carol.Chainey@amhealthsystems.com>; Gabriela Pavel <Gabriela.Pavel@amhealthsystems.com>
**Subject:** HSA Payroll Reports - St. Joseph's

Attached are the Payroll reports to review.

Jaime/Deborah...please take a look at the Zero Earnings Report as these employees will not have hours; however, my team found that there are about 8 employees that have time and they are addressing them now.

Thanks,
Rob

| | PAYROLL SUMMARY PREVIEW | | | |
|---|---|---|---|---|
| **Client ID:** CN449524 - St. Joseph Medical Center | | | **Period Begin Date:** 10/13/2024 | |
| **Pay Group:** Bi-Weekly | HSA St. Joseph LLC | | **Period End Date:** 10/26/2024 | |
| **Check Date:** 11/1/2024 | DBA: St Joseph Medical Center | | **Pay Period:** 1 | |
| **Run Date:** 10/30/2024 | | | **Payroll Type:** Regular Payroll | |

| | | *** PAYROLL FUNDING *** | | | |
|---|---|---|---|---|---|
| **Debit Type** | **Bank Name** | **Transit Routing #** | **Bank Account #** | **Counts** | **Amount** | **ACH Debit** |
| Checks | WELLS FARGO, NA | *****0248 | ******7284 | 8 | $11,834.92 | $0.00 |
| Direct Deposits | WELLS FARGO, NA | *****0248 | ******7284 | 964 | $0.00 | $1,587,270.92 |
| Totals | | | | 972 | $11,834.92 | $1,587,270.92 |



RE: Timekeeping Updates- Please Read- Urgent- Updated 10/24/2024- 10:30a

Malveaux, Jaime E.

To   Alford, Dorothy H.;   Allan, April;   Allen, Angela;   Alsayed, Yara;   Anderson, Ebony J.;   Bafford, Sarah;   Botticelli, Joseph T.;   Canright, Stephanie;   Chea, Alisa K
     Compton, Betty;   Confer, Taylor D.;   Cornett, Michael;   Crawford, Darlene;   Cuero Mancilla, Alonso;   Darden, Andrea E.;   Dixon, La Keshia N.;   +58 others
Cc   Chea, Alisa K.;   Ortega, Sandra M.;   Cordova, Margaret;   Roque, Diana R.;   Perry, Tavia;   Norman, Taylor;   Cope, Brent A.;   Wyrick, Rosland;   Reva Weems;
     Robert Boyd

This is the most recent version, but you made changes to another copy. Click here to see the other versions.

AEE Employee.Guide.pdf          ESS-AEE Quick Reference Guide.pdf          Manual_Time_Sheet.xls
3 MB                            364 KB                                     205 KB

Good Morning!

The Isolved Registration emails have gone out this morning- we are working on a solution for those who were not able to receive the registration email.  Please see the attached quick reference guide- this could be used to assist employees in order to start regist
is for employees to start clocking in Sunday- the beginning of the payperiod.  To ensure a seamless transition, we are requiring a manual timesheet for the new payperiod as well as employees to start clocking using their ISOLVE account- this double redundancy
double redundancy will be in effect until early next week when more direction is given (including timekeeper quick tip sheets).   We will reassess individual ISOLVED registrations early next week to identify if we need to deploy educational plan.

Thanks All!  We got this!

RFP2-074

RE: Timekeeping Updates- Please Read- Urgent



Malveaux, Jaime E.

To: Alford, Dorothy H.; Allan, April; Allen, Angela; Alzayed, Yaziz; Anderson, Ebony J.; Bafford, Sarah; Botticelli, Joseph T.; Conright, Stephanie; Chea, Alisa K.;
Compton, Betty; Confer, Taylor D.; Cornett, Michael; Crawford, Darlene; Cuero Mancilla, Alonso; Darden, Andrea E.; ● Dixon, La Keshia N.; +58 others
Cc: Chea, Alisa K.; Ortega, Sandra M.; Cordova, Margaret; Roque, Diana R.; Perry, Tavig; Norman, Taylor; Cope, Brent A.

   Manual_Time_Sheet.xls
205 KB



- Time import from Kronos initiated for 10/13/24-10/18/24 am punch- all timekeeping for that time should have been complete prior to transition to new system
- All paper timecard forms must be legible- clearly identifies times worked
- Paper Timecards/Manual Punch Forms- Special Pays/Codes, Cost Center allocation (if necessary), PTO should be clearly noted on form
- Manual Timesheets/Missed Punch forms for time 10/18/24 after transition to paper forms to 10/24/2024-5pm should be validated, signed, and sent to your senior leader by 10am tomorrow
- SLT submission should be one file per cost center- named by cost center and department name
- New manual time sheet (attached) should be implemented for all punches after 5pm today; will carry through the end of the payperiod- Saturday, 10/26/24- except for overnight works who will include
- Mid shift workers only- should have their 10/24/24 "in punch" on the timesheet submitted tomorrow at 10am and new timesheet for outpunch today
- Manual Timesheets for PM 10/24/2024-10/26/2024 are due to your senior leader by 8am on Monday, 10/28/24- validated, special pays/allocations noted, and signed
- Missed Meal Break forms should be submitted behind the manual timesheet of person requesting to ensure auto deduction does not occur
- All exempt employees, submit timesheet for 10/18/2024-10/25/2024 with the appropriate cost center package due to your senior leader tomorrow at 10a
- We are expected to start clocking in ISOLVED Sunday if they have access- once we receive word its time to register accounts, we will let you know
- YOU ARE RESPONSIBLE TO ENURE EVERY EMPLOYEE HAS A TIMESHEET to ensure we are all paid November 1st

We got this!  We are Rock Stars!

RFP2-075

RE: Timekeeping Updates- Please Read- Urgent

MJ    Malveaux, Jaime E.

To    ○ Alford, Dorothy H.; ○ Allan, April; ○ Allen, Angela; ○ Alsayed, Yaraj; ○ Anderson, Ebony J.; ○ Bafford, Sarah; ○ Botticelli, Joseph T.; ○ Canright, Stephanie; ○ Chea, Alisa K.;
      ○ Compton, Betty; ○ Confer, Taylor D.; ○ Cornett, Michael; ○ Crawford, Darlene; ○ Cuero Mancilla, Alonso; ○ Darden, Andrea E.; ● Dixon, La Keshia N.; **+56 others**

Cc    ○ Chea, Alisa K.; ○ Ortega, Sandra M.; ○ Cordova, Margaret; ○ Roque, Diana R.; ○ Perry, Tavia; ○ Norman, Taylor; ○ Cope, Brent A.

ⓘ You replied to this message on 10/24/2024 4:24 PM.
This message was sent with High importance.

📊 Manual_Time_Sheet.xls ▾    📄 Missed Punch Correction Form 10152024.docx ▾
   205 KB                         46 KB



***Kronos clocking will go away tomorrow morning***- please run your final daily time detail report no later than 9:30a timekeeping completed in Kronos- ***we will lose Kronos access at some point tomorrow***.  We are still hoping the completed from Kronos to ISOLVE for punches already in Kronos.  We are going to **manual paper timecards** after m - Please **implement paper timecards for staff after 8a**!  I have signs to place over the timeclocks in your areas- I will huddle.  30 minute Lunch breaks will continue to be auto-deducted for those working over 6 hours.  Either of th we transition to paper- please ensure you have documentation to support the punches that will need to entered i built.  I'm sure we will have access to the new timekeeping system soon- we still waiting on confirmation of the ISO training.  I just found out- I apologize for the late notice.

Thanks

This Photo by Unknown Author is licensed under CC BY-NC-ND

| Timesheet reconciliation with Gross Payment Details | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Hours worked | Hourly Rate | Night Hours | N Total | Payment Due | | in | out | Total minus lunch |
| 10/16/24 | 12.75 | $60.0000 | 12.75 | 51 | $ 816.00 | | 1830 | 745 | 12.75 |
| 10/17/24 | 13.5 | $60.0000 | 13.5 | $ 54.00 | $ 864.00 | | 1830 | 830 | 13.5 |
| 10/19/24 | called in | $60.0000 | | 0 | $ - | | 0 | 0 | 0 |
| 10/23/24 | 12.25 | $60.0000 | 12.25 | 49 | $ 784.00 | | 1825 | 710 | 12.25 |
| 10/24/24 | 12 | $60.0000 | 12 | 48 | $ 768.00 | | 1830 | 700 | 12 |
| 10/26/2024* | 12 | $60.0000 | 12 | 96 | $ 816.00 | | 1830 | 700 | 12 |
| | | | 62.5 | $ 298.00 | $ 4,048.00 | | | | |

*Weekend night diff- $8 ($4/night, $4/weekend) per contract

| Total Paid Per Check Stubs | | | | | |
|---|---|---|---|---|---|
| | Hours | Diff | PTO* | Total Gross | Note |
| 11/1/24 | 24.75 | 0 | | $ 1,485.00 | |
| 11/4/24 | 36.5 | 0 | | $ 2,190.00 | still owe 1.25 @$60/hr= $75 |
| 11/4/24 | | | 12 | $ 720.00 | overpaid- not due PTO= $720-75= $645 |
| 11/7/24 | 0 | 27.5 | | $ 82.50 | paid at incorrect diff rate/hours due=$298-82.50= $215.50 owed |
| Total Paid | 61.25 | 27.5 | 12 | 4477.5 | |

| Overpaid | $645.00 |
|---|---|
| Owed | $215.50 |
| Amount Due | $429.50 |



**Timekeeping Policy**
**Department: Human Resources**
**Policy Number:  HR 26**
**Origination Date: 11/10/2020**
**Last Revised: 9/26/2022**

# Policy

A. Accurately recording time worked is the responsibility of every employee. Federal and state laws require St. Joseph Medical Center to keep accurate records of time worked in order to calculate employee pay and benefits. Time worked is all the time actually spent on the job performing assigned duties. Overtime work must always be approved in advance by a supervisor prior to being performed, except in the case of an emergency.  Employees who perform work before or beyond their scheduled shift due to an emergency must accurately record all of their working time in the timekeeping system and inform their manager as soon as reasonably possible.

B. Nonexempt employees are required to accurately record their time when they begin and end work, when they do not take a thirty (30) consecutive minute meal period, or when the meal period is interrupted by work-related activities.  Employees who work six (6) hours or less in a work day do not receive a meal period.  Where applicable, required training should be performed during scheduled time with nonexempt employees clocked in.  If a nonexempt employee is unable to be clocked in to complete required training, it must be prescheduled and approved by the employee's supervisor.  When reporting time to supervisor, it must not exceed time allotted per the course requirements.

C. Nonexempt employees must review their time records and certify the accuracy of all time recorded at the end of each pay period in the timekeeping system. The supervisor will review the record and approve in the timekeeping system to submit for payroll processing. In addition, if corrections or modifications are made to the time record, both the nonexempt employee and the supervisor must verify the accuracy of the changes by re-approving the time in the time keeping system.  If past the payroll deadline, any necessary corrections to an employee's pay will be submitted to Payroll and paid to the employee as soon as administratively feasible.

D. The actual times exempt employees should report to work and leave work are determined by their supervisors and do not need to be recorded.

E. Altering, falsifying, tampering with time records, or recording time on another employee's time record may result in corrective action, up to and including termination of employment. Failure of nonexempt employees to submit accurate and complete time records on a timely basis may delay the processing of paychecks as permitted by applicable state law. Continued failure of nonexempt employees to submit accurate and complete time records may result in corrective action, up to and including termination.

F. Exempt employees who regularly receive a predetermined amount of pay for each week of work are entitled to receive that pay for each full week in which they work. Consistent with the Fair Labor Standards Act ("FLSA"), the company may make deductions from the pre-determined salaries of employees paid on a salary basis, as that phrase is defined by the FLSA regulations, in the event of one or more of the following occurrences:

RFP2-078



**Timekeeping Policy**
**Department: Human Resources**
**Policy Number:  HR 26**
**Origination Date: 11/10/2020**
**Last Revised: 9/26/2022**

1. Absence of one or more full days, for personal reasons other than sickness or disability.

2. Absence of one or more full days, because of sickness or disability, in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary because of sickness or disability.

3. Offsets for amounts received by an employee as jury fees, witness fees or military pay in a particular week.

4. Partial or full day(s) suspensions imposed in good faith for infractions of safety rules of major significance.

5. Full day(s) suspensions, imposed in good faith and pursuant to a written policy applicable to all employees, for infractions of workplace conduct rules such as those prohibiting sexual harassment or work place violence.

6. FMLA partial day absences.

7. Initial or ending weeks of employment (if the employee works less than a full week).

G. Except as stated above, the company will not make deductions from the pre-determined salaries of employees paid on a salary basis as a result of variations in the quality or quantity of work performed by such employees.

H. The company will take every precaution to avoid errors in an employee's paycheck; however, occasionally an error may occur. If an employee believes a pay deduction may violate this policy, he or she should notify the immediate supervisor as soon as possible. The supervisor and Payroll will investigate the complaint, and, if the deduction was inconsistent with this policy, will direct that the employee be reimbursed for the deduction.

I. Employees covered by a collective bargaining agreement should check their contracts for specific language pertaining to meal breaks.  Where there is a conflict, the language in the collective bargaining agreement will prevail for those employees in the covered bargaining unit.

# Procedure

**A. Employees**

1. Record starting work time when you report to work and stop work time at the end of your shift.

2. Non-exempt employees are required to clock in at the beginning of shift and clock out at the end of shift.  To prevent incremental overtime, employees should clock in no earlier than 7 minutes before the start of their scheduled shift and no later than 7 minutes after the end of their shift. All employees are expected to be at their work area and ready to begin work at their scheduled time.

3. In the event an hourly nonexempt employee did not take a thirty (30) consecutive minute uninterrupted  meal period, or the meal period was interrupted or cut short for any work-related



**Timekeeping Policy**
**Department: Human Resources**
**Policy Number:  HR 26**
**Origination Date: 11/10/2020**
**Last Revised: 9/26/2022**

reason, the employee should notify their supervisor to adjust employee's time through a pay code edit.

4. Employees must review and verify the accuracy of reports generated by the timekeeping system during each biweekly pay period and should also review the information on their paychecks carefully to ensure that they are properly compensated for all time worked.  Employees may access and verify their recorded working hours online at the timekeeping system or at the time clock.

5. All timecards, including those with 0 hours, must be approved by the designated payroll deadline.

6. Employees who believe that there may be an error in their reported hours or compensation should contact their supervisor immediately. SJMC will correct errors in employees' time records or compensation as soon as administratively feasible.

7. Obtain supervisor approval prior to working overtime when practical.

8. It is not allowed for employees to work "off the clock".

9. Failure to immediately clock-in upon arrival at work or immediately clock-out at the end of an employee's work may result in disciplinary action, up to and including termination.

## B.  Supervisors

1. Timekeepers are to monitor the timekeeping system daily, and no timekeeper can edit, approve or sign off on their own time record.

2. Supervisors are responsible for reviewing time records for accuracy, making any needed corrections, and approving all time cards for both exempt and nonexempt staff (including those with 0 hours) by the designated payroll deadline.

3. If employee notifies supervisor of an error in their time record before payroll deadline, supervisor to adjust employee's time with a pay code edit.  The entry of a comment by the supervisor is mandatory to explain in sufficient detail why the employee's time has been removed with a pay code edit (e.g. Employee did not take thirty (30) minute uninterrupted meal period).

4. If the time record is corrected, obtain the employee's approval in the timekeeping system or time clock.

5. If the nonexempt employee works unauthorized overtime, pay hours according to the time record, using the corrective action procedure to change the employee's behavior.

6. If unable to process corrections within the time keeping system, process corrections to payroll using the facility's desired method.



**Timekeeping Policy**
**Department: Human Resources**
**Policy Number:  HR 26**
**Origination Date: 11/10/2020**
**Last Revised: 9/26/2022**

7. Supervisors are responsible for ensuring that each employee understands SJMC's timekeeping procedures and the requirement of this policy.  Supervisors are also responsible for ensuring employees review and verify the accuracy of their recorded working hours each pay period.

**C.  Directors**

1. Department Directors are responsible for ensuring that timecards for all exempt and nonexempt staff are accurate and approved prior to the designated payroll deadline.  They will appropriately address any non-compliance with assigned timecard approvers.

**D.  Payroll**

1. Payroll will send an email each payroll processing week to remind all supervisors of unapproved timecards, with a copy to the President or designee.

2. The Payroll Department is responsible for processing payroll timely and accurately.

3. Following each payroll, payroll will provide a list of supervisors who regularly have unapproved timecards to the Corporate CFO and Market leadership for accountability.

**E.  Market Chief Revenue Officer**

1. The hospital or market Chief Revenue Officer (CRO) or Designee will run a payroll register report, a new hire report, and a termination report after each payroll is processed.  The CRO will review these reports to ensure paid hours appear reasonable and that no "Ghost Employees" or terminated employees received pay.

2. The CRO will also run a final unapproved timecard report following each payroll to identify supervisors who regularly have unapproved timecards, then reinforce expectations with those supervisors.

**F.  President**

1. The President or Designee will use the email of unapproved timecards to remind supervisors and directors of their responsibility to approve timecards each pay period.

2. The hospital is responsible for ensuring all timecards are approved timely and that active employees are accurately paid for time worked each pay period.  T h e  President or Designee is responsible for reviewing the payroll report each pay period to ensure that only active employees are included in that payroll register.  The review should include the selection of five employees, with whom the reviewer is not familiar.  The names should be sent to HR for verification of employment.  The last page of the report should be printed , signed and dated by the reviewer and the responding email from HR regarding the selected employees' employment should be printed and retained with the payroll register.  This should be stored for six (6) months and made available to the auditors upon request.

RFP2-081



**Timekeeping Policy**
**Department: Human Resources**
**Policy Number: HR 26**
**Origination Date: 11/10/2020**
**Last Revised: 9/26/2022**

# References

29 U.S.C. § 206

29 U.S.C. § 207

29 C.F.R. § 785

# Review and Approval

The following St. Joseph Medical Center personnel have reviewed and approved this policy:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 10/07/2020 | **Executive Director, Human Resources**<br>**Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [11/10/2020]<br>St. Joseph Medical Center **Senior Leadership** [11/10/2020] | **New policy.** |
| 5/03/2021 | **Executive Director, Human Resources**<br>**Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [5/13/2021]<br>St. Joseph Medical Center **Senior Leadership** [5/13/2021] | **Revised: Sections C, D, E, and F added. Requirement to approve exempt timecards added.** |
| 8/30/2022 | **Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [9/19/2022]<br>St. Joseph Medical Center **Senior Leadership** [9/19/2022]<br>St. Joseph Medical Center **Medical Executive Committee** [9/20/2022]<br>St. Joseph Medical Center **Governing Board** [9/26/2022] | **Reviewed: no content changes.** |

*Disclaimer: The electronic version of this policy is considered to be the controlled version. Printed copies are considered uncontrolled documents. Before using a printed copy, verify that it is the current version.*
*Page 5 of 5*

RFP2-082



| | **Social Media Policy** |
| | **Chapter: Human Resources** |
| | **Policy Number:  HR 22** |
| | **Origination Date: 7/30/2019** |
| | **Last Reviewed: 7/31/2023** |

# Policy

The participation in or use of social media by members of the Steward Health Care System workforce is restricted in accordance with this policy. The use of Social Media while on the Steward network is expressly prohibited unless it is being used for approved business purposes only.  Steward credentials (email address, login ID, etc. cannot be used for signing up for non-approved social media sites.  Social media includes, but is not limited to, blogs, podcasts, video and photograph sharing tools, discussion boards and forums, and social networking sites (e.g. Facebook, LinkedIn, Myspace, Twitter, Instagram, SnapChat, YouTube, etc.) or any other form of online publishing or discussion. These restrictions are intended to ensure compliance with internal policies as well as with legal and regulatory restrictions, and privacy and confidentiality agreements.

# Purpose

The purpose of this policy is to provide the Steward Health Care System workforce with requirements for participation in and use of social media.

# Scope

This policy applies to all workforce members within the Steward Health Care System and its subsidiaries and affiliates who use social media.  For more information on the procedures utilized by Steward Health Care System for granting access to social media web sites while at work, refer to OIS 2001 End User Computing Security Procedures (OIS-2001) under Information Services..

For instructions on how to request access to Social Media sites, refer to the Social Media Access Procedure in Section E. under Procedure below.

# Procedure

### A.  Confidential and Proprietary Information

Members of the Steward workforce may not disclose confidential or proprietary information of or about Steward Health Care System or its parent, subsidiaries and affiliates, board members, vendors, or suppliers. This includes information such as legally-protectable trade secrets, research, business plans, attorney-client privileged information, or that violates any intellectual property law, such as copyright, trademark, and/or financial disclosure law.  Members of the Steward workforce also may not represent that they are communicating the views of Steward Health Care System or do anything that might reasonably create the impression that they are communicating on behalf of, or as a representative of, Steward Health Care System. Members of the Steward workforce may not make an endorsement in support of the Steward Health Care System or its parent, subsidiaries and affiliates, board members, vendors, or suppliers, its products or services, on any social media,  email, blog, forum, or other internet-related media, even if using a personal account, without disclosing your relationship with the Steward Health Care System.

RFP2-083



**Social Media Policy**
**Chapter: Human Resources**
**Policy Number: HR 22**
**Origination Date: 7/30/2019**
**Last Reviewed: 7/31/2023**

### B. Employee/Patient Confidentiality

Workforce members may not use or disclose any subscriber/patient identifiable information of any kind on any social media. This information is legally protected under the Health Insurance Portability and Accountability Act (HIPAA), federal and state patient confidentiality laws. Even if an individual is not identified by name within the information the employee intends to use or disclose, if there is a reasonable basis to believe that the person could still be identified from that information or image, then its use or disclosure is prohibited and could constitute a violation of HIPAA, federal and state patient confidentiality laws.

### C. Adherence with Steward Code of Conduct

When using social media in circumstances in which the individuals affiliation with Steward Health Care System is identified, known, or can be presumed, workforce members must adhere to federal or state law and Steward Health Care System's conduct-related policies such as the Equal Employment Opportunity and Sexual and Workplace Harassment Policies. Workforce members must not post material that is defamatory, harassing, or discriminatory regarding another person or entity, including Steward Health Care System and its parent, subsidiaries and affiliates, partners, other workforce members and any other business related individuals or organizations. Defamatory statements include postings that are untrue and likely to harm the reputation of the person or entity being described, including false statements that a person or entity has done something unlawful or unethical. Examples of harassing or discriminatory postings include but are not limited to comments that threaten to physically harm a person or comments that are derogatory of a person's age or race, or include unwelcome comments of a sexual nature directed at another person.

### D. Violation of Policy

Violations of this policy may result in disciplinary action up to and including termination. Nothing in this policy is intended to prevent employees from engaging in actions that are legally protected under the National Labor Relations Act, if applicable, or other applicable law.

### E. Social Media Access Procedure

In order for an employee to gain access to approved social media sites for business use, the employee's departmental Vice President should send a request to the Steward Help Desk.

## Review and Approval

The following Steward Health Care System personnel originated and approved this policy:

| Date | Contact | Approved By | Description |
|------|---------|-------------|-------------|
| 7/30/2019 | Vice President, Human Resources SHC | Human Resources, Compliance, Steward Clinical Excellence Committee | **New policy** |
| 7/31/2023 | Corporate Human Resources | Senior Vice President, Human Resources | Renew as is, no changes. |

RFP2-084



| | |
|---|---|
| **St. Joseph Medical Center** A STEWARD FAMILY HOSPITAL | **Social Media Policy** **Department/Chapter: Human Resources** **Policy Number: HR 22** **Origination Date: 7/30/2019** **Last Revised: 7/31/2023** |
| **St. Joseph Medical Center** **HOSPITAL ADDENDUM** | **Addendum** **Origination Date: 8/12/2019** **Last Revised: 8/28/2023** |

# Hospital Procedure

System policy has been adopted as is.

# Review and Approval

The following St. Joseph Medical Center personnel have reviewed and approved this policy and addendum:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 8/07/2019 | **Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [8/12/2019] St. Joseph Medical Center **Senior Leadership** [8/12/2019] | **New Steward policy adopted as is.** |
| 8/07/2023 | **Corporate Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [8/15/2023] St. Joseph Medical Center **Senior Leadership** [8/15/2023] St. Joseph Medical Center **Medical Executive Committee** [8/15/2023] St. Joseph Medical Center **Governing Board** [8/28/2023] | **Steward policy released as "3-year review"  - adopted as is.** |

RFP2-085



**Steward**
Steward Health Care System

| **Enterprise Information Security Data Classification Policy** |
| **Policy Number: EISP 05** |
| **Origination Date: 6/2/2020** |
| **Last Revised: 8/13/2024** |

# Policy

This policy ensures that Steward is maintaining a secure and reliable environment for its information, including sensitive information in its possession. Unauthorized disclosure or use of sensitive information may be a violation of applicable law and may subject the violator to civil penalties.

# Scope

This policy applies to Steward Health Care System (Steward), including employees, business associates, independent contractors, and all service providers and vendors requiring access to Steward's sensitive information. This policy applies to paper, electronic, and other records containing sensitive information. This applies to all network, systems and computing equipment, along with the underlying technology infrastructure that is owned or leased by Steward, and is used to store, process, or transmit sensitive information.

# Definitions

**Confidential Information:** Sensitive data (e.g., PHI, PII) regulated by compliance mandates, e.g., GDPR, ISO 27000, HIPAA, Privacy, as well as other Federal and State regulations.

**Data Owner:** Is responsible for determining the value of the information and responsible for protecting it.

**Data Custodian:** Has the responsibility of maintaining and protecting the data in support of the data owner.

**Internal Information:** Is the type of data for which disclosure, modification, loss, or corruption will result in minimal impact to Steward.

**Public Data (Information):** Is data already publicly available and for which no legal or contractual obligation to restrict disclosure exists.

**Protected Health Information (PHI):** Any information as defined by regulations such as GDPR and HIPAA, as health status, provision of health care, or payment for health care that is created, received, stored or collected by a Covered Entity (or a Business Associate of a Covered Entity), and can be linked to a specific individual.

**Personally Identifiable Information (PII):** Individually identifiable information that, when used alone or with other relevant data, can identify an individual and includes many common identifiers (e.g., name, address, birth date, Social Security Number).

**Restricted Data:** Is the highest level of sensitive data within Steward's classification scheme.

**Sensitive Information** is any information that is not Public or Internal information. It typically represents data classified as either Restricted or Confidential, according to this data classification scheme. This term is often used interchangeably with Confidential and Restricted data. See table below.



**Steward**
Steward Health Care System

**Enterprise Information Security Data
Classification Policy
Policy Number: EISP 05
Origination Date: 6/2/2020
Last Revised: 8/13/2024**

| Type | Data Classification Category | Examples |
|---|---|---|
| | Public | Home address |
| | Internal | Steward phone listing, org charts, policy documents |
| Sensitive | | |
| | Confidential | Personally Identifiable Information (PII), Protected Health Information (PHI) as defined by regulations such as GDPR and HIPAA |
| | Restricted | M&A, Steward Intellectual Property and Proprietary Information, Encryption Keys, Passwords |

# Procedure

1. The data classification will be determined based on the sensitivity and impact resulting from the unauthorized disclosure, alteration, or destruction.

2. When multiple classification levels are present in a group of data, the most restrictive classification of any of the individual data elements will be used.

3. All production information will have a designated Data Owner.

4. Data Owners are responsible for assigning the information to one of the four information classifications. Data Owners do not legally own the information entrusted to their care. Ownership remains with Steward.

5. Data Owners are responsible for approving and revoking access to their assigned information.

6. Data Owners are responsible for performing periodic reviews to validate that only authorized users have access to their assigned information.

7. Data Owners are responsible for determining the retention length of the information within the legal and regulatory requirements.

8. Data Owners are responsible for working with the Information Systems (IS) and Enterprise Information Systems (EIS) teams to find the appropriate protections to meet requirements.

9. Sensitive Information in physical form will always be stored in a locked container, safe, or storage room, outside from public view. Access will be limited to "need to know" personnel only.

10. Sensitive Information in electronic form shall be stored encrypted when stored in unencrypted portable media.

11. Internal Data in hard copy format will be kept out of the public view by storing it in a closed cabinet or drawer when not in use.



**Enterprise Information Security Data Classification Policy**
**Policy Number: EISP 05**
**Origination Date: 6/2/2020**
**Last Revised: 8/13/2024**

12. Public Data does not require special protected storage.

13. Sensitive Information requires explicit approval from the Data Owner before transmittal or transport, and only to specified recipients.

14. Sensitive Information shall be transmitted via encrypted channels using Virtual Private Networks (VPN) or Transport Layer Security (TLS) version 1.2 or higher.

15. Sensitive Information shall be transported using sealed envelopes that are tamper-resistant, labeled as confidential, and identifying the sender and recipient.

16. Sensitive Information shall be inventoried prior to transport to ensure that it can be traced, using approved secure curriers for external deliveries.

17. Internal Data shall be transmitted or transported using the same secure channels as Confidential Information when sent outside Steward.

18. Internal Data shall be transmitted or transported by identifying the recipient's prior distribution.

19. Public Data does not require special protections during transmittal or transport.

20. Access and actions to Sensitive Information will be audited and logged. (refer to EISP 09 Enterprise Information Security Monitoring and Logging Policy).

21. Security events will be monitored and analyzed to detect unauthorized access or actions to Sensitive Information. (refer to EISP 09 Enterprise Information Security Monitoring and Logging Policy).

22. When unauthorized access or actions to Confidential and Internal Information is detected, reporting parties will notify the Enterprise Information Security team for analysis.

23. Hard copy containing Sensitive Information will be disposed of by an approved procedure Storage media containing Sensitive Information shall be disposed of or destroyed prior to reuse of the storage media that follows NIST 800-88 Standard for Media Sanitization and obtaining a certificate of destruction/disposal.

24. Physical media containing Confidential Information will be physically destroyed by an approved procedure such as grinding, crushing, or by a chemical process, such as burning or acid treatment.

25. Public Data does not require special protections during disposal.

26. Sensitive Information shall be copied, printed, or faxed using authorized devices that are not located in public areas.

27. Sensitive Information shall be copied, printed, or faxed using authorized cover letters labeled as confidential.

28. Recipients of sensitive or internal use information will be informed of the intent to send them information before faxing via phone call.

29. Sensitive or Internal Information shall not be left on copiers, printers, or faxes unattended.



**Enterprise Information Security Data Classification Policy**
**Policy Number: EISP 05**
**Origination Date: 6/2/2020**
**Last Revised: 8/13/2024**

30. Public Data does not require special protection during copying, printing, or faxing.

# Attachments

Appendix A: Data Classification Examples

# References

GDPR - EU General Data Protection Regulation: Regulation (EU) 2016/679

NIST Special Publication 800-53 – (RA-2) Security Categorization

NIST Special Publication 800-53 – (SA-14) Criticality Analysis

NIST Special Publication 800-53 – (SC-8) Transmission Confidentiality and Integrity

NIST Special Publication 800-53 – (SC-28) Protection of Information at Rest

# Review and Approval

The following Steward Health Care System personnel originated and approved this policy:

| Date | Contact | Approved By | Description |
|------|---------|-------------|-------------|
| 6/2/2020 | Steward Enterprise Information Security | Steward Enterprise Information Security, Steward Clinical Excellence Committee | New<br><br>*Correction 7/9/2020 Changed policy # from EISP-DC-01 to EISP 05* |
| 6/20/2023 | Steward Enterprise Information Security | Steward Enterprise Information Security, Steward Clinical Excellence Committee | 3 Year Review. Updated references to include GDPR and ISO/IEC. |
| 8/13/2024 | Senior Information Security Policy Analyst | Chief Information Security Officer, Steward Clinical Excellence Committee | Updated definition of Confidential Information Added Policy number to policy titles under #20 and #21. |



**Enterprise Information Security Data Classification Policy**
**Policy Number: EISP 05**
**Origination Date: 6/2/2020**
**Last Revised: 8/13/2024**

# Appendix A

## Data Classification Examples

The table below lists out some data classification examples.

| Data Description | Data Classification |
|---|---|
| **Employee, Customer, Contractor Information** | |
| Personally Identifiable Information (PII) | Confidential |
| Salary Information | Internal |
| Medical/Dental | Confidential |
| Cost Center | Internal |
| Steward Employee Number | Internal |
| Employee Status | Internal |
| Hire Date | Internal |
| Educational History | Internal |
| Sex/Gender | Internal |
| Employee Electronic Mail Address | Internal |
| | |
| **Medical/Patient Information (HIPAA) Protected Health Information (PHI)** | |
| All PHI information | Confidential |
| | |
| **Unique Identifiers** | |
| Password/PIN/Access Code | Restricted |
| | |
| Social Security Number | Confidential |
| Tax Identification Number | Confidential |
| Driver's License Number | Confidential |
| | |
| **Other** | |
| Network Diagrams | Confidential |
| Policies, Standards | Internal |
| Phone Directory | Internal |
| Organizational Charts | Internal |
| | |
| **Steward's Proprietary Information** | |
| Strategic Plans | Restricted |
| Mergers and Acquisitions | Restricted |



| | Enterprise Information Security Data Classification Policy |
|---|---|
| **St. Joseph Medical Center** A STEWARD FAMILY HOSPITAL | **Department/Chapter: Enterprise Information Security** **Policy Number:  EISP 05** **Origination Date: 6/02/2020** **Last Revised: 8/13/2024** |
| **St. Joseph Medical Center HOSPITAL ADDENDUM** | **Addendum** **Origination Date: 7/13/2020** **Last Revised: 10/21/2024** |

# Hospital Procedure

System policy has been adopted as is.

# Review and Approval

The following St. Joseph Medical Center personnel have reviewed and approved this policy and addendum:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 4/28/2020 | **Steward Corporate Executive Director, Hospital System Account Manager** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [7/13/2020] St. Joseph Medical Center **Senior Leadership** [7/13/2020] | **New Steward policy adopted as is.** |
| 6/20/2023 6/27/2023 | **Steward Corporate Executive Director, Hospital System Account Manager** **Hospital Manager, IS** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [7/06/2023] St. Joseph Medical Center **Senior Leadership** [7/06/2023] St. Joseph Medical Center **Medical Executive Committee** [7/18/2023] St. Joseph Medical Center **Governing Board** [7/24/2023] | **Steward policy released as "3-year renewal".  No changes made to previously approved Hospital Addendum.** |
| 09/09/2024 | **Hospital Manager, IS** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [10/15/2024] St. Joseph Medical Center **Senior Leadership** [10/15/2024] St. Joseph Medical Center **Medical Executive Committee** [10/15/2024] St. Joseph Medical Center **Governing Board** [10/21/2024] | **Steward policy revisions adopted as is.  No changes made to previously approved Hospital Addendum.** |



**Steward**
Steward Health Care System

**Enterprise Information Security Incident Response Policy**
**Chapter: Enterprise Information Security**
**Policy Number:  EISP 07**
**Origination Date: 3/21/2020**
**Last Reviewed: 4/4/2023**

# Policy

The purpose of this policy is to ensure that the security incident response program is maintained in the event a information security incident is discovered within Steward.

# Scope

This policy applies to Steward Health Care System (Steward) and its third-party vendor companies.

# Definitions

**Incident Response (IR) Plan:** An organized approach for detecting, responding to, and limiting the effects of a security incident or breach and managing the impact of the incident.

**Security Event**: An observable change in the everyday operations of a system, network or information technology service indicating that a security policy may have been violated or a security safeguard may have failed.

**Security Incident:** Any adverse event that threatens the security of information assets held by Steward, employees, or a third party acting on behalf of Steward. Examples of Security Incidents include, but are not limited to, any unauthorized penetration of Steward's security system, loss of data confidentiality, disruption of data or system integrity.

**Security Breach:** Any incident, regardless of whether sensitive data is impacted, resulting in unauthorized access of Steward data, applications, services, networks, or devices by bypassing their underlying security mechanisms.

# Policy

1. Steward will establish and maintain an Information Security IR Plan to address computer security incidents, including, but not limited to, theft, misuse of data, intrusions, hostile probes, and malicious software.  Where possible, automated methods are preferred over manual methods.

2. The IR Plan will address the following phases involved, and documentation of all activity needs to be accurate and complete:

   - Preparation
   - Identification
   - Containment
   - Eradication
   - Recovery



| | **Enterprise Information Security Incident Response Policy** |
|---|---|
| | **Chapter: Enterprise Information Security** |
| | **Policy Number:  EISP 07** |
| | **Origination Date: 3/21/2020** |
| | **Last Reviewed: 4/4/2023** |

- Lessons Learned
- Specific IR procedures currently developed are listed in the References section.

3. All security incidents must be reported to the Information Security team as soon as possible. The following are examples of methods for reporting or discovering an incident:

- Contact the Help Desk.
- Phone call, email, or other form of electronic communication directly to the Security team or Security team member.
- An incident reported by a Compliance or Privacy Officer, or any member of the Steward workforce
- Notification from a third-party such as a business associate, vendor, government agency, or Information sharing organization.

4. The Information Security team will respond to and coordinate with other Steward departments and third-party stakeholders to include, but not limited to, the following:

- Unusual or apparently malicious use of information assets;
- Malicious code (viruses, worms, or malicious software);
- Unauthorized information access, usage, and disclosure;
- Unauthorized physical access and usage;
- Any incident whereby a user, either directly or by using a program, performs functions for which such user does not have authorization;

5. The Information Security team will test the IR Plan periodically via tabletop exercises, simulations, or other comprehensive exercises to determine the incident response effectiveness and document all results. The IR plan will be updated as needed based on results.

6. When it is determined that an incident is under control and the risk has been reduced to a reasonable level (after the Eradication and Recovery stage) a Post Incident Review (Lessons Learned stage) must take place. During this review, all documentation can be verified, reviewed and properly recorded. A template has been created for the purpose of capturing all relevant information. All attestation and reporting shall be saved in a central repository that is backed up and stored in a secure manner. It is imperative that the organization learn from incidents that occur and to take the necessary steps to prevent similar incidents from happening again. This phase would also be used to review policies, standards and procedures to determine if any changes need to be made.

7. Following guidance from Steward's Legal department, under attorney-client privilege, the Information Security team will provide notice of any actual or suspected security breaches to Steward's Office of General Counsel and to the Office of Corporate Compliance and Privacy.



**Enterprise Information Security Incident Response Policy**
**Chapter: Enterprise Information Security**
**Policy Number: EISP 07**
**Origination Date: 3/21/2020**
**Last Reviewed: 4/4/2023**

# References

NIST Special Publication 800-61 – Computer Security Incident Handling Guide.

NIST Special Publication 800-53 – Incident Response (IR) IR-01through IR-10

GDPR - EU (General Data Protection Regulation: Regulation-EU) 2016/679

ISO (International Organization for Standardization) 27001

Enterprise Information Security Email Attacks Response

Enterprise Information Security Executive Phishing Response

Enterprise Information Security Mass Phishing Response

Enterprise Information Security General Incident Response

Enterprise Information Security Ransomware Response

Enterprise Information Security Lost-Stolen Device

# Review and Approval

The following Steward Health Care System personnel originated and approved this policy:

| Date | Contact | Approved By | Description |
|------|---------|-------------|-------------|
| 3/31/2020 | Chief Information Security Officer | Chief Information Security Officer, Steward Clinical Excellence Committee | **New** *IASIS legacy hospitals – this policy replaces IASIS policy SEC.003.7 Computer Security Incident Procedures* *Correction 7/9/2020 Changed policy # from EISP-IR-01 to EISP 07* |
| 4/4/2023 | Chief Information Security Officer, Governance & Compliance Senior Analyst | Chief Information Security Officer, Governance & Compliance Senior Analyst, Steward Clinical Excellence Committee | 3 Year renewal. Policy reviewed. No changes. Updated references |

|   St. Joseph Medical Center  A STEWARD FAMILY HOSPITAL  Steward | **Enterprise Information Security Incident Response Policy**  **Department/Chapter: Enterprise Information Security**  **Policy Number: EISP 07**  **Origination Date: 3/31/2020**  **Last Revised: 4/04/2023** |
|---|---|
| **St. Joseph Medical Center**  **HOSPITAL ADDENDUM** | **Addendum**  **Origination Date: 5/22/2020**  **Last Revised: 5/22/2023** |

# Hospital Procedure

System policy has been adopted as is.

# Review and Approval

The following St. Joseph Medical Center personnel has reviewed and approved this policy and addendum:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 4/28/2020 | **Steward Corporate Executive Director, Hospital System Account Manager** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [5/22/2020]  St. Joseph Medical Center **Senior Leadership** [5/22/2020] | **New Steward policy adopted as is.**  **Replaces IASIS Policy: SEC.003.7 Computer Security Incident Procedures** |
| 4/11/2023 | **Director, IT&S** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [5/04/2023]  St. Joseph Medical Center **Senior Leadership** [5/04/2023]  St. Joseph Medical Center **Medical Executive Committee** [5/16/2023]  St. Joseph Medical Center **Governing Board** [5/22/2023] | **Steward policy revisions adopted. No changes made to previously approved Hospital Addendum.** |

*Disclaimer: The electronic version of this policy is considered to be the controlled version. Printed copies are considered uncontrolled documents. Before using a printed copy, verify that it is the current version.*

*Page 1 of 1*

RFP2-095



**Non-Retaliation Policy**
**Chapter: Compliance**
**Policy Number:  COM 13**
**Origination Date: 9/28/2018**
**Last Revised: 8/28/2023**

# Policy

St. Joseph Medical Center is committed to ensuring that individuals who report known or suspected instances of illegal, wrongful, or unethical behavior within the system are not subject to retaliation, retribution, or any form of harassment.

# Purpose

The purpose of this policy is to inform System personnel about their obligations to avoid retaliation, retribution, or any form of harassment.

# Scope

This policy applies to all employees, contractors, members of the medical staff, vendors, and other agents of St. Joseph Medical Center ("System personnel").

# Procedure

A.  <u>System Personnel</u>

1.  System personnel may not retaliate, harass, or otherwise treat an individual badly because that individual has reported what he or she believed in good faith to be a violation of law, regulation, guideline, or policy.

2.  System personnel who learn of or suspect retaliation, harassment, or any other activity that constitutes prohibited action under this policy must immediately report this activity to their supervisor, Office of Corporate Compliance & Privacy (OCCP) at 800-699-1202, or Anonymous reports may be made to the OCCP Support Line at 800-699-1202.

3.  System personnel who violate this Policy will be subject to appropriate disciplinary action, up to and including termination of employment.

NOTE: Individuals who purposely contrive, exaggerate, distort, or in any other way do not act in good faith when reporting a compliance concern will not be protected by this Non-Retaliation Policy.

# References

42 CFR 164.530(g)

31 U.S.C. § 3730(h)

RFP2-096



**Non-Retaliation Policy**
**Chapter: Compliance**
**Policy Number:  COM 13**
**Origination Date: 9/28/2018**
**Last Revised: 8/28/2023**

# Review and Approval

The following St. Joseph Medical Center personnel have reviewed and approved this policy:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 9/28/2018 | **Corporate Chief Compliance Officer** <br><br> **Executive Compliance Committee** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [9/28/2018] | **New policy.** |
| 7/21/2020 | **Corporate Chief Compliance Officer** <br><br> **Executive Compliance Committee** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [7/24/2020] | **Reviewed: no content changes.** |
| 8/10/2023 | **Corporate Chief Compliance Officer** <br><br> **Executive Compliance Committee** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [8/15/2023] <br><br> St. Joseph Medical Center **Senior Leadership** [8/15/2023] <br><br> St. Joseph Medical Center **Medical Executive Committee** [8/15/2023] <br><br> St. Joseph Medical Center **Governing Board** [8/28/2023] | **Reviewed: minor grammatical, wordsmithing changes.** |

RFP2-097



| | **Standards of Performance/Disciplinary Action Policy**<br>**Chapter: Human Resources**<br>**Policy Number: HR 21**<br>**Origination Date: 5/13/2021**<br>**Last Revised: 6/26/2023** |

# Policy

St. Joseph Medical Center strives to maintain the highest standards of performance and professionalism. Behavior that does not meet these standards will not be tolerated. An employee's continued employment requires that these standards and expectations are met. In the event that these standards and expectations are not being met, St. Joseph Medical Center reserves the right to implement the disciplinary actions it finds appropriate, with or without notice, including but not limited to (documented) verbal and written warnings, disciplinary probations, suspension, or dismissal.

# Scope

This policy pertains to all St. Joseph Medical Center workforce members.

# Procedure

## A. Disciplinary Procedure

1. When an employee's conduct, performance, behavior or other job-related factors are below their supervisor's standards or expectations, disciplinary action may be enacted. Some actions may result in immediate discharge, while others call for progressive discipline. Since each case is unique, varying with the situation and individual involved, supervisors are strongly encouraged to consult with Human Resources on the appropriate disciplinary approach.

2. In those cases which call for progressive discipline, the following steps generally take place, although variations may occur from case to case:

    a. In general, the first step in correcting a problem is to verbally counsel the employee to ensure that s/he understands the nature and severity of the transgression. This verbal counseling shall be documented. This documentation may be via a formal document or an e-mail reviewing the conversation. Employee training or retraining needs will be identified and addressed to assist the employee in meeting expectations. The goal at this point is to address and redirect the behavior through coaching the employee.

    b. If the problem persists, a formal written warning may be warranted. The warning should factually describe behaviors that are not meeting expectations. An objective corrective action plan with reasonable time frames should be met and disciplinary action to be taken if expectations are not met will be developed. The employee will be asked to sign the warning and be informed that his/her signature indicates receipt of the warning only and does not



**Standards of Performance/Disciplinary Action Policy**
**Chapter: Human Resources**
**Policy Number: HR 21**
**Origination Date: 5/13/2021**
**Last Revised: 6/26/2023**

mean that s/he agrees with its contents. The employee may also add his/her comments to the warning or attach a separate statement. If the employee refuses to sign the warning, this should be noted on the form, along with a witness's signature, if available. Copies of the warning must be given to the employee and to Human Resources for review and inclusion in the employee's personnel file.

3. If the situation does not improve, further disciplinary actions including second written warning/final written warning, performance improvement plan, suspension or discharge may be necessary. The supervisor must consult with Human Resources prior to applying these types of actions.

4. Documented disciplinary actions shall remain in the employee's personnel file indefinitely. The extent to which prior disciplinary actions shall be considered in future disciplinary actions may vary depending upon nature of the warning, length of time since prior warning, etc.

## B. Actions Warranting Discharge

1. Situations that may result in disciplinary action, up to and including immediate discharge, include, but are not limited to:

   - Insubordination;

   - Theft;

   - Violation of the St. Joseph Medical Center policies on equal employment opportunity and sexual harassment or any form of harassment, or code of conduct;

   - Disclosure of proprietary information to any person not authorized or entitled to receive it;

   - Violation of patient's rights/confidentiality, including violations of HIPAA;

   - Violation of computer security procedures, including clicking on links or attachments from unknown/unverified senders or providing information to an external email without verifying, identifying and authenticity. Up to two significant violations of computer security procedures; following a second significant violation of computer security procedures, employment may be terminated;

   - Failure to perform required job responsibilities;

   - Failure to follow departmental policies and policies of St. Joseph Medical Center;

   - Knowingly providing false information in connection with any company investigation or other company documentation requirement;

   - Misrepresentation, falsification, or omissions on the employment application or resume or other information on which the hiring decision was made;

   - Unauthorized consumption of alcoholic beverages on premises or reporting for duty while intoxicated;



**Standards of Performance/Disciplinary Action Policy**
**Chapter: Human Resources**
**Policy Number: HR 21**
**Origination Date: 5/13/2021**
**Last Revised: 6/26/2023**

- Carrying, storing, delivering, selling or using narcotics or drugs illegally or reporting for duty under the influence of drugs taken illegally, or reporting to work under the influence of a drug that impairs your ability to perform the essential functions of your job;

- Unexcused absence without leave; absence without call for three or more consecutive workdays is considered voluntary termination;

- Excessive or patterned absenteeism or lateness/violation of attendance guidelines;

- Fighting, intimidating, or threatening violence in the workplace;

- Misuse or willful damage of St. Joseph Medical Center property;

- Intentional disruption of medical center routine on or off duty;

- Unauthorized canvassing, solicitation or distribution of pamphlet literature or other written materials;

- Gambling on St. Joseph Medical Center premises;

- Possession of or use of a weapon on St. Joseph Medical Center premises;

- Criminal activity;

- Falsification of records, including signing in or out for another employee or allowing another employee to sign in or out for you;

- Failure to report overpayment of compensation or benefits;

- Disclosing information to communications media without proper authorization;

- Smoking on St. Joseph Medical Center property;

- Violation of infection control policy or universal blood and body fluid precaution policy;

- Refusal to care for patients with a communicable disease;

- Taking unauthorized breaks during work hours;

- Sleeping during work time.

RFP2-100



| | Standards of Performance/Disciplinary Action Policy |
|---|---|
| | **Chapter: Human Resources** |
| | **Policy Number: HR 21** |
| | **Origination Date: 5/13/2021** |
| | **Last Revised: 6/26/2023** |

# Review and Approval

The following St. Joseph Medical Center personnel have reviewed and approved this policy:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 04/05/2021 | **Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [5/13/2021]<br><br>St. Joseph Medical Center **Senior Leadership** [5/13/2021] | **New policy.** |
| 1/30/2023 | **Director, Human Resources** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [6/08/2023]<br><br>St. Joseph Medical Center **Senior Leadership** [6/08/2023]<br><br>St. Joseph Medical Center **Medical Executive Committee** [6/13/2023]<br><br>St. Joseph Medical Center **Governing Board** [6/26/2023] | **Reviewed/Revised: updated Section B.** |

RFP2-101



**Disruptive and Inappropriate Behavior**
**Chapter: Rights and Responsibilities**
**Policy Number:  RI 20**
**Origination Date: 3/10/2020**
**Last Reviewed:**

# Policy

The governing body holds all hospital employees and medical staff members accountable for conducting themselves in a professional and cooperative manner in the hospital.  Disruptive behavior is addressed in a firm, fair, and equitable manner by Human Resources for employees and by the Medical Staff for its members. There will be no retaliation or disciplinary action for those individuals who report such concerns. The Hospital's Code of Conduct shall be followed by all staff members. The Medical Staff Bylaws define expectations around conduct concerns.

# Definitions

For purposes of this policy, **Disruptive Behavior** is defined as behavior or behaviors that undermine a culture of safety. Disruptive behavior may include, but is not limited to:

1. Attacks—verbal or physical—leveled at other medical staff, hospital personnel, patients or patients' families that are personal, irrelevant, or outside the bounds of appropriate, professional conduct.

2. Inappropriate comments or illustrations made in patient medical records or other official documents that impugn the quality of care in the hospital or attack particular practitioners, nurses, or hospital policies.

3. Criticism leveled at the recipient in such a way that it intimidates, undermines confidence, or belittles.

4. Behavior in committee, department, other medical staff or hospital affairs which are rude, disrespectful, threatening, or otherwise unprofessional or inappropriate.

5. Intimidation through direct or veiled threats.

6. Unwillingness to work with, or inability to relate to, other staff in ways that affect patient care.

7. Repeated disregard of hospital approved policies/approved processes.

8. Challenges that limit the hospital's ability to meet regulatory requirements to ensure a safe working environment and/or appropriate delivery of care to their patients.

9. Ignorance or incompetency or a lack of honesty and integrity, e.g. falsifying medical record documentation, application to medical staff, etc.

# Procedure

1. The objective of this policy is to ensure a culture of safety where high quality care is delivered in a safe, cooperative, and professional healthcare environment, and to prevent or eliminate, to the extent possible, conduct that:

   - disrupts the operation of the hospital

   - affects the ability of others to do their jobs



**Disruptive and Inappropriate Behavior**
**Chapter: Rights and Responsibilities**
**Policy Number:  RI 20**
**Origination Date: 3/10/2020**
**Last Reviewed:**

- creates a hostile work environment for hospital employees or other medical staff members

- interferes with an individual's ability to practice competently

- Adversely affects or impacts the community's confidence in the hospital's ability to provide quality patient care.

2. This policy will be implemented in a manner that carries out the following activities:

   a. Set and communicate clear expectations of behavior, including wide dissemination of this policy.

   b. Support actions to respond to disruptive behavior

   c. Evaluate performance of individuals compared to these expectations.

   d. Provide timely and periodic feedback of performance to individuals.

   e. Manage poor performance when patterns of disruptive behavior persist.

   f. Take corrective action.

3. Guidelines for Responding to Disruptive Behavior:

   a. Attempt to de-escalate the situation by using a structured method to escalate a concern by starting with:

      - Gentle comment of concern – ask a clarifying question;

      - Request a change in behavior;

      - Express a concern for safety

      - If all fails, escalate the concern by following the hospital policy **RI 10 Chain of Command**

4. Any physician, advanced practice professional, employee, patient, or visitor may report conduct that they deem disruptive. Individuals may submit a report to the Chief Medical Officer, any senior leader or a member of Quality and Safety department verbally or through the hospital incident reporting system.

5. The Chief Medical Officer or Chief of Staff or members of the Quality and Safety team will investigate the report in a non-punitive matter similar to any/all incident/complaint reports reviewed. The Chief Medical Officer or Chief of Staff,  or senior leader in Human Resources in corroboration with other members of senior leadership or Medical Executive Committee may dismiss any unfounded report and will notify the individual who initiated the report of his or her decision. A confirmed report will be addressed appropriately as outlined in Medical Staff Bylaws or Hospital Human Resource policies (whichever applies).

6. Any unresolved or contested decision may be elevated to the governing body directly.

*Disclaimer: The electronic version of this policy is considered to be the controlled version. Printed copies are considered uncontrolled documents. Before using a printed copy, verify that it is the current version.*
*Page 2 of 3*

RFP2-103



**Disruptive and Inappropriate Behavior
Chapter: Rights and Responsibilities
Policy Number:  RI 20
Origination Date: 3/10/2020
Last Reviewed:**

# References

Joint Commission 2022 LD.03.01.01

Sentinel Event Alert: Joint Commission Issue 40, July 9, 2008

NIAHO Accreditation Requirements, Interpretive Guidelines Rev 25.0, Effective 04/28/2025; MS.14 Corrective or Rehabilitation Action

# Review and Approval

The following St. Joseph Medical Center personnel reviewed and approved this policy:

| Action Date | Contact | Approved by | Description |
|---|---|---|---|
| 10/1/2019 | **Director, Risk Management** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [3/02/2020]<br><br>St. Joseph Medical Center **Senior Leadership** [3/02/2020]<br><br>St. Joseph Medical Center **Medical Executive Committee** [3/10/2020] | **New policy.** |
| 01/26/2022 | **Director, Risk Management** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [2/18/2022]<br><br>St. Joseph Medical Center **Senior Leadership** [2/18/2022]<br><br>St. Joseph Medical Center **Medical Executive Committee** [2/15/2022] | **Reviewed: no content changes.** |
| 08/18/2025 | **Director, Risk Management** | St. Joseph Medical Center **Policy Oversight Management Committee (POMC)** [Pending Approvals]<br><br>St. Joseph Medical Center **Senior Leadership** [Pending Approvals]<br><br>St. Joseph Medical Center **Medical Executive Committee** [Pending Approvals]<br><br>St. Joseph Medical Center **Governing Board** [Pending Approvals] | **Reviewed: no content changes.** |

*Disclaimer: The electronic version of this policy is considered to be the controlled version. Printed copies are considered uncontrolled documents. Before using a printed copy, verify that it is the current version.*
*Page 3 of 3*

RFP2-104



# St JOSEPH MEDICAL CENTER
## Organizational Chart

Thomas Dunning, Chief Executive Officer
October 22, 2024

Healthcare System of America

Governing Board

**Thomas Dunning**
Chief Executive Officer
Tracy Gonzales, Exec. Asst.

**Deborah Jones**
Chief Financial Officer
Compliance Officer

**Debra Lanclos**
Chief Quality Officer

**Michelle Ziakas**
Chief Nursing Officer

Christi Nghiem-Elmer, Manager
Information Services
Arizona / Texas

Scott Maino, Director
Food & Nutrition
Diabetes Education
Transportation

Marshall Johnston, Director
Environmental Services

Dorothy Alford, Interim Director
Case Management
Social Services

Cassandra Lewis, Operations Manager
Health Information Management

Deneen Webster, Manager
Admissions
Registration
Scheduling

Dianna Wren, Director
Materials Management
Central Supply

Regina Johnson, Manager
ER Registration

Kim Hoang
Assistant Controller

Darlene Crawford
Business Office Manager

Joseph Botticelli, Director
Pharmacy

Eileen Fernstrom, Director
Risk Management
Interpreter

Michael Cornett, Market Director of Imaging Services

Priscilla Offei, Coordinator
Infection Prevention
Infection Control

Hema Ojha, Director
Laboratory Services

Lisa Valenzon, Manager
Trauma Program

Dustin Schweikert, Director
Cardiopulmonary Services

Ada Vaglienty, Program Manager
Chest Pain/Stroke

Cindy Waters, Coordinator
Bariatric Program

Vacant, Director
Security

Jose Rivas, Interim Director
Plant Operations

Jaime Malveaux, Director
Human Resources
Volunteers
Employee Health

Carol Mateo, Director
Graduate Medical Education Program
Continuing Medical Education

Marie Sausser, Director
Medical Staff Services
Spiritual Care

Dorothy Alford, Director
Center for Learning

Float Pool
House Supervisors
Staffing Office

Neka McKraney, Director
Medical / Surgical Unit
Telemetry

Lori Tolopka, Director
Women's Services
Antepartum
Family Birth Center
Labor & Delivery
Neonatal Intensive Care Unit
Outpatient Women's Clinic
Women's Operating Room

Andrea Darden, Director
Intensive Care Unit
Dialysis
Emergency Service

Christina Hernandez, Director
Physical/Occupational/ Speech Therapy
Wound Care (IP & OP)
Hyperbaric Oxygen Therapy

Ruben Martinez, Manager
Biomedical Engineering

Carmel Pound, Director
Perioperative Services
Endoscopy
Outpatient Surgery
Post-Anesthesia Care Unit
Sterile Processing Department
Surgery
Cardiac Catheterization Lab
Non-Invasive Cardiology

April Gamblin
Sara Moore
Nursing Informatics Manager

RFP2-105