# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IMANI CHINDA,<br><br>v.<br><br>HSA ST. JOSEPH LLC. | Case No. 4:24-cv-5106 |

## CHINDA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION AND SUMMARY

St. Joseph attempts to make this case about good faith efforts to compensate employees after its payroll failure. This is a red herring given St. Joseph's admissions. St. Joseph does not dispute that it failed to pay Chinda minimum wage, Chinda complained about it, and St. Joseph took an adverse employment action against her less than one week later. St. Joseph even admits that its "practice is to offer travel nurses opportunity to transition to full-time positions." Doc. 26 at *9. The temporal proximity of St. Joseph's adverse action against Chinda and its own admission that it deviated from its common practice of transitioning travel nurses to full-time positions are sufficient to establish a *prima facie* FLSA retaliation case.

Summary judgment is appropriate because the record does not support St. Joseph's claim that Chinda engaged in disruptive behavior in the Family Birthing Center. St. Joseph's assertion of "documented disruptive conduct" is simply false, as no documentation exists, contrary to St. Joseph's own human resources policies. The bar for St. Joseph to raise an issue of material fact is low, yet St. Joseph has not met it. This Court should grant Chinda's Motion for Summary Judgment.

1

## II.   ARGUMENT

### 1.   St. Joseph admitted Chinda's conduct in the Family Birthing Center did not violate its policies.

The sole piece of documentary evidence of Chinda's purported misconduct in the Family Birthing Center – an e-mail exchange between Lori Tolopka and another nurse without firsthand knowledge of the incident – is hearsay evidence subject to Chinda's Motion to Strike, filed contemporaneously with this Reply.[1] As explained in greater detail in that Motion, the deposition testimony of Ms. Malveaux confirms this inadmissible hearsay evidence is the sole basis for St. Joseph's argued legitimate, nondiscriminatory reason for Chinda's termination.[2]

Fatally, St. Joseph untimely responded to Chinda's second requests for admission in discovery, and did not seek relief from the Court.[3] The following requests for admission are deemed admitted:

> 5. YOU do not have any documents reflecting the decision to place PLAINTIFF on administrative leave.
>
> 6. PLAINTIFF did not violate a written policy when she engaged in alleged "disruptive conduct" in the Family Birthing Center.[4]

---

[1] *See Khoja v. Just Energy (U.S.) Corp.*, No. 4:16-cv-03468, 2018 WL 11473329, at *10 (striking hearsay evidence of a legitimate non-discriminatory reason for termination at the summary judgment stage).

[2] *See generally* Doc. 24-1 at 101:6 – 105:6; *see also* **Exhibit 1** at ¶¶ 8-10 (Chinda declaring under oath that her conduct in the Family Birthing Center was a protected activity under the FLSA).

[3] *See* Fed. R. Civ. P. 36(a)(3) (stating a request for admission is admitted unless the party responds within 30 days); *see also* Fed. R. Civ. P. 36(b) (matter admitted under Rule 36 is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended).

[4] *See* **Exhibit 2** (Plaintiff's Second Requests for Admission served July 22, 2025).

Although St. Joseph attempted to serve responses nearly four weeks late, to date, it has not moved for the admissions to be withdrawn.[5] These deemed admissions should serve the basis for granting summary judgment in favor of Chinda.[6] By failing to timely respond, St. Joseph admits that Chinda did not violate a written policy when she engaged in alleged "disruptive conduct" in the Family Birthing Center. Given this admission, St. Joseph cannot argue to the contrary in response to Chinda's Motion for Summary Judgment.

2. **Chinda's complaint was a protected activity under the FLSA, even if St. Joseph untimely paid her minimum wage after its retaliatory adverse employment action.**

There is no dispute that Chinda complained about St. Joseph's failure to pay minimum wage.[7] Nor does is there a dispute that St. Joseph was aware of Chinda's complaint.[8] St. Joseph likewise does not dispute that, at the time of Chinda's complaint, it had failed to pay Chinda minimum wage for at least one workweek.[9] Instead, St. Joseph argues that, because it paid

---

[5] *See* **Exhibit 3** (Defendant's Responses to Second Requests for Admission served September 17, 2025).

[6] *See Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 70 (5th Cir. 1994) (upholding trial court's summary judgment finding of alter ego status based on deemed admissions); *Matter of Liberty Trust Co.*, 903 F.2d 1053, 1056 (5th Cir. 1990) ("court acted properly when it granted ... unopposed motion for summary judgment, particularly so in light of the deemed admissions"); *Stewart v. Jones*, 946 F.Supp. 466, 470 n.4 (S.D. Miss. 1996) ("failure to respond to requests for admission can lead to a grant of summary judgment where the essential issue is deemed admitted by the non-responding party") (citing *Dukes*, 770 F.2d at 549).

[7] *See* Doc. 24-1 at 34:18-22, 35:16-17.

[8] *Id.*

[9] *See generally* Doc. 26 (failing to dispute that Chinda was not paid minimum wage for her work performed at least one workweek during the disputed pay period).

Chinda her minimum wage *after* its adverse employment action against her, Chinda did not engage in a protected activity.[10]

St. Joseph claims "[p]laintiff knew firsthand that her paycheck shortfall was a result of a computer error which was immediately corrected,"[11] but nothing in the record supports this assertion.[12] Further, this does not change the fact that St. Joseph undertook an adverse employment action *prior to* any correction.[13]

St. Joseph also cites the Fifth Circuit's opinion in *Hagan v. Echostar Satellite, L.L.C.* for the proposition that, although the Fifth Circuit has not decided whether an employee's good faith belief may give rise to protected activity, because St. Joseph corrected its FLSA violation, then it cannot be liable for retaliation.[14] *Hagan* is inapposite. In *Hagan*, a field service manager lodged an informal complaint on behalf of subordinate employees regarding a potential prospective schedule change.[15] There was no dispute in *Hagan* that the employer did not violate the FLSA.[16] Likewise, the plaintiff in *Hagan* admitted he did not believe the employer violated the FLSA.[17] Here, there is no dispute that Chinda was paid below minimum wage in violation of the FLSA. This Court need not reach the question of whether Chinda's good faith belief is sufficient to establish a "protected activity" under the FLSA.

---

[10] Doc. 26 at *18-19.
[11] Doc. 26 at *19.
[12] St. Joseph did not serve written discovery on Chinda, or request Chinda's deposition.
[13] *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir. 1987) ("A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.").
[14] Doc. 26 at *19 (citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 629 (5th Cir. 2008)).
[15] *Hagan*, 529 F.3d at 625.
[16] *Id.* at *626-30 ("…and it is undisputed that the change was in fact legal.").
[17] *Id.* ("…he admittedly did not believe that their legal question had any merit.").

In effect, St. Joseph is asking the Court to conclude that, because it acted in "good faith" to correct the minimum wage violation, it is not liable for terminating Chinda because of her otherwise protected activity.[18] This argument reflects a fundamental misunderstanding of the FLSA. The question of liability under the FLSA does not rely on the employer's state of mind. *See* 29 U.S.C. § 206 (minimum wage requirement); *cf.* 29 U.S.C. § 259 (good faith defense regarding liquidated damages); 29 U.S.C. § 255(a) (willfulness). The employer's state of mind is irrelevant in a finding of FLSA liability, unlike the good faith and willfulness inquiries. *Id.*

Under St. Joseph's version of the FLSA, an employer could never be liable for retaliation under the FLSA if it subsequently remedied the minimum wage or overtime violation. But that's not the law.[19] St. Joseph's potential "safe harbor" defense to a minimum wage violation does not raise a dispute of material fact in this case, where Chinda has satisfied all three elements to establish retaliation under the FLSA.

### 3. Summary judgment is appropriate despite St. Joseph's "reasonable timekeeping policy."

Courts have long interpreted the FLSA as requiring payments for minimum wage or overtime be timely made.[20] "Thus, the statute is violated even if the employer eventually pays

---

[18] *See* Doc. 26 at *12 ("…these facts at minimum create a fact issue as to whether Defendant acted in good faith and maintained a reasonable timekeeping system…").

[19] *See Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1032-35 (8th Cir. 2005) (finding plaintiff established a prima facie case of retaliation where the plaintiff's settlement of his FLSA claim with the employer preceded his termination); *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1236-43 (11th Cir. 2013) (affirming jury verdict for FLSA retaliation where the underlying overtime lawsuit was settled prior to trial on the retaliation claim).

[20] *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703–07 (1945); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993).

the [minimum wage] amount that was due."[21] That requirement may not be waived, and "even the workers' enthusiastic assent to deferred payment—a form of employer-held savings account—is ineffectual."[22]

In addition, the Ninth Circuit's opinion in *Biggs v. Wilson*, 1 F. 3d 1537 (9th Cir. 1993) supports the contention that its interpretation prevents possible abuses of the FLSA. In that case, the Ninth Circuit addressed the issue of whether an employer's late payment of wages constituted a violation of the minimum wage requirement provision stated in 29 U.S.C. §206(a). There is no express language in § 206(a) specifying when § 206(a) is to apply. Analyzing the statutory scheme as a whole, the Ninth Circuit concluded that § 206(a) should be applied using a single workweek as the proper point of reference. In *Biggs*, the Ninth Circuit noted that "[t]he obligation [to pay the minimum wage] kicks in once an employee has done covered work in any workweek," and that "[i]f a payday has passed without payment, the employer cannot have met his obligation to 'pay'." *Id.* at 1539. As *Biggs* noted, "[u]nless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless." *Id.*

---

[21] *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 590–91 (6th Cir. 2002) (citing *Rogers*, 148 F.3d at 55).
[22] *Calderon*, 999 F.2d at 1107; *see also* 29 C.F.R. § 790.21 (providing that "a cause of action under the Fair Labor Standards ... 'accrues' when the employer fails to pay the required compensation for any workweek at the regular payday for the period in which the workweek ends" (emphasis added)); *see also Hartt v. United Const. Co., Inc.*, 655 F. Supp. 937, 938 (W.D. Mo. 1987), *aff'd*, 909 F.2d 508 (8th Cir. 1990) (noting that "a cause of action 'accrues' at each regular payday immediately following the work period during which the services were rendered and for which the compensation is claimed").

### 4. The record does not reflect St. Joseph's "reasonable timekeeping policy."

In support of the assertion that it had a reasonable timekeeping policy, St. Joseph relies on: (1) its document production generally,[23] (2) a series of e-mails it claims evidence meetings regarding the transition from Kronos, to paper timesheets, to iSolved,[24] (3) its interrogatory answers,[25] and (4) without citation, deposition testimony from its "corporate representative and nursing leadership."[26] Most of this is subject to Chinda's motion to strike. This likewise does not establish the existence of a reasonable timekeeping policy.

First, St. Joseph cites its document production generally, and references its written Timekeeping Policy (HR 26). However, St. Joseph has not submitted any evidence, via declaration or otherwise, establishing that this Timekeeping Policy was in effect during the relevant time period, that it was actually used by St. Joseph after HSA's takeover from Steward, or that it was provided to its employees. This document alone does not establish the existence of a "reasonable timekeeping policy."

Second, even if this Court considers the inadmissible e-mails cited by St. Joseph (and it shouldn't), they do not evidence a reasonable timekeeping policy. Many of the e-mails state

---

[23] Doc. 26 at *10 ("RFP2-105, et seq.").
[24] Doc. 26 at *10-12.
[25] Doc. 26 at *10-*11. St. Joseph's interrogatory answers were not attached to its response to Chinda's Motion for Summary Judgment. And St. Joseph's interrogatory answers should not be considered regardless, as St. Joseph's interrogatory answers were verified by its attorney, Asim Ghafoor.
[26] Doc. 26 at *11.

the sender, but not the recipient, of the e-mail.[27] Other purported e-mails are simply incomprehensible:

```
[EXTERNAL]  Upcoming Absence Notification.msg

@2 WARN G
s%@REPORT
SMTP:NO-REPLY-US01@MYISOLVED.COM
color:#1D8242 !important;">CAUTION</b> when clicking links aSMTP:NO-REPLY-US01@MYISOLVED.COM
Romanie.Pierre@steward.org
--- BODY (extracted text) ---
orm: revert !important; text-wrap: revert !imp
oat: none !important; border-spacingP
eft"> <tbody style=" aspect-rat/
ortant; table-layout: revert !important; text-align: revert !iE
nt; text-indent: revert !important; text-orientation: reve
/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D604306F5CC344BABA0AC66030186788-ROMANIE PIE
```

*See* Doc. 26 at *10 (citing RFP2-030), Doc. 26-2 at *30. And even the e-mails that identify recipients and are somewhat comprehensible appear to simply be Microsoft Teams meetings, which do not evidence the meeting attendees or the actual discussion at the meeting:

```
[EXTERNAL]  Expectations Meeting - Payroll Processing_ 11.1.24 Pay Dat

Subject: [EXTERNAL] Expectations Meeting - Payroll Processing: 11.1.24 Pay Date
From: Robert Boyd <Robert.Boyd@amhealthsystems.com>
To: Robert Boyd; Cope, Brent A.; Perry, Tavia; Malveaux, Jaime E.; Norman, Taylor; Hernandez, Rosmary H.;
Cossio, Odalys M.; Vargas, Kathy; Kirks, Linda; Jones, Deborah; Rodriguez, Natalie; Ledezma, Erika; Reva
Weems; Gabriela Pavel; Carol Chainey; Carlos
Sent: Thursday, October 24, 2024 11:57 AM
WARNING: This e-mail came from outside Steward Health Care. Exercise extra
CAUTION when clicking links and opening attachments from any and all senders.
REPORT any suspicious emails by clicking the
"PHISH ALERT REPORT" button in Outlook.
-----Original Appointment-----
Alcazar
When: Thursday, October 24, 2024 1:00 PM-2:00 PM (UTC-06:00) Central Time (US & Canada).
Where: Microsoft Teams Meeting
Sent: Thursday, October 24, 2024 11:56 AM
```

---

[27] *See, e.g.,* Doc. 26-1 at *69 (document purporting to contain an e-mail from Tracy Gonzalez which does not evidence the recipient of the e-mail); *see also* Doc. 26-2 at *45 (document purporting to contain an e-mail from an individual named Odalys without recipient identified).

8

*See* Doc. 26 at *10-11 (citing RFP2-014), Doc. 26-2 at *14.

Third, St. Joseph's interrogatory answers were not submitted in support of its response to Chinda's Motion. And should St. Joseph be granted leave to file its interrogatory answers, they should not be considered, because they are verified by its Counsel, Asim Ghafoor, and are effectively argument from Counsel, rather than competent summary judgment evidence.

Finally, with respect to the general citation deposition testimony, St. Joseph does not attempt to identify which page or line supports its assertion that "management and the executive team worked long hours—including overnight—to correct the pay issues."[28] Even if this Court locates those pages and considers them at the summary judgment stage,[29] the fact that management worked many hours to correct the payroll issue is not pertinent to whether its termination of Chinda had a causal connection to her complaint for its failure to pay minimum wage.

St. Joseph cites three cases involving plaintiffs who allegedly worked overtime off-the-clock, and the dispute concerned whether the employer had constructive knowledge of the employee's off-the-clock work.[30] These cases do not apply. This is not a constructive knowledge or off-the-clock case. And St. Joseph does not contest it was aware of the hours worked by Chinda on the workweek she was not paid minimum wage.

---

[28] Doc. 26 at *11.
[29] *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation omitted)).
[30] *See* Doc. 26 at *11 (citing *Newton v. City of Henderson*, 47 F.3d 746, 748–50 (5th Cir. 1995); *Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 964–66 (5th Cir. 2016); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455–56 (5th Cir. 2009)).

## IV. CONCLUSION

This Court should grant summary judgment in favor of Chinda.

Date: December 3, 2025.  Respectfully submitted,

By: */s/ Carl A. Fitz*
  **Carl A. Fitz**
  Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal

**ATTORNEY FOR CHINDA**

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on the 3rd of December 2025 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.

*/s/ Carl A. Fitz*
**Carl A. Fitz**